# Exhibit A

U.S. DISTRICT COURT
CLERK

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
_____ **DIVISION**

03 APR 30 PM 1:10

FILED-EC3

**DOCKETED**

MAY 0 1 2003

_DIEP  X.  HOANG_

(Name of the plaintiff or plaintiffs)

v.

_ABBOTT  LABORATORIES_

(Name of the defendant or defendants)

CIVIL ACTION

NO. **03C 2910**

(Case number will be supplied by the assignment clerk)

**JUDGE PLUNKETT**

**MAGISTRATE JUDGE SCHENKIER**

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is _DIEP  X.  HOANG_ of the county of _COOK_ in the state of _ILLINOIS_.

3. The defendant is _ABBOTT  LABORATORIES_, who resides at (street address) _1401  Sheridan  Road_
(city) _North- Chicago_ (county) _LAKE_ (state) _ILLINOIS_ (ZIP) _60064 - 6316_
(Defendant's telephone number) _(847) - 937 - 5987_

1-1

4) The plaintiff sought employment or was employed by the defendant at

(street address)  _1401 Sheridan Road_

(city) _North Chicago_ (county) _LAKE_ (state) _Illinois_ (ZIP code) _60064 - 6316_

5. The plaintiff [check one box]

(a) ☐ was denied employment by the defendant.

(b) ☐ was hired and is still employed by the defendant.

(c) ☒ was employed but is no longer employed by the defendant.

6. The defendant discriminated against the plaintiff on or about, or beginning on or about,

(month) _04_ , (day)_____ , (year) _1994_ .

7. (a) The plaintiff [check one box] ☐ *has not* filed a charge or charges against the defendant ☒ *has*

asserting the acts of discrimination indicated in this complaint with any of the following

government agencies:

(i) ☒ the United States Equal Employment Opportunity Commission on or about

(month) _NOV_ (day) _12_ (year) _2002_

(ii) ☐ the Illinois Department of Human Rights on or about

(month)_____ (day)_____ (year)_____ .

(b) If charges *were* filed with an agency indicated above, a copy of the charge is

attached. ☒ YES ☐ NO

It is the policy of both the Equal Employment Opportunity Commission and the Illinois Department
of Human Rights to cross-file with the other agency all charges received. The plaintiff has no reason
to believe that this policy was not followed in this case.

8. (a) ☐ the United States Equal Employment Opportunity Commission has not issued a

*Notice of Right to Sue.*

(b) ☒ the United States Equal Employment Opportunity Commission has issued a *Notice*

*of Right to Sue,* which was received by the plaintiff on (month) _February, 2003_

(month) _Jan_   (day) _31_   (year) _2003_   a copy of which *Notice* is attached to this complaint.

9. The defendant discriminated against the plaintiff because of the plaintiff's [check all that apply]

   (a) ☐  Age (Age Discrimination Employment Act).

   (b) ☒  Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

   (c) ☒  Disability (Americans with Disabilities Act)

   (d) ☒  National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

   (e) ☒  Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

   (f) ☐  Religion (Title VII of the Civil Rights Act of 1964)

   (g) ☒  Sex (Title VII of the Civil Rights Act of 1964)

10. The plaintiff is suing the defendant, a state or local government agency, for discrimination on the basis of race, color, or national origin (42 U.S.C. §1983).

    ☒ YES   ☐ NO

11. Jurisdiction over the statutory violation alleged is conferred as follows: over Title VII claims by 28 U.S.C. §1331, 28 U.S.C. §1343(a)(3), and 42 U.S.C. §2000e-5(f)(3); over 42 U.S.C. §1981 and §1983 by 42 U.S.C. §1988; over the A.D.E.A. by 42 U.S.C. §12117.

12. The defendant [check all that apply]

    (a) ☐  failed to hire the plaintiff.

    (b) ☒  terminated the plaintiff's employment.

    (c) ☒  failed to promote the plaintiff.

    (d) ☐  failed to reasonably accommodate the plaintiff's religion.

    (e) ☒  failed to reasonably accommodate the plaintiff's disabilities.

    (f) ☐  other (specify): _____
    
    _____

_____

_____

_____

_____

_____

13. The facts supporting the plaintiff's claim of discrimination are as follows:

_____

_____

_____

_____

_____

14. [AGE DISCRIMINATION ONLY] Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15. The plaintiff demands that the case be tried by a jury.    ☐ YES    ☐ NO

16. THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [check all that apply]

(a) ☐    Direct the defendant to hire the plaintiff.

(b) ☐    Direct the defendant to re-employ the plaintiff.

(c) ☐    Direct the defendant to promote the plaintiff.

(d) ☐    Find that the defendant failed to reasonably accommodate the plaintiff's religion.

(e) ☐    Find that the defendant failed to reasonably accommodate the plaintiff's disabilities.

(f) ☐    Direct the defendant to (specify):_____

_____

_____

_____

_____

_____

_____

(g) ☒    If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) ☒    Grant such other relief as the Court may find appropriate.

(Plaintiff's signature) _____ *Diep Hoang* _____

(Plaintiff's name) _____ DIEP X. HOANG _____

(Plaintiff's street address) _____ 2454 W. Gunnison Street _____

_____

(City) Chicago    (State) IL    (ZIP) 60625-2812

(Plaintiff's telephone number) (773) - 878 - 1208 _____

Equal Employment Opportunity Commission

## DISMISSAL AND NOTICE OF RIGHTS

To: Diep X. Hoang
2454 W. Gunnison Street
Chicago, IL 60625

From: Equal Employment Opportunity Commission
500 West Madison
Suite 2800
Chicago, Illinois 60661

Certified No.: 7099 3400 0006 7300 6293

[      ] *On behalf of a person aggrieved whose identity is*
*CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 210A300078 | Dorothea Hines, Investigator | (312) 886-9123 |

*(See the additional information attached to this form.)*

**YOUR CHARGE IS DISMISSED FOR THE FOLLOWING REASON:**

[      ] The facts you allege fail to state a claim under any of the statutes enforced by the Commission

[      ] Respondent employs less than the required number of employees.

[      ] Your charge was not timely filed with the Commission, i.e., you waited too long after the date(s) of the discrimination you alleged to file your charge. Because it was filed outside the time limit prescribed by law, the Commission cannot investigate your allegations.

[      ] You failed to provide requested information, failed or refused to appear or to be available for necessary interviews/conferences, or or otherwise refused to cooperate to the extent that the Commission has been unable to resolve your charge. You have had more than 30 days in which to respond to our final written request.

[      ] The Commission has made reasonable efforts to locate you and has been unable to do so. You have had at least 30 days in which to respond to a notice sent to your last known address.

[      ] The respondent has made a reasonable settlement offer which affords full relief for the harm you alleged. At least 30 days have expired since you received actual notice of this settlement offer.

[  X  ] The Commission issues the following determination: Based upon the Commission's investigation, the Commission is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[      ] Other (*briefly state*) _____

- **NOTICE OF SUIT RIGHTS -**

[  X  ] **Title VII and/or the Americans with Disabilities Act:** This is your NOTICE OF RIGHT TO SUE, which terminates the Commission's processing of your charge. If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in a court of competent jurisdiction. If you decide to sue, you must sue **WITHIN 90 DAYS** from your receipt of this Notice; otherwise your right to sue is lost.

[      ] **Age Discrimination in Employment Act:** This is your NOTICE OF DISMISSAL OR TERMINATION, which terminates processing of your charge. If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in a court of competent jurisdiction. If you decide to sue, you must sue **WITHIN 90 DAYS** from your receipt of this Notice; otherwise your right to sue is lost.

[      ] **Equal Pay Act (EPA):** EPA suits must be brought within 2 years (3 years for willful violations) of the alleged EPA underpayment.

On behalf of the Commission

_____1-31-03_____          *John P. Rowe*

John P. Rowe, District Director

Enclosures
  Information Sheets
  Copy of Charge
cc: Respondent(s)          Abbott Laboratories

EEOC Form 161 (Test 5/95)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 210A300078 |

__Illinois Dept. of Human Rights__ and EEOC
*State or local Agency, if any*

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Ms. Diep X. Hoang | (773) 878-1208 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 2454 W. Gunnison St., Chicago, IL 60625 | | 11/20/1965 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Abbott Laboratories | Cat D (501 +) | (847) 935-2610 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 1401 N. Sheridan Road, North Chicago, IL 60064 | | 097 |

| NAME | | TELEPHONE NUMBER (Include Area Code) |
|---|---|---|
| | | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☒ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN  ☐ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ OTHER (Specify)

| DATE DISCRIMINATION TOOK PLACE | |
|---|---|
| EARLIEST | LATEST |
| 01/15/2002 | 01/15/2002 |
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s)):

I. I was employed by the above named Respondent on August 1993. Most recently I held the position of Associate Scientist. I was harassed and subjected to a hostile work environment since on or about 1994. I was treated differently than my counterparts. I was the only female and the only Asian (Vietnamese) and was subjected to lower wages. I complained to management to no avail about these issues. Since on or about November 20, 2001, I went on a medical leave of absence due to my disability. Respondent was aware of my disability. On January 10, 2002, my physician recommended my leave of absence be extended by an additional thirty days pending further medical evaluation. However, on January 16, 2002, Respondent terminated my employment.

II. I believe that I have been discriminated against because of my race, Asian, my national origin, Vietnamese, and my sex, Female, in violation of Title VII of the Civil Rights Act of 1964, as amended, and my disability, in violation of the Americans with Disabilities Act of 1990.

RECEIVED EEOC
NOV 1 2 2002
CHICAGO DISTRICT OFFICE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| | SIGNATURE OF COMPLAINANT |
| Nov 12, 2002          Diep Hoang | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Month, day and year) |
| Date          Charging Party (Signature) | |

EEOC FORM 5 (Rev. 07/99)

**CHARGING PARTY COPY**

RECEIVED

APR 3 0 2003

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**DOCKETED**

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

MAY 0 1 2003

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**(a) PLAINTIFFS**

DIEP X. HOANG

**DEFENDANTS**

ABBOTT LABORATORIES

**(b)** County of Residence of First Listed Plaintiff    COOK
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed    LAKE
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**03C 2910**

**(c)** Attorney's (Firm Name, Address, and Telephone Number)    Attorneys (If Known)

JUDGE PLUNKETT

MAGISTRATE JUDGE SCHENKIER

## II. BASIS OF JURISDICTION    (Place an "X" in One Box Only)

- ☐ 1  U.S. Government
  Plaintiff
- ☒ 3  Federal Question
  (U.S. Government Not a Party)
- ☐ 2  U.S. Government
  Defendant
- ☐ 4  Diversity
  (Indicate Citizenship of Parties
  in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT    (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Inj. | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | **PERSONAL INJURY** | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| | ☐ 362 Personal Injury— Med. Malpractice | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | ☐ 365 Personal Injury— Product Liability | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **PERSONAL PROPERTY** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 210 Land Condemnation | ☐ 370 Other Fraud | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 220 Foreclosure | ☐ 371 Truth in Lending | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 380 Other Personal Property Damage | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 240 Torts to Land | ☐ 385 Property Damage Product Liability | | | |
| ☐ 245 Tort Product Liability | | | | |
| ☐ 290 All Other Real Property | | | | |

| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS |
|---|---|---|
| | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence |
| | ☒ 442 Employment | Habeas Corpus: |
| | ☐ 443 Housing/ Accommodations | ☐ 530 General |
| | ☐ 444 Welfare | ☐ 535 Death Penalty |
| | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other |
| | | ☐ 550 Civil Rights |
| | | ☐ 555 Prison Condition |

## V. ORIGIN    (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION    (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause.
Do not cite jurisdictional statutes unless diversity.)

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. This case
☒ is not a refiling of a previously dismissed action.
☐ is a refiling of case _____, previously dismissed by Judge _____

DATE    April 30, 2003

SIGNATURE OF ATTORNEY OF RECORD    Diep Hoang

JS 44 Reverse (Rev. 12/96)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

## Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.      (a) Plaintiffs-Defendants. Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b.) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.     Jurisdiction. The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States, are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.    Residence (citizenship) of Principal Parties. This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.     Nature of Suit. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.      Origin. Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI.     Cause of Action. Report the civil statute directly related to the cause of action and give a brief description of the cause.

VII.    Requested in Complaint. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.   Refiling Information. Use this section to indicate whether or not the case is a refiling of a previously dismissed action. If the case is a refiling, enter the previous case number and the name of the district or magistrate judge who dismissed the case.

Date and Attorney Signature. Date and sign the civil cover sheet.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

**DOCKETED**

MAY 0 1 2003

In the Matter of

DIEP X. HOANG

V

ABBOTT LABORATORIES

Case Number: 03C 2910

JUDGE PLUNKETT

MAGISTRATE JUDGE SCHENKIER

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR

DIEP HOANG    (plaintiff)

| (A) | | | | (B) | | | |
|---|---|---|---|---|---|---|---|
| **SIGNATURE** *Diep Hoang* | | | | **SIGNATURE** | | | |
| **NAME** DIEP HOANG | | | | **NAME** | | | |
| **FIRM** | | | | **FIRM** | | | |
| **STREET ADDRESS** 2454 W. Gunnison St. | | | | **STREET ADDRESS** | | | |
| **CITY/STATE/ZIP** Chicago, Illinois 60625-2812 | | | | **CITY/STATE/ZIP** | | | |
| **TELEPHONE NUMBER** (773) 878-1208 | | **FAX NUMBER** | | **TELEPHONE NUMBER** | | **FAX NUMBER** | |
| **E-MAIL ADDRESS** DXH_07@yahoo.com | | | | **E-MAIL ADDRESS** | | | |
| **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** N/A | | | | **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** | | | |
| **MEMBER OF TRIAL BAR?** | YES ☐ | NO ☒ | | **MEMBER OF TRIAL BAR?** | YES ☐ | NO ☐ | |
| **TRIAL ATTORNEY?** | YES ☐ | NO ☒ | | **TRIAL ATTORNEY?** | YES ☐ | NO ☐ | |
| | | | | **DESIGNATED AS LOCAL COUNSEL?** | YES ☐ | NO ☐ | |
| (C) | | | | (D) | | | |
| **SIGNATURE** | | | | **SIGNATURE** | | | |
| **NAME** | | | | **NAME** | | | |
| **FIRM** | | | | **FIRM** | | | |
| **STREET ADDRESS** | | | | **STREET ADDRESS** | | | |
| **CITY/STATE/ZIP** | | | | **CITY/STATE/ZIP** | | | |
| **TELEPHONE NUMBER** | | **FAX NUMBER** | | **TELEPHONE NUMBER** | | **FAX NUMBER** | |
| **E-MAIL ADDRESS** | | | | **E-MAIL ADDRESS** | | | |
| **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** | | | | **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** | | | |
| **MEMBER OF TRIAL BAR?** | YES ☐ | NO ☐ | | **MEMBER OF TRIAL BAR?** | YES ☐ | NO ☐ | |
| **TRIAL ATTORNEY?** | YES ☐ | NO ☐ | | **TRIAL ATTORNEY?** | YES ☐ | NO ☐ | |
| **DESIGNATED AS LOCAL COUNSEL?** | YES ☐ | NO ☐ | | **DESIGNATED AS LOCAL COUNSEL?** | YES ☐ | NO ☐ | |

1-3

# INSTRUCTIONS FOR COMPLETING APPEARANCE FORM

1. General Information

Local Rule 53.17 provides that once an attorney has filed an appearance form on behalf of a party, no additional appearances or substitutions may be made without leave of court. The Rule also provides that the attorney may not withdraw without leave of court. Therefore, if more than one attorney is going to represent the party or parties shown on the front of this form, each should complete the attorney appearance section of the form.

This form is designed to permit the filing of appearances by up to four attorneys who represent the same party or parties. If more than four attorneys representing the same party or parties wish to file appearances, additional forms should be used and the letters (A), (B), (C), and (D) indicating the attorneys should be altered to (E), (F), (G), (H), respectively for the fifth through the eighth attorneys, etc.

2. Listing of Parties for Whom the Attorney is Appearing

The names of each of the parties represented by the attorney(s) filing the appearance are to be listed on the lines immediately below the words "Appearances are hereby filed by the undersigned as attorney(s) for:". The type of party, e.g., plaintiff, defendant, third party plaintiff, should follow each party. If all of the parties are of the same type, e.g., all parties represented are plaintiffs, then the type of party can be shown at the end of the listing of parties.

3. Completing Attorney Information

The information requested should be completed for each attorney filing an appearance. Where two or more attorneys are from the same firm, only the first listed from the firm need complete the information for firm name, street address, and city/state/ZIP. The others may indicate "Same as (letter designation of first attorney)."

4. Identification Number

Attorneys who are members of the Illinois bar should enter the identification number issued to them by the Illinois Attorney Registration and Disciplinary Commission (ARDC). Attorneys who are not members of the Illinois bar should leave this item blank.

5. Attorney (A) and Notices

Where more than one attorney is listed on the appearance form, all listed will be entered on the docket of the Clerk, as attorneys of record. However, notices will only be mailed to the attorney shown in box (A) on the form except where local counsel has been designated pursuant to Local Rule 83.15 (see below). The attorney is responsible for notifying all other attorneys included on the form of the matter noticed.

Where appearances are filed on behalf of attorneys representing a state or local government, e.g., states attorney, corporation counsel, the persons filing the appearance may wish to list the name of the assistant who is in active charge of the case in box (A) and the appearance of the head of the

agency, e.g., attorney general, corporation counsel, or any other assistant assigned to such cases in subsequent boxes. In that way, the assistant in active charge will receive notice.

6. Appearances and Trial Bar Membership

All attorneys filing appearances must indicate whether or not they are members of the trial bar of this Court and whether or not they are the attorney who will try the case in the event that it goes to trial.

In criminal actions, an attorney who is not a member of the trial bar may not file an individual appearance. Pursuant to Local Rule 83.12, a member of the trial bar must accompany such attorney and must also file an appearance.

In civil actions, an attorney who is not a member of the trial bar should designate the trial bar attorney who will try the case in the event that it goes to trial. If a trial bar attorney is not listed on the initial appearance and the case goes to trial, a trial bar attorney, pursuant to Local Rule 83.17, must obtain leave of court to file an appearance.

7. Designation of Local Counsel

Pursuant to Local Rule 83.15, an attorney who does not have an office in this District may appear before this Court "only upon having designated, at the time of filing his/her initial notice or pleading, a member of the bar of this Court having an office within this District upon whom service of papers may be made." No attorney having an office in this District may designate local counsel. No attorney may designate more than one attorney as local counsel. Notices will be mailed by the Clerk's Office to both the attorney shown in box (A) and the attorney designated as local counsel.

8. Parties are Required to Consider Alternative Dispute Resolution

Pursuant to 28 U.S.C. §652(a), all litigants in civil cases pending before this Court are directed to consider the use of an alternative dispute resolution process at the earliest appropriate stage of the litigation. Such process may include mediation, early neutral evaluation, minitrial, or arbitration.

9. Local Rule 3.2 Requires Notification As To Affiliates

In every action in which an affiliate of a public company is a party, counsel for such party shall file with the Clerk a statement listing each public company of which such party is an affiliate. Where such party is a plaintiff the statement shall be filed with the complaint. Where such party is a defendant the statement shall be filed with the answer or motion in lieu of answer.

# Exhibit B

**Westlaw.**

Slip Copy

Slip Copy, 2007 WL 844632 (N.D.Ill.)

**(Cite as: Slip Copy, 2007 WL 844632)**

Page 1

**C**

Arthur Anderson LLP v. Federal Ins. Co.

N.D.Ill.,2007.

Only the Westlaw citation is currently available.

United States District Court,N.D. Illinois,Eastern Division.

ARTHUR ANDERSON LLP, Plaintiff,

v.

FEDERAL INSURANCE CO., Defendant.

No. 06 C 1824.

March 16, 2007.

Alan J. Martin, Dana S. Douglas, Shauna Lynn Fulbright, Mayer, Brown, Rowe & Maw LLP, Chicago, IL, for Plaintiff.

James H. Kallianis, Jr., Jeffrey Alan Berman, Seth Eli Darmstadter, Meckler, Bulger & Tilson LLP, Chicago, IL, for Defendant.

*MEMORANDUM OPINION AND ORDER*

REBECCA R. PALLMEYER, United States District Judge.

*1 Plaintiff Arthur Andersen LLP ("Andersen") alleges that an indemnification policy issued by Defendant Federal Insurance Company ("Federal") obligated Federal to defend Andersen against a class action arbitration demand brought by two retired Andersen partners, arising from Andersen's handling of certain retirement benefits. Claiming that Federal has refused to meet this obligation, Andersen brings claims for declaratory judgment, breach of contract, and violation of the Illinois Insurance Code. Federal moves to dismiss Andersen's complaint as barred by *res judicata* and collateral estoppel, contending that Andersen is attempting to relitigate claims that went to trial in a previous lawsuit between the parties, concerning Federal's duty to defend Andersen against similar claim demands asserted in various forms by hundreds of retired Andersen partners. For the reasons set forth below, Federal's motion is granted in part and denied in part.

*BACKGROUND*

For purposes of a motion to dismiss, the court presumes the truth of all of the plaintiff's well-pleaded factual allegations. *McMillan v. Collection Prof'ls, Inc.,* 455 F.3d 754, 758 (7th Cir.2006). Although this ordinarily entails an examination merely of the allegations in the complaint, a court may also take judicial notice of matters in the public record, including pleadings and orders in previous cases. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1080 (7th Cir.1997) (collecting cases); *Opoka v. INS,* 94 F.3d 392, 394 (7th Cir.1996) (proceedings in other courts proper subject of judicial notice). In this case, as the basis for dismissal is *res judicata,* the court takes judicial notice of pleadings, orders, and trial transcripts from previous litigation between the parties, specifically *Fed. Ins. Co. v. Arthur Andersen LLP,* No. 03 C 1174 (N.D.Ill.) (St.Eve, J.) (hereinafter, "*Andersen I*").

**A. Andersen's Claims Against Federal in the Present Action**

Beginning in 2002, in the wake of Andersen's well-publicized difficulties following the collapse of Enron, *see Andersen I,* 2005 WL 1838440, at *3 (N.D.Ill. Aug.2, 2005), Andersen began receiving claim demands from retired partners for lump sum payments of certain retirement benefits. (Compl.¶ 13.) On June 17, 2005, two such retired partners, Paul W. Hoffman and Ronald C. Wade, filed a "Demand for Class Arbitration" (the "Hoffman Arbitration Demand") with the American Arbitration Association on behalf of themselves and all others similarly situated.[FN1] (*Id.* ¶ 14.)The Hoffman Arbitration Demand asserts, *inter alia,* that in late 2002, Andersen rescinded an agreement to pay to "retired partners or participating principals" a monthly stipend known as "Basic Retirement Benefits" ("BRB") and also suspended payment of certain "Early Retirement Benefits" ("ERB").(*Id.* ¶ 15

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                Page 2
Slip Copy, 2007 WL 844632 (N.D.Ill.)
**(Cite as: Slip Copy, 2007 WL 844632)**

(citing Hoffman Arbitration Demand ¶ 1).) Seeking a declaratory judgment with regard to certain aspects of Andersen's partnership agreement, the Hoffman Arbitration Demand makes numerous allegations pertaining to Andersen's responsibility for alleged breaches of fiduciary duty; in general, these allegations accuse active Andersen partners of enhancing their financial positions, post-Enron, at the expense of partnership assets and thus the interests of the retired partners. (*Id.* ¶ 16; Hoffman Arbitration Demand ¶¶ 17-18, 30-33.) Andersen acknowledges in its complaint that the Hoffman Arbitration Demand was "related to" the other claim demands received since 2002, which also sought lump sum payments of retirement benefits "purportedly based on Andersen's alleged past practice and exercise of discretion in the handling of such payouts and its past advice given in regard thereto."(Compl.¶ 13.)

> FN1. A provision of Andersen's partnership agreement, attached to the Hoffman Arbitration Demand, calls for arbitration of any and all disputes arising from the agreement. (Hoffman Arbitration Demand ¶¶ 8-9, Ex. B to Compl.) Both the Hoffman Arbitration Demand and the portions of the Complaint that specifically refer to it were filed under seal, as they contain non-public information relating to Andersen's partnership agreement. The court thus describes the allegations in the Hoffman Arbitration Demand without specifics; in any event, the particular details of that claim demand are not relevant to the court's resolution of the pending motion.

*2 Andersen alleges that Federal has a duty to defend Andersen against the Hoffman Arbitration Demand and to indemnify Andersen against any potential loss, pursuant to Executive Protection Policy No. 8146-02-90B (the "Policy"), issued by Federal and effective at all times relevant to this litigation.(*Id.* ¶¶ 1, 7-10.)The Policy requires Federal to pay "on behalf of each of the Insureds all Loss for which the Insured becomes legally obligated to

pay on account of any Claim ... made against the Insured ... for a Wrongful Act committed, attempted or allegedly committed or attempted ... by an Insured or by any person for whose Wrongful Acts the Insured is legally responsible."(*Id.* ¶ 11 (quoting Policy § 1, Ex. A to Compl.).) Andersen is an "Insured" within the meaning of the Policy. (*Id.* ¶ 1.) The Policy further provides that Federal "shall have the right and duty to defend any Claim covered by this coverage section.... even if any of the allegations are groundless, false or fraudulent."(*Id.* ¶ 12 (quoting Policy § 3.).) "Loss" includes expenses for "Defense Costs"; "Claim" is defined in part as "a civil proceeding" made "against any Insured for a Wrongful Act"; and "Wrongful Act" is in turn defined as "any breach of the responsibilities, obligations or duties imposed upon fiduciaries" of certain employee benefit plans. (*Id.* (quoting Policy § 15).) According to Andersen, these provisions require Federal to "pay all costs, including attorneys' fees and supplemental expenses, incurred by [Andersen] in defense of claims for which [Federal] might incur a duty to indemnify ... unless it is clear from the face of the underlying claim demands that no allegation states any fact or any theory which brings the claim demands within, or *potentially* within, the coverage of the Policy."(*Id.* ¶ 10 (emphasis in original).) Andersen alleges that the breaches of fiduciary duty asserted in the Hoffman Arbitration Demand constitute "Wrongful Acts" under the Policy, thus entitling Andersen to coverage. (*Id.* ¶ 17.)

On July 20, 2005, at a meeting between Andersen representatives and Federal's lead adjuster Greg Smith and Federal counsel, Andersen "gave Federal actual notice of the Hoffman Demand and Andersen's need for assistance with [its] defense ...." (*Id.* ¶ 18.)Andersen's "lead defense counsel ... explained in detail the claims being pursued in the Hoffman Demand and the plans for defending them," and answered questions posed by Smith. (*Id.*) Andersen's counsel also forwarded a copy of the Hoffman Arbitration Demand to Federal.(*Id.*) In response, Andersen alleges, Federal "did nothing." (*Id.* ¶

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

19.)Andersen contends that Illinois law required Federal to compare the allegations made against Andersen with the Policy provisions to determine the potential for coverage and inform Andersen accordingly; Andersen alleges that Federal failed even to undertake this duty-to-defend analysis, much less provide Andersen with an answer. Left to defend itself against the Hoffman Arbitration Demand on its own, Andersen "has incurred substantial legal fees and costs." (*Id.*)

**\*3** Andersen further alleges that Federal's refusal to defend Andersen is contrary to (1) Federal's "own admissions of having a duty to defend against substantially similar claims made by other retired Andersen partners"; and (2) a partial judgment order in *Andersen I,* holding that the Policy "gave rise to a duty to defend substantially similar claims" to those presented in the Hoffman Arbitration Demand. (*Id.* ¶ 20.)The court discusses *Andersen I* below. Federal's alleged admissions are contained in a November 2002 letter from Smith to Andersen's general counsel regarding a separate class action lawsuit, also discussed below, in which Federal simply consented to Andersen's choice of counsel and agreed to defend under a reservation of rights. (Letter from Smith to Raimondo of November 27, 2002, Ex. C to Compl.)

Andersen brings a claim for declaratory judgment, seeking a declaration that Federal has a duty to defend the Hoffman Arbitration Demand and is therefore estopped to deny coverage under the Policy (Count I), (*id.* ¶ 26); a breach of contract claim seeking damages for defense costs incurred (Count II), (*id.* ¶ 32); and a claim under Section 155 of the Illinois Insurance Code, 215 ILCS 5/155, alleging that Federal acted "vexatiously and unreasonably" in refusing to defend Andersen, and seeking attorneys fees, costs, and statutory damages. (*Id.* ¶¶ 38-39.)

**B. Proceedings in *Andersen I***

**1. Pleadings and Pre-trial Rulings**

As noted, the Hoffman Arbitration demand was not the first claim asserted by retired Andersen partners, nor is the present action the first litigation concerning Federal's duty to defend such claims. On March 18, 2003, Federal filed a declaratory judgment action (*Andersen I* ), seeking a declaration that Federal did not owe a duty to defend or indemnify Andersen against claim demands brought by retired partners, of which Andersen notified Federal on or before September 27, 2002. (*Andersen I* First Am. Compl. ¶¶ 43, 50, 57, 62, 64-122, Ex. 1 to Arthur Andersen LLP's Memorandum in Opposition to Federal Insurance Company's Motion to Dismiss ("Pl.'s Resp.").) Specifically, these claim demands consisted of an arbitration demand filed by one retired partner (the "Samore Arbitration"), (*id.* ¶¶ 37-44); a California suit brought by three retired partners (the "Waters Action"), (*id.* ¶¶ 45-51); a class action suit in this district that plaintiffs voluntarily dismissed and then re-filed as an arbitration demand (the "Bryce Action"), (*id.* ¶¶ 52-58); and 214 letters from retired partners ("Election Letters") in which the retirees demanded immediate lump sum payments of certain retirement benefits. (*Id.* ¶¶ 59-63.)After Andersen gave Federal notice of additional claims, Federal amended its complaint to cover additional arbitration demands brought separately by three retired partners (the "Moriarty Arbitration", the "Connolly Arbitration", and the "Small Arbitration"), (*Andersen I* Second Am. Compl. ¶¶ 59-77, Ex. 3 to Pl.'s Resp.), as well as three more Election Letters. (*Id.* ¶ 78-82.)

**\*4** Andersen answered on September 11, 2003, asserting counterclaims against Federal. As in the present action, Andersen brought claims for declaratory judgment, breach of contract, and violation of Section 155 of the Illinois Insurance Code, arising from Federal's alleged failure to defend the retired partners' claims.[FN2](*Andersen I* Second Am. Compl. Countercl. ("*Andersen I* Countercl.") ¶¶ 27-44, Ex. 2 to Memorandum in Support of Federal Insurance Company's Motion to Dismiss ("Def.'s Mem.").) On March 1, 2004 Federal again amended

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                      Page 4
Slip Copy, 2007 WL 844632 (N.D.Ill.)
**(Cite as: Slip Copy, 2007 WL 844632)**

its complaint to encompass two more arbitration demands (the "Powers Arbitration" and the "Tripp Arbitration"), (*Andersen I* Third Am. Compl. ¶¶ 78-92, Ex. 6 to Pl.'s Resp.), and Andersen likewise amended its answer and incorporated by reference its counterclaims to include the two additional arbitration demands. (*Andersen I* Answer to Third Am. Compl. ¶¶ 78-92, 167-92, Ex. 7 to Pl.'s Resp.) On May 18, 2004, Judge St. Eve granted Andersen's motion for partial judgment on the pleadings, holding that Federal owed Andersen a duty to defend the underlying claims because the claimants had alleged wrongful acts that were at least potentially within the scope of coverage under the Policy. (*Andersen I* Order of 5/18/2004 (77), Ex. D to Compl.) Both parties then filed motions for summary judgment on the remaining issues of whether Federal had breached that duty, whether certain Policy provisions operated to exclude coverage, and whether Federal was liable pursuant to Andersen's Illinois Insurance Code counterclaim; briefing concluded on May 18, 2005. *See Andersen I*, 2005 WL 1838440, at *10 n. 14, 12-18.

> FN2. Andersen also sought relief with regard to another arbitration demand (the "Viets Arbitration") that Federal had not added to its Second Amended Complaint. (*Andersen I* Countercl. ¶ 26.)

As noted, Andersen received the Hoffman Arbitration Demand on June 17, 2005, and brought it to Federal's attention on July 20, 2005. (Compl.¶¶ 14, 18.) Neither party amended their pleadings in *Andersen I* in response to the new claim. This was not, however, the first claim demand that Andersen had received from Hoffman and Wade: theirs were among the 217 Election Letters encompassed by the pleadings, and Andersen in fact included their letters in the exhibit of Election Letters attached to its counterclaims. (Letter from Hoffman to Gorrell and Cardoso of April 17, 2002, Ex. A to *Andersen I* Countercl., Ex. 2 to Def.'s Mem.; Letter from Wade to Gorrell and Cardoso of April 20, 2002, Ex. A to *Andersen I* Countercl., Ex. 2 to Def.'s Mem.) In

their April 2002 letters, Hoffman and Wade requested immediate lump sum payments of their remaining ERB balances, but made no mention of monthly BRB payments, nor of any claims for breach of fiduciary duty, which they identified for the first time in the Hoffman Arbitration Demand. Instead, in their letters, both Hoffman and Wade based their demands solely on provisions of Andersen's partnership agreement.(*Id.*) Federal nevertheless emphasizes language from Andersen's counterclaims, particularly its statement that "claim demands had arrived in three *interconnected forms:* letters making demands and requests for immediate payment, class action lawsuits, and arbitration proceedings."(*Andersen I* Countercl. ¶ 13 (emphasis added).) Federal notes, further, Andersen's allegation that it had been served with a class action lawsuit and arbitration demands *"in conjunction with"* receipt of the Election Letters, (*id.* ¶ 17 (emphasis added)), and that "[a]side from their format, the underlying claim demands track one another."(*Id.* ¶ 14.)

**\*5** On August 2, 2005, Judge St. Eve denied the parties' cross-motions for summary judgment, concluding, *inter alia,* that issues of material fact existed as to whether Federal had breached its duty to defend, whether the Policy nonetheless precluded coverage, and whether Federal had engaged in "vexatious and unreasonable" conduct for purposes of Andersen's Illinois Insurance Code counterclaim. *Andersen I,* 2005 WL 1838440, at *12-18. On January 3, 2006, the court granted Federal's motion to bifurcate for trial the issues related to Federal's duty to defend from the court's separate resolution of the Illinois claim, which required decision by the court rather than by the jury.[FN3] (*Andersen I* Order of 1/03/2006 (196).) On January 25, 2006, ruling on Andersen's motion to clarify the burden of proof at trial, the court held that Andersen bore the burden of proving that Federal breached its duty to defend; but if Andersen did so, Federal could defeat the claim by proving that Andersen relieved Federal of that duty by "being unresponsive and uncooperative to Federal's requests."(*Andersen I* Order of

Slip Copy                                                                                  Page 5
Slip Copy, 2007 WL 844632 (N.D.Ill.)
**(Cite as: Slip Copy, 2007 WL 844632)**

1/25/2006 (226), Ex. 3 to Def.'s Mem., at 3.)

> FN3. Following trial of the duty-to-defend issues, the parties agreed to proceed with the Illinois Insurance Code claim on briefs. (*Andersen I* Agreed Order Regarding Trial of Section 155 Phase (365), entered June 13, 2006.)

In the meantime, on December 19, 2005, Andersen had received yet another class action arbitration demand (the "Huelsmann Arbitration"), and had notified Federal of the claim on December 21, 2005. Federal filed a separate declaratory judgment action regarding the Huelsmann Arbitration on January 25, 2006, which is pending before this court. *See Federal Ins. Co. v. Arthur Andersen LLP,* No. 06 C 462 (N.D. Ill. filed Jan. 25, 2006).

**2. Trial Proceedings**

*Andersen I* proceeded to trial on February 21, 2006. In Andersen's opening statement, its counsel specifically referred to the Hoffman Arbitration Demand:

I'll fast forward to 2005. Andersen and [co-defendant's] counsel sat down with [Federal lead adjuster] Smith in a face-to-face meeting; told him about a Hoffman class arbitration demand: "Any questions? We'll explain whatever you want."Within a week or two, all these pleadings come, they're given to Mr. Smith. Now, he's got a chance to do a comparison test. Did he do what he said: Make that call? Compare the two-the allegations-and make that call? We're here on trial in February, 2006. We still haven't had a response from Mr. Smith.

(*Andersen I* Tr. at 48:7-17 (2/21/06), Ex. 4 to Def.'s Mem.) Counsel returned to the subject shortly thereafter:
And this Hoffman arbitration we talked about, we're still sitting here today. There's still no response from Mr. Smith. We're still waiting on that one. You're going to have to ask yourself: Did Fed-

eral really want to help Andersen-really want to defend?

The Answer is pretty clear: No, it didn't. It breached.

(*Id.* at 51:13-19.)Federal did not object to these statements.

Andersen also referred to the Hoffman Arbitration Demand in a series of demonstrative slides accompanying its opening statement. Four slides contained the identical heading "Did Federal Compare the Allegations to the Policy and 'MAKE THAT CALL?' "[FN4] Beneath this, Andersen listed Federal's receipt of underlying claims, organized under month/year headings, with the word "No" after each claim listed, along with a "check" in a box labeled "Breach." (*Andersen I* Demonstrative Slides, Ex. 5 to Def.'s Mem.) The first slide listed the Bryce Action (in its original lawsuit form), submitted in May 2002; the second listed the Bryce Action (resubmitted as an arbitration demand), the Samore Arbitration, the Waters Action, and "Over 200 Demand Letters", submitted in September 2002; the third listed the Viets, Connolly, Moriarty, and Small Arbitrations, and "Over 200 Demand Letters Resubmitted" in March 2003; and the fourth listed the July 2005 Hoffman Arbitration Demand. (*Id.*) The slides were identical, apart from the claim-specific information, except that the Hoffman Arbitration Demand slide also stated: "With this trial starting in February 2006-more than 6 months later-STILL   NO   RESPONSE   FROM FEDERAL".(*Id.*)

> FN4. Neither the slides nor the portions of the transcript of Andersen's opening statement that Federal has attached to its motion make clear whether "call" referred to Federal's decision on whether to provide coverage, or to an actual phone call or other contact to Andersen.

*6 Another slide, labeled "Federal Had What It Needed and Requested", listed Federal's receipt of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                          Page 6
Slip Copy, 2007 WL 844632 (N.D.Ill.)
**(Cite as: Slip Copy, 2007 WL 844632)**

claims submitted by Andersen, organized again in four groups by month and date; the Hoffman Arbitration Demand (July 2005) was the fourth. (*Id.*) On yet another slide, the Hoffman Arbitration Demand was the final entry on a list of ten specific claims that purported to show Federal's alleged delay in responding. (*Id.*) Six other slides listed the senders of the "Over 200 Demand Letters," including Hoffman and Wade. (*Id.*) Federal did not object to these references, nor is the court aware of any argument that the Hoffman Arbitration Demand was not part of the case in *Andersen I.*

By the time the case went to the jury, however, the Hoffman Arbitration Demand appears to have dropped out, as the jury instructions and verdict form in *Andersen I* lacked any reference to the Hoffman claim. The court instructed the jury to give "separate consideration" to each claim brought by Andersen and its co-defendant (an Andersen partner) against Federal, and vice-versa.(*Andersen I* Final Jury Instr., Ex. 9 to Pl.'s Resp.) The court further explained that Andersen had "made three separate submissions to Federal, each containing separate claims," and listed the lawsuits, arbitration demands, and Election Letters (as a group, not individually by author) submitted in May 2002, September 2002, and March 2003.[FN5](*Id.*) Neither July 2005 nor the Hoffman Arbitration Demand was listed. The jury was instructed to determine, with respect to each underlying claim, (1) whether Federal breached its duty to defend; and (2) whether Andersen decided to knowingly forgo Federal's assistance or was so unresponsive and uncooperative with respect to Federal's requests as to relieve Federal of that duty. (*Id.*)

> FN5. The jury instructions listed 214 Election Letters submitted in September 2002, and three additional Election Letters in March 2003. Neither the jury instructions, verdict form, nor the pleadings in *Andersen I* that the parties have attached to their motions here, reveal which group contained the Hoffman and Wade letters, but

as both were April 2002, the court assumes they were in the first group.

> So far as the court is aware, there was no reference in the *Andersen I* trial to the Powers or Tripp Arbitrations, contained in Federal's Third Amended Complaint and in Andersen's answer, incorporating by reference its counterclaims, to that amended pleading. (*Andersen I* Answer to Third Am. Compl. ¶¶ 78-92, 167-92.)

Similarly, the jury's verdict form listed the underlying claims, grouped according to the above three submission dates; the Hoffman Arbitration Demand was not among them, nor was July 2005 listed as a submission date. (*Andersen I* Verdict Form, Ex. 11 to Pl.'s Resp.) Neither party explains the absence of the Hoffman claim from the jury instructions or verdict form, nor has either party identified any reference to that claim in the *Andersen I* record after Andersen's opening statement. So far as the court is aware, there was no comment or discussion on the record in that proceeding, reflecting any kind of formal withdrawal or preservation of the Hoffman claim. Nor has either party presented information concerning when the verdict form was prepared-i.e., whether it was prepared well before Andersen's opening statement, or instead after the evidence had been presented to the jury.

The jury returned its verdict on March 3, 2006, finding that Federal had breached its duty to defend with respect to each underlying claim submitted to the jury, but that Federal was relieved of that duty with respect to the Bryce Action, the Samore and Moriarty Arbitrations, and the 214 Election Letters submitted in September 2002. (*Id.*) Federal was not relieved of its duty with respect to the Waters Action, nor the Small, Connolly, and Viets Arbitrations, nor the three additional Elections Letters submitted in March 2003. (*Id.*) Andersen notes that Election Letters from Waters, Small, and Viets were among the 214 for which the jury found that Federal had been relieved of its duty to defend, even though the jury also concluded that Federal

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                           Page 7
Slip Copy, 2007 WL 844632 (N.D.Ill.)
**(Cite as: Slip Copy, 2007 WL 844632)**

was not relieved of that duty with respect to Waters'
suit or Small and Viet's arbitration demands.[FN6]
(Pl.'s Resp., at 6.) After the close of trial, however,
Judge St. Eve granted Federal's motion for a direc-
ted verdict with respect to the Small, Connolly, and
Viets Arbitrations, as well as the three additional
Election Letters. (*Andersen I* Order of 4/4/06
(325).)

> FN6. Connolly had not submitted an Elec-
> tion Letter.

*7 The court denied Federal's subsequent motion
for a directed verdict with respect to the Waters Ac-
tion, which constituted the only portion of the jury's
verdict that remained standing in favor of Ander-
sen, (*Andersen I* Order of 7/19/06 (383)), and on
January 24, 2007 entered a monetary judgment for
Andersen of nearly $5.6 million, consisting mainly
of settlement costs of the Waters Action. (*Andersen
I* Order of 1/24/07 (402).) On January 31, 2007,
Judge St. Eve denied Andersen's request for dam-
ages under Section 155 of the Illinois Insurance
Code, concluding that Federal had not been
"vexatious" or "unreasonable" in responding to the
Waters Action. (*Andersen I* Order of 1/31/07 (403),
at 2-3.) Both parties have appealed the jury verdict
and several of the *Andersen I* court's rulings. *See
Andersen I, appeal docketed,* No. 07-1245 (7th Cir.
Feb. 1, 2007) & No. 07-1464 (7th Cir. Mar. 1,
2007).

Andersen filed the present action, pertaining to
Federal's alleged refusal to defend the Hoffman Ar-
bitration Demand, on April 3, 2006. Federal con-
tends that Andersen is attempting to relitigate
claims that had been tried in *Andersen I,* and moves
to dismiss Andersen's complaint as barred by the
doctrines of *res judicata* and collateral estoppel.

## DISCUSSION

### I. Legal Standard

Federal moves to dismiss Andersen's claims pursu-

ant to FED. R. CIV. P. 12(b)(6). The purpose of a
Rule 12(b)(6) motion is to test the sufficiency of
the plaintiff's complaint, not to decide its merits.
*Gibson v. City of Chicago,* 910 F.2d 1510, 1520
(7th Cir.1990). On a motion to dismiss, the court
accepts all well-pleaded allegations in a claim as
true and draws all reasonable inferences in favor of
the plaintiff. *See Jackson v. E.J. Brach Corp.,* 176
F.3d 971, 977-78 (7th Cir.1999). A motion to dis-
miss will be granted only "if it appears beyond
doubt that the plaintiff can prove no set of facts in
support of his claim which entitles him to
relief."*Conley v. Gibson,* 355 U.S. 41, 45-46, 78
S.Ct. 99, 2 L.Ed.2d 80 (1957). Stated differently, a
complaint will survive a Rule 12(b)(6) motion if it
"narrates an intelligible grievance that, if proved,
shows a legal entitlement to relief."*U.S. Gypsum
Co. v. Ind. Gas Co.,* 350 F.3d 623, 626 (7th
Cir.2003).

Although neither party addresses the issue, the
court notes that *res judicata* and collateral estoppel
are affirmative defenses, pursuant to which dis-
missal under Rule 12(b)(6) is generally not appro-
priate. *See U.S. Gypsum Co.,* 350 F.3d at 626
(impermissible to dismiss complaint based on stat-
ute of limitations or issue preclusion defense be-
cause a complaint "need not anticipate or attempt to
defuse" an affirmative defense). Because such de-
fenses often require the court to consider matters
outside the complaint, a motion raising these de-
fenses ordinarily must be treated as one for sum-
mary judgment. *See Gen. Elec. Capital Corp.,* 128
F.3d at 1080 (citing FED. R. CIV. P. 12(b); *see,
e.g., D & K Props. Crystal Lake v. Mut. Life Ins.
Co. of New York,* 112 F.3d 257, 259 n. 1 (7th
Cir.1997) (district court properly construed motion
to dismiss on *res judicata* grounds as motion for
summary judgment). As noted, however, a court in
ruling on a motion to dismiss may take judicial no-
tice of matters in the public record, including plead-
ings and orders in previous cases, without convert-
ing a Rule 12(b)(6) motion into a motion for sum-
mary judgment. *See Gen. Elec. Capital Corp.,* 128
F.3d at 1080 (collecting cases); *Henson v. CSC*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                    Page 8
Slip Copy, 2007 WL 844632 (N.D.Ill.)
(Cite as: Slip Copy, 2007 WL 844632)

*Credit Servs.*, 29 F.3d 280, 284 (7th Cir.1994) (district court properly considered public court documents from prior state court litigation in deciding defendants' motion to dismiss for failure to state a claim). Thus, "[w]hen a defendant raises *res judicata* as a defense and it is clear from the complaint's face, and matters of which the district court may take judicial notice[,] that the plaintiff's claims are barred as a matter of law, dismissal under Rule 12(b)(6) is proper." *Wilson v. Bob Watson Chevrolet, Inc.*, No. 03 C 5535, 2004 WL 432493, at *2 (N.D.Ill. Mar.02, 2004) (Aspen, J.) (citing *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86-87 (2d Cir.2000)); *accord, e.g., Quincy Mall, Inc. v. Parisian, Inc.*, 27 F. App'x 631, 636 (7th Cir.2001) (looking to public court documents filed in bankruptcy proceedings in affirming motion to dismiss on *res judicata* grounds); *4901 Corp. v. Town of Cicero*, 220 F.3d 522, 527 n. 4 (7th Cir.2000) (approving district court's reliance on state court order attached to motion to dismiss on *res judicata* grounds); *Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 338 (7th Cir.1995) (affirming dismissal pursuant to Rule 12(b)(6) on *res judicata* grounds).

*8 Significantly, Andersen does not object on procedural grounds to consideration of Federal's affirmative defenses, and in fact urges the court to consider materials from *Andersen I.* (Pl.'s Resp., at 3 n. 2.) Accordingly, by taking judicial notice of the pleadings, orders, and trial transcripts from *Andersen I* in addition to the instant complaint, the court continues to treat Federal's motion as a Rule 12(b)(6) motion to dismiss, rather than convert it into a motion for summary judgment. *See Brown v. Chrysler Fin. Servs.*, No. 05 C 1117, 2006 WL 850881, at *3 (N.D.Ill. Mar.24, 2006) (Andersen, J.) ("Because the basis for dismissal is *res judicata*, this Court may take judicial notice of pleadings and orders in the previous litigation between Plaintiff and [defendant].")

**II. *Res Judicata* and Collateral Estoppel**

Federal contends that in light of the proceedings in *Andersen I*, the doctrines of *res judicata*, or, alternatively, collateral estoppel, prohibit Andersen from maintaining the present action. *Res judicata* (claim preclusion) "serves the interests of judicial economy and finality in disposing disputes by barring both the parties to a judgment and their privies from relitigating the identical cause of action." *Crop-Maker Soil Servs., Inc. v. Fairmount State Bank*, 881 F.2d 436, 438 (7th Cir.1989) (citation omitted). To this end, " 'a final judgment on the merits of an action precludes the parties ... from relitigating issues that were or could have been raised in that action.' " *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 301 (7th Cir.1985) (quoting *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)); *see also Maher v. FDIC*, 441 F.3d 522, 526 (7th Cir.2006) ("*Res judicata* also bars litigation of claims that 'could have been raised' in the previous litigation, but were not.") (quoting *Golden v. Barenborg*, 53 F.3d 866, 869-70 (7th Cir.1995)). In contrast, collateral estoppel (issue preclusion) "foreclos[es] relitigation in a subsequent action of an issue of law or fact that has been actually litigated and decided in the initial action." *Meyer v. Rigdon*, 36 F.3d 1375, 1378 n. 1 (7th Cir.1994) (citations and internal quotation marks omitted).

As explained below, the court concludes that *res judicata* operates to bar Andersen's claims in the present action. As the court need not reach Federal's alternative collateral estoppel argument, the court's discussion of collateral estoppel will be less extensive. The court further notes that the parties briefed the pending motion prior to Judge St. Eve's ruling in *Andersen I* concerning Andersen's Illinois Insurance Code counterclaim; accordingly, the court addresses that claim separately from its preclusion discussion.

**A. *Res Judicata***

Because *Andersen I* proceeded in federal court, the federal rule of *res judicata* applies. *See Matter of*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2007 WL 844632 (N.D.Ill.)

**(Cite as: Slip Copy, 2007 WL 844632)**

Page 9

*Energy Co-op., Inc.,* 814 F.2d 1226, 1230 (7th Cir.1987) (citing RESTATEMENT (SECOND) OF JUDGMENTS § 87 (1982)). Three requirements must be met for *res judicata* to bar a claim: "(1) an identity of the parties or their privies; (2) an identity of the causes of actions; and (3) a final judgment on the merits."[FN7] *Id.* (citing *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981)). The party seeking to invoke *res judicata* bears the burden of proving that the doctrine bars the second action. *Computer Assocs. Int'l., Inc. v. Altai, Inc.,* 126 F.3d 365, 369 (2d Cir.1997).

> FN7. The court notes that the Seventh Circuit recently articulated a somewhat different formulation of the second element: instead of "an identity of causes of action," a short line of cases refers to "an identity of the issues of the lawsuit."*See, e.g., Maher,* 441 F.3d at 526;*Hamdan v. Gonzales,* 425 F.3d 1051, 1059 (7th Cir.2005) (cited by *Maher* for this language and quoting *Dye v. United States Farm Servs. Agency,* 129 F. App'x 320, 322 (7th Cir.2005)).*Dye,* however, cites in turn to *Prochotsky v. Baker & McKenzie,* 966 F.2d 333, 334 (7th Cir.1992), which uses the traditional "identity of the cause of action" language; so did the court in *Highway J Citizens Group v. United States Dep't of Transp.,* 456 F.3d 734, 741 (7th Cir.2006). None of the cases using the *Maher* language explain the change, or suggest that it heralds any substantive change in the *res judicata* test. The court thus proceeds under the assumption that the traditional formulation and analysis still applies.

*9 Andersen does not contend that *Andersen I* did not result in a final judgment on the merits, nor that the parties are not identical here. Andersen's claims will thus be barred if the causes of action were identical in *Andersen I* and the present suit. For *res judicata* purposes, the Seventh Circuit defines a

"cause of action" using the "operative facts" or "same transaction" test, under which "a cause of action consists of a single core of operative facts giving rise to a remedy."*Doe v. Allied-Signal, Inc.,* 985 F.2d 908, 913 (7th Cir.1993) (citation and internal quotation marks omitted); *Matter of Energy Co-op.,* 814 F.2d at 1230. The result is that "[o]nce a transaction has caused injury, all claims arising from that transaction must be brought in one suit or lost."*Allied-Signal,* 985 F.2d at 913 (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 789 F.2d 589, 593 (7th Cir.1986)). The Seventh Circuit has explained that the intent of the inquiry is "to discover whether the plaintiff could have raised the issue in the first suit."*Id.* (citing *Moitie,* 452 U.S. at 398).

According to Federal, the requisite identity of claims is established here. Federal notes that Andersen now pursues the same causes of action for declaratory judgment, breach of contract, and violation of the Illinois Insurance Code that it asserted in its *Andersen I* counterclaims. (Def.'s Mem., at 8.) Federal further argues that the Hoffman Arbitration Demand-the underlying claim that Andersen now alleges Federal breached its duty to defend-arose from the "same set of operative facts" as the "claim demands from retired partners" that were the subject of *Andersen I,* including claim demands submitted by Hoffman and Wade in the form of Election Letters. (*Id.* at 8-9.)Most significantly, Federal urges, "Andersen specifically asked the jury to find that Federal breached the duty to defend in connection with the Hoffman Arbitration Demand."(*Id.* at 8.)

Andersen observes, however, that "claims regarding the Hoffman Arbitration were *never* submitted to the jury [in *Andersen I* ] for resolution."(Pl.'s Resp., at 7 (emphasis in original).) According to Andersen, counsel "referred briefly" to the Hoffman Arbitration Demand in the opening statement merely to show a pattern of conduct, rather than to submit it to the jury for any substantive determination of Federal's obligations with respect to that underlying claim. (*Id.* at 10-11.)Andersen further ar-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 10
Slip Copy, 2007 WL 844632 (N.D.Ill.)
**(Cite as: Slip Copy, 2007 WL 844632)**

gues that it was not required to raise claims concerning the Hoffman Arbitration Demand in *Andersen I*, because those claims did not arise from the same set of operative facts: because the Hoffman Arbitration Demand was filed and submitted to Federal well after Federal filed its first complaint in *Andersen I*, Andersen maintains, it was under no obligation to amend its counterclaims to add claims arising after that initial filing. (*Id.* at 7-9.) Finally, Andersen contends that the fact that the *Andersen I* jury rendered a verdict with regard to the claim demands contained in the Election Letters, including those from Hoffman and Wade, does not establish that the jury determined Federal's obligations with regard to the separate and later-filed Hoffman Arbitration Demand.[FN8] (*Id.* at 9.)

> FN8. Andersen also argues that the fact that its current claims arise from the same insurance contract that was at issue in *Andersen I*, should not operate to bar this action. (*Id.* at 11-12.) Federal at no point contends that *res judicata* precludes Andersen's claims merely because they arise from the same insurance policy, however, so the court need not address this argument.

**\*10** For several reasons, the court finds Andersen's arguments unpersuasive. According to Andersen, it "referred briefly" and "introduced some evidence related to" the Hoffman Arbitration Demand in *Andersen I* only to show a pattern of conduct by Federal to delay and refuse to promptly undertake its defense obligations ... and to show that Andersen was quick to set up a meeting" with Federal lead adjuster Smith, thus "counter[ing] Federal's assertions that Andersen was purposefully uncooperative."(Pl.'s Resp., at 10.) Citing *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354 (11th Cir.1998), Andersen contends that such "evidentiary references to events that occurred after a suit was filed do not establish a basis for claims preclusion in a later action challenging those events."(*Id.*) In the court's view, this argument relies on an unconvin-

cing characterization of Andersen's discussion of the Hoffman Arbitration Demand during the *Andersen I* trial. Indeed, the record of Andersen's opening statement to the jury in that case includes far more than mere "evidentiary references" for any limited purpose of showing a pattern of conduct.

In the opening statement, Andersen's counsel described the meeting in which Andersen notified Smith of the Hoffman Arbitration Demand, noted that Andersen gave a copy of that claim to Federal, and told the jury that Smith had made no comparison with the Policy and provided Andersen with no response. (*Andersen I* Tr. at 48:7-17 (2/21/06), Ex. 4 to Def.'s Mem.) Shortly thereafter, counsel stated the following:

And this Hoffman arbitration we talked about, we're still sitting here today. There's still no response from Mr. Smith. We're still waiting on that one. You're going to have to ask yourself: Did Federal really want to help Andersen-really want to defend?

The Answer is pretty clear: No, it didn't. It breached.

(*Id.* at 51:13-19 (emphasis added).) This language is incompatible with the notion that Andersen never asked the jury to consider whether Federal breached a duty to defend the Hoffman claim.

Even more damaging to Andersen's position are the slides accompanying its opening statement. As noted, four slides, each containing the identical heading "Did Federal Compare the Allegations to the Policy and 'MAKE THAT CALL?' ", listed the underlying claims submitted by Andersen to Federal, organized by four submission dates. The word "No" followed each claim, answering the question posed in the heading; a "check" in a box labeled "Breach" appeared beside each claim as well. (*Andersen I* Demonstrative Slides, Ex. 5 to Def.'s Mem.) The fourth slide listed the Hoffman Arbitration Demand, in a format identical to the other three. Similarly, another slide, labeled "Federal

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                             Page 11
Slip Copy, 2007 WL 844632 (N.D.Ill.)
**(Cite as: Slip Copy, 2007 WL 844632)**

Had What It Needed and Requested", listed the same claims, organized again in four groups by month and date; the Hoffman Arbitration Demand (July 2005) was the fourth. (*Id.*) A column heading asked "Was Andersen Unresponsive and Uncooperative?" and after each of the four groups, including the July 2005 submission consisting of the Hoffman Arbitration Demand, the answer was "No." (*Id.*)In the court's view, the only reasonable interpretation of these slides, especially in conjunction with the language in Andersen's opening statement, is that Andersen asked the jury to conclude that Federal had breached its duty to defend the Hoffman Arbitration Demand, just as Federal had assertedly breached its duty to defend the other three groups of claims; and that Andersen further asked the jury to find that Andersen had not relieved Federal of that duty by being unresponsive or uncooperative.

**\*11** Andersen points out that neither the jury instructions nor the verdict form in *Andersen I* referred to the Hoffman Arbitration Demand. The verdict form, moreover, asked the jury to decide, with regard to each underlying claim, the twin questions of whether Federal breached and whether Andersen's behavior relieved Federal of its duty, but contained no similar questions with regard to the Hoffman Arbitration Demand. According to Andersen, this establishes that claims regarding the Hoffman Arbitration Demand were *"never* submitted to the jury for resolution," and thus were not actually tried and decided in *Andersen I.* (Pl.'s Resp., at 7, 10 (emphasis in original).)

Significantly, Andersen fails to explain *why* it did not submit the Hoffman Arbitration Demand to the jury, in light of the fact that it submitted to the jury the other three groups of underlying claims listed on its opening statement slides. Indeed, the parties do not identify any other references to the Hoffman claim, apart from those in Andersen's opening statement, that may have occurred during the *Andersen I* trial. The materials the parties have attached to their briefs provide no clue as to whether Andersen attempted to submit evidence of the Hoffman claim,

whether Federal objected, whether Andersen explained to the court its decision not to proceed with proof of the Hoffman claim, or whether Andersen attempted to somehow preserve its claims. Moreover, there is no evidence that the verdict form in *Andersen I* had been prepared before trial; indeed, the *Andersen I* docket reveals that the parties first submitted proposed verdict forms upon the court's request on February 28, 2006, immediately before jury deliberations began on March 1, 2006. (*Andersen I* Parties' Submissions to the Court Regarding Multiple Claims/Multiple Parties, and Parties' Proposed Verdict Forms (286).) Given that Federal did not object to Andersen's references to the Hoffman Arbitration Demand, the court is unable to ascertain why Andersen asked the jury at the outset to find that Federal breached its duty with respect to that claim, and than abandoned that request by the time the case went to the jury.

In any event, Andersen's argument appears to confuse *res judicata* with collateral estoppel. As noted, the latter precludes only those issues that have been actually litigated and decided in a prior proceeding, whereas *res judicata* precludes claims that "were or could have been raised" previously. *See Meyer,* 36 F.3d at 1378 n. 1. Here, the question of whether any claims relating to the Hoffman Arbitration Demand "could have been raised" may be academic, for by arguing to the jury that Federal breached its duties with respect to that demand, and that Andersen had not been uncooperative and unresponsive, those issues arguably "were" in fact "raised." *See Donovan,* 778 F.2d at 301 (stating the rule of *res judicata* that a final judgment on the merits in an action precludes the parties from "relitigating issues that *were* or could have been raised in that action") (quoting *Allen,* 449 U.S. at 94) (emphasis added). By seeking to avoid the preclusive effect of its references to the Hoffman Arbitration Demand in *Andersen I,* Andersen effectively asks the court to find that the doctrine of *res judicata* contains a "loophole" that prevents claim preclusion where a party raises a claim at the beginning of trial, but abandons that claim before the case goes to the

Slip Copy                                                                    Page 12
Slip Copy, 2007 WL 844632 (N.D.Ill.)
(Cite as: Slip Copy, 2007 WL 844632)

jury. Andersen cites to no authority in support of this proposition, and this court is aware of none.

**\*12** Andersen's reliance on *Pleming* is unavailing. The plaintiff in *Pleming*, a laborer, applied for a lower-paying clerical position with her employer a year after suffering a back injury. 142 F.3d at 1355. Denied the position, she filed a federal employment discrimination suit in August 1994, alleging race and disability discrimination. *Id.* In May 1995, she learned in the course of discovery that two similar clerical positions had become available in October 1994, which the defendant filled without notifying her.*Id.* Although she never amended her complaint to include allegations arising from those incidents, she referred to them in her briefs as proof that the employer's stated reason for having denied her the earlier position-a policy against allowing employees to transfer to lower-paying jobs-was a pretext.*Id.* at 1355-56.The court granted summary judgment for the employer, finding that the plaintiff had failed to show pretext; thereafter, she filed another complaint alleging discrimination and retaliation based on the company's decision to hire other applicants for the October 1994 positions.[FN9]*Id.* at 1356.The defendant filed a motion to dismiss on *res judicata* and/or collateral estoppel grounds, which the district court granted. *Id.*

> FN9. Although the initial summary judgment ruling is unpublished, the district court in the course of the second litigation noted that the company used a temp agency to fill the two positions, rather than transfer any current employees. *Pleming v. Universal-Rundle Corp.,* 68 F.Supp.2d 1329, 1331 (N.D.Ga.1999), *remanded from Pleming,* 142 F.3d 1354.

The Eleventh Circuit reversed. The court noted that because the events giving rise to the second suit arose after the plaintiff had filed her complaint in the first suit, she had not been obligated to amend her complaint to add those claims. *Id.* at 1357.The employer argued, however, that she had nonetheless asserted claims concerning the October 1994

tions by referring to them in her attempt to argue pretext, citing language from a previous Eleventh Circuit case that noted that *res judicata* could preclude claims *"actually* asserted by supplemental pleadings *or otherwise* in the earlier action."*Id.* (quoting *Manning v. City of Auburn,* 953 F.2d 1355, 1360 (11th Cir.1992) (second emphasis supplied in *Pleming* )). The court disagreed, explaining that a claim can be "otherwise" asserted for *res judicata* purposes only in accordance with the Federal Rules of Civil Procedure; in addition to amending a pleading, a claim can be asserted in a pretrial order, or where an issue is tried with the parties' express or implied consent. *Id.* at 1358 (citing FED. R. CIV. P. 15(b) & 16(e)). None of these had occurred in the first suit: no pretrial order had been filed, and because the employer in fact had objected to plaintiff's references in her briefs to the October 1994 positions, implied consent was not a possibility. *Id.* The court concluded that the plaintiff's references to the employer's decisions regarding those positions in the first action, to show pretext, were insufficient to put substantive claims concerning those decisions before the court, such as would preclude her from pursuing them in the second action.[FN10]*Id.* at 1359.

> FN10. For similar reasons, the court concluded that collateral estoppel did not apply because the plaintiff did not "actually litigate" the issue of whether the employer's filling of the October 1994 positions constituted independent acts of discrimination. *Pleming,* 142 F.3d at 1360.

**\*13** *Pleming* is readily distinguishable from the present circumstances. There, it was clear that the purpose of the plaintiff's references, in her first lawsuit's briefs, to the subject of her second lawsuit-the employer's filling of the positions that had opened up in October 1994-was an attempt to prove a different claim-the discrimination claim in the first lawsuit, arising from the employer's refusal to hire her for the earlier-available position. Here, it is not at all clear that by telling the jury that Federal

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

had breached its duty to defend the Hoffman Arbit- ration Demand, Andersen was in fact merely at- tempting to show that Federal had breached with respect to the other underlying claims. As noted, Andersen, in its four demonstrative slides listing underlying claims for which Federal allegedly breached its duty to defend, presented allegations regarding the Hoffman Arbitration Demand in the same manner as the other underlying claims, all of which were indeed submitted to the jury with in- structions to determine Federal's obligations; the slide containing the Hoffman Arbitration Demand was virtually identical to the three others. If any- thing, it suggested even more strongly that Federal had breached, as it stated "more than 6 months later-STILL    NO    RESPONSE    FROM FEDERAL".(*Andersen I* Demonstrative Slides, Ex. 5 to Def.'s Mem.) This identical presentation of the underlying claims does not suggest that the Hoff- man Arbitration Demand-or any particular claim demand-was presented for some ulterior evidentiary purpose that differentiated it from the other claims. Moreover, if Andersen's purpose in bringing the Hoffman Arbitration Demand to the jury's attention indeed was merely to provide evidentiary support for allegations relating to other claim demands, An- dersen fails to explain how such evidence would even be relevant: Federal's conduct in response to the Hoffman Arbitration Demand, noticed to Feder- al in July 2005, would not be at all probative of whether Federal breached its duties with respect to claim demands noticed to Federal in May 2002, September 2002, and March 2003. In short, Ander- sen's references to the Hoffman Arbitration De- mand in *Andersen I,* unlike the references to the October 1994 positions in the *Pleming* plaintiff's first lawsuit, cannot plausibly be interpreted as hav- ing some purpose other than what the references themselves suggest: a claim that Federal breached its duties with respect to that underlying claim de- mand.[FN11]

> FN11. Plaintiff's citation to another Elev- enth Circuit case is equally unpersuasive. In *Wu v. Thomas,* 863 F.2d 1543, 1548-49

(11th Cir.1989), the court rejected the de- fendant's argument that the plaintiff had "implicitly amended her complaint to in- clude a claim of retaliation" in her initial action, thus precluding any later retaliation claim, merely because some of the testi- mony "touched on retaliatory actions taken" by the defendant. As explained, An- dersen did far more than merely "touch upon" the Hoffman Arbitration Demand in *Andersen I.*

> The court also notes that the Eleventh Circuit, citing *Pleming,* has observed that while *res judicata* ordinarily will not bar a claim "that was not in existence at the time of the original action," such a claim is nonetheless precluded where "the facts underlying the claim were ac- tually raised in that action."*In re Piper Aircraft Corp.,* 244 F.3d 1289, 1299 (11th Cir.2001); *see also Martin K. Eby Const. Co., Inc. v. Jacobs Civil, Inc.,* No. 3:05-cv-394-J-32TEM,    2006    WL 1881359, at *10 (M.D.Fla. July 6, 2006) (noting that claims that "could have been brought" in an earlier action include "claims actually asserted by supplement- al pleadings or otherwise in he earlier action," and that *"[r]es judicata* will also bar a claim if 'the facts underlying the claim were actually raised' in the earlier action.") (quoting *Piper,* 244 F.3d at 1299).

*Pleming* is also distinguishable because the defend- ant in that case had in fact objected to the plaintiff's references in her briefs to the October 1994 posi- tions, an objection the court found significant be- cause it precluded any possibility that claims arising from the employer's filling of those posi- tions had been tried with the parties' implied con- sent. 142 F.3d at 1358. Here, as noted, Federal did not object in *Andersen I* to Andersen's references to the Hoffman Arbitration Demand, so far as the

Slip Copy, 2007 WL 844632 (N.D.Ill.)
**(Cite as: Slip Copy, 2007 WL 844632)**

court is aware.

**\*14** The court concludes here that in the earlier litigation, Andersen did raise the issue of whether Federal breached its duties with regard to the Hoffman Arbitration Demand. Andersen's remaining arguments, which contend that such a claim did not involve issues that "could have been raised" in *Andersen I* because they did not arise from the same "core of operative facts," *Allied-Signal,* 985 F.2d at 913, are therefore largely beside the point. Andersen contends that because the Hoffman Arbitration demand was filed and noticed to Federal well after Federal filed its initial complaint in *Andersen I,* Andersen was not obliged to amend its pleadings to add a counterclaim arising after the filing of that original complaint. (*Id.* at 7-9.)That Andersen was not *obliged* to amend its counterclaims does not, of course, establish that Andersen was barred from doing so. It argues, however, that it was in fact barred from adding a claim regarding the Hoffman Arbitration Demand because discovery in *Andersen I* had closed by the time that claim demand was filed and noticed to Federal, and summary judgment briefing was complete. (*Id.* at 8.) Indeed, Andersen notes that Federal itself elected not to amend its pleadings in response to the Huelsmann Arbitration, which, Andersen maintains, illustrates that later-filed claim demands could not be added to *Andersen I.*

Andersen is correct that, as a general matter, a party is not required to amend its pleadings to add a claim that arose from a "separate wrong," after the filing of an initial complaint, in order to preserve that claim and prevent the operation of *res judicata. See Perkins v. Bd. of Trustees of Univ. of Ill.,* 116 F.3d 235, 236 (7th Cir.1997) (*res judicata* requires joinder of claims based on the same, or nearly the same, factual allegations, "without compelling the joinder of claims arising from separate wrongs," i.e., where "wrongful events are separated by time and function"); *Maharaj v. Bankamerica Corp.,* 128 F.3d 94, 97 (2d Cir.1997) (citation omitted) (where "defendant engages in actionable conduct" after suit is filed, "plaintiff may-but is not required

to-file a supplemental pleading setting forth defendant's subsequent conduct [,]" because "as a matter of logic, when the second action concerns a transaction occurring after the commencement of the prior litigation, claim preclusion generally does not come into play"); *Allied-Signal,* 985 F.2d at 914-15 (citations omitted) (noting that a litigant "is not obligated to bring all claims together if they do not arise out of the same transaction"; therefore, "plaintiffs need not amend filings to include issues that arise after the original suit is lodged."). None of these cases, however, addresses the effect of *res judicata* where, as here, a litigant does not formally amend its pleadings but nonetheless chooses to present a later-arising claim at trial, without objection from the opponent. If *res judicata* were not to apply in such circumstances, the doctrine would be toothless: a party seeking to avoid preclusion could simply choose not to amend its pleadings, test the later-arising claim before a jury, and, if unsuccessful, bring a separate action for another attempt. As the Seventh Circuit explained in *Allied-Signal,* the *res judicata* inquiry "is intended to discover whether the plaintiff could have raised the issue in the first suit."985 F.2d at 913 (citing *Moitie,* 452 U.S. at 398). The fact that Andersen did in fact raise the specter of Federal's alleged breaches concerning the Hoffman Arbitration Demand essentially ends the inquiry.

**\*15** For the same reasons, it is immaterial that Andersen received the Hoffman Arbitration Demand in June 2005, after the close of discovery and the completion of summary judgment briefing in *Andersen I.* Although Andersen may not have had any obligation to amend its counterclaims in such circumstances, it could have sought leave of the court to do so either before or even after the February 2006 trial, if it planned to present that underlying claim to the jury along with the other claim demands-as Andersen in fact chose to do. *See*FED. R. CIV. P. 15(b) (allowing amendment of pleadings to conform to the evidence at trial, even after judgment). Similarly, the fact that Federal elected not to amend its pleadings to include the Huelsmann Ar-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 844632 (N.D.Ill.)
(Cite as: Slip Copy, 2007 WL 844632)

bitration is irrelevant, as Andersen does not suggest that that claim was raised or in any way involved in the *Andersen I* proceedings.

Andersen's argument that the jury in *Andersen I* did not determine Federal's obligations with respect to the Hoffman Arbitration Demand, merely by virtue of deciding Federal's obligations with respect to the Election Letters, ultimately misses the mark as well. Andersen is correct that the *Andersen I* jury was instructed to treat the Election Letters separately from the arbitration demands and lawsuits that constituted the underlying claims in that case. Indeed, the verdict suggests that the jury followed those instructions: it found that Federal was *not* relieved of its duty to defend with respect to the Waters Action, the Small Arbitration, and the Viets Arbitration, even though Election Letters from Waters, Small, and Viets were among the 214 for which the jury found Federal *had* been relieved of its duty to defend. (*Andersen I* Verdict Form, Ex. 11 to Pl.'s Resp.) Although Judge St. Eve subsequently issued a directed verdict that Federal was relieved of its duty with respect to the Small and Viets Arbitrations, (*Andersen I* Order of 4/4/06 (325)), the end result nonetheless left Federal unrelieved of its duty to defend the Waters Action, while relieved of that duty with respect to Waters' Election Letter. This gives rise to an inference that claim demands in the form of lawsuits and arbitration demands were indeed separate from claim demands in the form of Election Letters. Moreover, as Andersen points out, the Hoffman Arbitration Demand made additional allegations not found in Hoffman's or Wade's letters: the latter requested a lump sum ERB payment pursuant to Andersen's partnership agreement, while the former also stated allegations regarding a monthly BRB stipend and breaches of fiduciary duty. Resolving inferences in favor of Andersen for purposes of his motion, it would be reasonable to conclude that the Hoffman Arbitration Demand did not arise from the same "operative facts" as the Election Letters authored by Hoffman and Wade; therefore, Andersen's present claims relating to the Hoffman Arbitration

Demand may not have been claims that "could have been raised" in *Andersen I*.

*16 As explained above, however, Andersen *did* present those claims to the jury in *Andersen I*: in its opening statement, it argued that Federal had breached its duty to defend the Hoffman Arbitration Demand, and that Andersen had not relieved Federal of that duty by being uncooperative or unresponsive. These contentions were presented to the jury in the same manner as the other three groups of underlying claims, all of which went to the jury at the close of trial, and Federal did not object to these references to the Hoffman claim. Moreover, Andersen has identified no part of the *Andersen I* proceedings in which it explained its decision not to proceed with the Hoffman claim, or formally withdrew any claim relating to the matter, or was forced to drop such a claim due to any (sustained) objection from Federal. If any of these circumstances had been present, there might be a basis for concluding that the parties understood that Andersen intended to "carve out" any claims relating to the Hoffman Arbitration Demand, and preserve them for potential future litigation. In the absence of any contention that there was such an understanding, or of any other plausible explanation, it appears that Andersen simply abandoned its claims with respect to the Hoffman Arbitration Demand without comment.

Andersen's claims in this lawsuit, to the extent they seek a declaratory judgment and allege a breach of Federal's duty to defend with respect to the Hoffman Arbitration Demand, are therefore barred by *res judicata.*

**B. Collateral Estoppel**

Because the court finds Andersen's breach of contract and declaratory judgment claims barred by *res judicata,* the court need not reach Federal's alternative argument that the complaint must be dismissed on collateral estoppel grounds. The court notes, however, that Federal would likely not be entitled to dismissal on this basis.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 16

Slip Copy, 2007 WL 844632 (N.D.Ill.)

**(Cite as: Slip Copy, 2007 WL 844632)**

Collateral estoppel, unlike *res judicata*, operates to bar relitigation of issues of law and fact, rather than claims, and only those issues that have been actually litigated and decided in a previous action. *See Pleming*, 142 F.3d at 1359;*Meyer*, 36 F.3d at 1378 n. 1. Collateral estoppel applies where: "(1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was fully represented in the prior action."*Havoco of Am., Ltd. v. Freeman, Atkins & Coleman, Ltd.,* 58 F.3d 303, 307 (7th cir.1995) (citations omitted). The parties here dispute the first two elements. Federal contends that the issue of whether Federal breached its duty to defend the Hoffman Arbitration Demand was actually litigated in *Andersen I* because (1) Andersen presented that issue to the jury; and (2) the jury found that Federal was relieved of its duty with respect to Hoffman's and Wade's claim demands in the form of their Election Letters. (Def.'s Mem., at 10.) Andersen argues that no identical issue was litigated in *Andersen I* because issues relating to Federal's duty to defend the Hoffman Arbitration Demand "were never presented to, nor decided by, the jury in *Andersen I.*" (Pl.'s Resp., at 13.) Andersen maintains that its specific references to that demand in *Andersen I* did not amount to having "actually litigated" those issues; furthermore, the jury, in its determination with respect to the Hoffman and Wade Letters, resolved different issues than those presented by the Hoffman Arbitration Demand. (*Id.* at 13-15.)

**\*17** As discussed above, the court has concluded that Andersen did in fact present the issue of Federal's alleged breach with respect to the Hoffman Arbitration Demand to the jury in *Andersen I*; that issue is identical to the issue Andersen presents in the instant complaint. The Seventh Circuit has explained, however, that collateral estoppel only bars an issue that has been both litigated *and* decided:

Collateral estoppel applies, precluding relitigation

of a question, only if the question was *actually adjudicated....* It is sometimes difficult, however, to distinguish in practice between a case in which a question was not adjudicated and one in which the balance of evidence inclined so decisively on one side of the question that the adjudication was over in a wink (maybe because the party who had the burden of proof presented no evidence), in which event collateral estoppel still applies.... A helpful approach to drawing this distinction is to separate adjudication into litigation and decision.... A question must be litigated, *but it also must be decided,* for collateral estoppel to bar its relitigation.

*Truck Ins. Exch. v. Ashland Oil, Inc.,* 951 F.2d 787, 792 (7th Cir.1992) (internal citations omitted) (emphasis added). An issue can be "litigated" even if no evidence is introduced; but it must also be resolved, such as where a party designates an issue for trial in a pretrial order, but introduces no evidence and thus fails to carry its burden of proof. *Id.* at 792-93.

It does not appear that the jury in *Andersen I* actually decided whether Federal breached its duty to defend, nor whether Andersen relieved Federal of that duty, with respect to the Hoffman Arbitration Demand specifically. Andersen so argued at the outset, as noted, but the jury's verdict form expressed the jury's determinations regarding Federal's obligations only with respect to the underlying claims noticed to Federal in May 2002, September 2002, and March 2003. (*Andersen I* Final Jury Instr., Ex. 9 to Pl.'s Resp.) It may be that Andersen concluded that it would not be able to prove a breach related to the Hoffman claim; in such circumstances, Andersen would have simply failed to carry its burden of proof and that issue would be considered "actually litigated." *See Ashland Oil,* 951 F.2d at 792. The court need not speculate, however, as to why Andersen chose not to pursue that claim, for regardless of whether the issues relating to the Hoffman Arbitration Demand were actually decided in *Andersen I*, Andersen's presentation of those issues to the jury, as explained above,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

is sufficient to preclude Andersen's present claims under *res judicata*, which contains no "actually litigated" requirement.

Federal's other collateral estoppel argument-that Federal's obligations with respect to the Hoffman Arbitration Demand had been determined by virtue of the jury's findings with respect to Hoffman's and Wade's Election Letters-would likely be unsuccessful, as well. As noted, those underlying claim demands raised different issues: in their Election Letters, Hoffman and Wade claimed that Andersen's partnership agreement entitled them to a lump sum ERB payment, while the Hoffman Arbitration Demand alleged that Andersen had rescinded an agreement concerning monthly BRB stipends, and that Andersen was responsible for various breaches of fiduciary duty on the part of active partners. Thus, the jury's determination that Federal had been relieved of its duty to defend Hoffman's and Wade's claim demands in their Election Letters, does not necessary establish that the jury also determined Federal's obligations with respect to the later-filed arbitration demand.

*18 In any event, the court need not decide whether the issues raised in the present action are indeed identical to those raised in *Andersen I*, nor whether those issues had been "actually litigated" in that proceeding. As explained above, Andersen's present claims concerning Federal's obligations pursuant to the Policy are barred by *res judicata*.

### III. Andersen's Illinois Insurance Code Claim

As noted, the court in *Andersen I* bifurcated for trial the issues of whether Federal breached its duty to defend underlying claim demands, or whether Federal was relieved of that duty, from the court's separate resolution of Andersen's counterclaim under Section 155 of the Illinois Insurance Code.(*Andersen I* Order of 1/03/2006 (196).) Section 155 allows for the recovery of attorneys fees and other costs against an insurer who acted vexatiously and unreasonably in delaying or denying a claim. It provides:

In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of [three alternative amounts].

215 ILCS 5/155. Illinois courts have explained that "Section 155 of the [Illinois Insurance] Code is the legislature's remedy to an insured ... 'who encounters unnecessary difficulties when an insurer withholds policy benefits.' " *Peerless Enter., Inc. v. Kruse.* 317 Ill.App.3d 133,144, 738 N.E.2d 988, 999 (2d Dist.2000) (quoting *Richardson v. Ill. Power Co.,* 217 Ill.App.3d 708, 711, 160 Ill.Dec. 498, 577 N.E.2d 823, 826 (5th Dist.1991)). The provision "is intended to penalize vexatious delay or rejection of legitimate claims by insurance companies. If the insurer vexatiously delays or rejects legitimate claims, it is responsible for the expense resulting from the insured's efforts to prosecute the claim." *Estate of Price v. Universal Cas. Co.,* 334 Ill.App.3d 1010, 1012, 268 Ill.Dec. 770, 779 N.E.2d 384, 387 (1st Dist.2002). Section 155 is applicable to a declaratory judgment action premised on a breach of the duty to defend. *Matsushita Elec. Corp. of Am. v. Home Indem. Co.,* 907 F.Supp. 1193, 1200 (N.D.Ill.1995) (citing *Richardson,* 217 Ill.App.3d at 711, 160 Ill.Dec. 498, 577 N.E.2d at 826).

The court in *Andersen I* denied Andersen's request for Section 155 damages on January 31, 2007, concluding that Federal had not been "vexatious and unreasonable" in responding to the Waters Action-the only part of the jury's verdict still standing in favor of Andersen. (*Andersen I* Order of 1/31/07 (403), at 2-3.) At the time briefing was completed on the present motion to dismiss, Judge St. Eve had not yet issued that ruling; consequently the parties

Slip Copy
Slip Copy, 2007 WL 844632 (N.D.Ill.)
**(Cite as: Slip Copy, 2007 WL 844632)**

have devoted little or no attention to the viability of Andersen's Section 155 claim in this action. In a footnote to its reply brief, Federal asserts that Andersen has not argued that its Section 155 claim "should be treated any differently under the *res judicata* doctrine [than] its claims for breach of contract and declaratory judgment," and contends, without elaboration or citation to any authority, that if the court finds those claims barred, "it necessarily should dismiss Andersen's complaint in its entirety."(Reply Memorandum in Support of Federal Insurance Company's Motion to Dismiss, at 3 n. 2.) Andersen refers to its Section 155 claim only once, in passing, arguing that because collateral estoppel does not apply, this court "will need to consider whether Federal's conduct with respect to its handling of the Hoffman Arbitration ... is such that Federal is estopped to deny coverage under Illinois law and is subject to Section 155 liability ...." (Pl.'s Resp., at 14.) Andersen does not explain what should happen to its Section 155 claim in the event the court finds, as it does, that Andersen's breach of contract and declaratory judgment claims are barred by *res judicata.*

*19 Without the benefit of the parties' arguments regarding the issue, the court is reluctant to dismiss Andersen's Section 155 claim at this time, as it dismisses Andersen's breach of contract and declaratory judgment claims. Federal's *res judicata* and collateral estoppel arguments are inapplicable. Because Andersen's Section 155 counterclaim in *Andersen I* was bifurcated from the trial, any such claim with respect to the Hoffman Arbitration Demand was not one that "could have been raised" there for *res judicata* purposes. Nor does Federal contend that the issue of whether its conduct was "vexatious and unreasonable" with regard to the Hoffman claim was either raised or "actually litigated" in *Andersen I*; and Judge St. Eve's separate ruling on Andersen's Section 155 counterclaim considered Federal's conduct only in regard to the Waters Action.

It may be that because Andersen's is precluded

from bringing its declaratory judgment and breach of contract claims, it cannot, under Illinois law, maintain a stand-alone Section 155 claim. *See Yamada Corp. v. Yasuda Fire and Marine Ins. Co., Ltd.,* 305 Ill.App.3d 362, 369, 238 Ill.Dec. 822, 712 N.E.2d 926, 931 (2d Dist.1999) ("without a duty to defend, there can be no breach of contract or violation of ... section 155 of the Illinois Insurance Code.") To this end, the court will entertain a separate Rule 12(b)(6) motion from Federal; the court, however, declines to dismiss Andersen's Section 155 claim on grounds of *res judicata* or collateral estoppel, upon which Federal's present motion is based.

### *CONCLUSION*

For the foregoing reasons, Federal's motion to dismiss (19) is granted with respect to Andersen's claims for declaratory judgment and breach of contract (Counts I and II), and denied with respect to its claim under Section 155 of the Illinois Insurance Code (Count III).

N.D.Ill.,2007.
Arthur Anderson LLP v. Federal Ins. Co.
Slip Copy, 2007 WL 844632 (N.D.Ill.)

END OF DOCUMENT

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2006 WL 850881 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 850881)

**H**

Brown v. Chrysler Financial Services
N.D.Ill.,2006.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
Maurice BROWN, Plaintiff,
v.
CHRYSLER FINANCIAL SERVICES, Defendant.
No. 05 C 1117.

March 24, 2006.

Maurice Brown, Harvey, IL, pro se.
William H.J. Hubbard, David William Fuller,
Howard J. Roin, Mayer, Brown, Rowe & Maw
LLP, Chicago, IL, for Defendant.

*MEMORANDUM, OPINION, AND ORDER*

ANDERSEN, J.
*1 This case is before the Court on the motion of
Defendant DaimlerChrysler Services N.A. LLC
("Chrysler Financial") to dismiss Plaintiff's Com-
plaint. For the following reasons, the motion to dis-
miss is granted.

Defendant, DaimlerChrysler Services North Amer-
ica LLC ("Chrysler Financial") financed plaintiff
Maurice Brown's purchase of a Chrysler 300M
automobile. After Plaintiff defaulted, Chrysler Fin-
ancial repossessed the car.

This case is the third time that Plaintiff has attemp-
ted to litigate against Chrysler Financial concerning
the handling of his account and the repossession of
his car. In the previous two lawsuits-one in the Cir-
cuit Court of Cook County and the other in the
Northern District of Illinois-the courts rejected all
of Plaintiff's claims on the merits and entered judg-
ment in favor of Chrysler Financial. Those judg-
ments became final when Plaintiff chose not to pur-
sue appeals. *Res judicata* bars Plaintiff from relitig-
ating these issues. Accordingly, for the reasons
stated below, Plaintiff's Complaint is dismissed

with prejudice.

*BACKGROUND*

Chrysler Financial financed plaintiff's purchase of a
Chrysler 300M automobile. Because the car was the
collateral for the financing, plaintiff had a contrac-
tual obligation to maintain the car in good condi-
tion. Yet after his car was damaged in a crash,
plaintiff refused to pay for repairs to the car and in-
stead pocketed the insurance proceeds he received.
After the repair shop holding the car threatened to
place a lien on the car for more than $8,000 in re-
pair costs, Chrysler Financial had to pay those costs
in order to preserve the value of its collateral.

Chrysler Financial then brought suit in Illinois state
court to confirm its rights to repossess the car and
to recover the amount of the deficiency following
the repossession. See *DaimlerChrysler Services,
N.A., L.L.C., f/k/a Chrysler Financial Company v.
Maurice Brown,* No. 02M1-611035 (Cir. Ct. Cook
Cty. filed April 24, 2003)("*DamilerChrysler Ser-
vices v. Brown*" or "state court lawsuit"). Plaintiff
raised defenses claiming that Chrysler Financial
had failed to post one of his payments on the loan
("check no 1042") to his account. Plaintiff also
made counterclaims in the Illinois state court case.
He alleged that Chrysler Financial violated the law
by cashing check no. 1042 and failing to post it to
his account, by seeking to collect payments from
Brown, and by repossessing the vehicle. According
to the counterclaims, Chrysler Financial's actions
violated the Fair Credit Reporting Act and various
state laws. Brown sought damages in the amount of
$10 million.

On July 7, 2003, after briefing and a hearing, the
Circuit Court of Cook County granted Chrysler Fin-
ancial's motion for summary judgment. On Novem-
ber 10, 2003, after further briefing, the Circuit
Court denied Plaintiff's motion for reconsideration
and entered judgment in favor of Chrysler Financial

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                        Page 2
Not Reported in F.Supp.2d, 2006 WL 850881 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 850881)

on all counts. Plaintiff filed a notice of appeal, but later filed a motion to dismiss the appeal, which the Appellate Court granted. *DaimlerChrysler Services v. Brown,* No. 03-3649 (Ill.App.Ct. July 23, 2004).

**\*2** Plaintiff then sued Chrysler Financial in federal court. *Maurice Brown v. Chrysler Financial Services, LLC, et al.,* No. 04 C 1339 (N.D. Ill. filed Feb. 20, 2004) *("Brown I"* or "earlier federal case"). He again alleged that Chrysler Financial violated the law by cashing check no. 1042 and failing to post it to his account, by seeking to collect money owed by Plaintiff, and by repossessing the vehicle. See Complaint, *Brown I,* ¶¶ 12-65.Plaintiff sought to resurrect the very claims that he lost in state court, and added a race discrimination claim under various statues, including 42 U.S.C. § 1985, based on his contention that Chrysler Financial's collection efforts were racially motivated. He sought $10 million in damages.

When Chrysler Financial moved to dismiss *Brown I, res judicata* was not applicable because the Cook County judgment was not yet final. As a result, the *Brown I* court addressed Plaintiff's claims on the merits. After full briefing, the *Brown I* court dismissed with prejudice all of Plaintiff's claims in a written opinion. 2004 WL 2091998 (N.D.Ill. Sept.15, 2004). Plaintiff then filed a motion for reconsideration, which was denied in a written order. Minute Order, *Brown I* (entered Jan. 3, 2005). Plaintiff elected not to appeal the judgment, and the judgment in *Brown I* became final when the period for filing a notice of appeal expired on February 2, 2005.

Shortly thereafter, Plaintiff filed this suit. *Maurice Brown v. Chrysler Financial Services, et al.,* No. 05 C 1117 (N.D. Ill. filed Feb. 24, 2005)*("Brown II"* ). In essentially the same language as Plaintiff's pleadings in the prior state and federal court actions, Plaintiff's new complaint alleges that Chrysler Financial violated the law by cashing check no. 1042 and failing to post it to his account, by seeking to collect money owed by Plaintiff, and by repossessing his car. Based on these allegations,

Plaintiff claims that Chrysler Financial violated 42 U.S.C. § 1985 and committed slander and libel by claiming that Brown was in default on his payments to Chrysler Financial. Plaintiff's complaint demands $12 million in damages.

## DISCUSSION

### I. Standard of Decision

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) admits "all well pleaded facts alleged ... as true," and the court may "draw all reasonable inferences in favor of the nonmoving party."*Northern Trust Co. v. Peters,* 69 F.3d 123, 129 (7th Cir.1995). Nonetheless, neither "conclusory statements of law" nor "unsupported conclusions of fact or mixed fact and law are admitted."*Id.* Further, in ruling on a motion to dismiss, a court may take judicial notice of pleadings and orders in previous cases. *See General Electric Capital Corporation v. Lease Resolution Corporation,* 128 F.3d 1074, 1080-82 (7th Cir.1997) (collecting cases); *Booker v. Ward,* 888 F.Supp. 869, 871 (N.D.Ill.1995) (taking judicial notice of Plaintiff's related state court proceedings in ruling on motion to dismiss).

**\*3** Because the basis for dismissal is *res judicata,* this Court may take judicial notice of pleadings and orders in the previous litigation between Plaintiff and Chrysler Financial. *See 4901 Corp. v. Town of Cicero,* 220 F.3d 522, 527 n. 4 (7th Cir.2000) (approving district court's reliance on state court order attached to motion to dismiss on *res judicata* grounds); *Wilson v. Bob Watson Chevrolet, Inc.,* 2004 WL 432493, \*2-4 (N.D.Ill. March 2, 2004) (dismissing complaint under Rule 12(b)(6) when complaint and orders in prior lawsuit together demonstrated that the complaint was barred by *res judicata* ); *Zahran v. Frankenmuth Mut. Ins. Co.,* 1996 WL 182563, \*3n.1 (N.D. Ill. April 15, 1996) (taking judicial notice of documents from prior lawsuits in granting motion to dismiss under Rule

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                   Page 3
Not Reported in F.Supp.2d, 2006 WL 850881 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 850881)**

12(b)(6)).

## II. The Judgment in *Brown I* Bars Plaintiff's Claims under The Doctrine of *Res Judicata*

The preclusive effect of a prior federal judgment is governed by federal law. Under federal law, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action."*Brown v. Felson*, 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) (quoted in *Crop-Maker Soil Services, Inc. v. Fairmount State Bank*, 881 F.2d 436, 438 (7th Cir.1989) (internal quotations omitted)). The doctrine of *res judicata* (or claim preclusion) "bars not only those issues which actually were decided in a prior action but also any issues that could have been raised."*Crop-Maker Soil Services*, 881 F.2d at 439. The elements of *res judicata* are "(1) a final judgment on the merits in a prior action; (2) the identity of the cause of action in both the prior and subsequent suits; and (3) the identity of parties or privies in these suits."*Id.* See also *Roboserve, Inc. v. Kato Kagaku Co., Ltd.*, 121 F.3d 1027, 1034 (7th Cir.1997).

All of the elements for application of *res judicata* are present here. First, the judgment in the earlier federal case is final. Plaintiff elected not to file an appeal, and the judgment became final thirty days after entry of the order denying Plaintiff's motion for reconsideration.

Second, there is an identity of causes of action. Under federal law, "a cause of action consists of a 'single core of operative facts,' " and thus all claims "based on the same, or nearly the same, factual allegations" will be barred in subsequent suits by *res judicata. Roboserve*, 121 F.3d at 1034. Plaintiff cannot avoid the bar of *res judicata* by applying "a different legal theory" to seek "the same type of damages for the same wrong over the same period of time" as the party sought in an earlier suit. *Id.* at 1035.

Plaintiff's current lawsuit arises out of the same core of operative facts as his claims in the earlier federal court litigation: allegations of Chrysler Financial's mishandling of his check no. 1042, illegal collection efforts, impairment of his credit, and repossession of his vehicle. All of Plaintiff's claims for relief arise out of his common set of facts, and Plaintiff even asserts an identical theory of relief in both the first federal court action (*Brown I*) and in his latest complaint-that Chrysler Financial violated his civil rights under 42 U.S.C. § 1985.

**\*4** Third, there is identity of parties or their privies. Plaintiff and Chrysler Financial were parties to *Brown I*. Thus, Plaintiff's complaint is barred by *res judicata* and is dismissed with prejudice.

## III. The Judgement in the Illinois State Court Lawsuit Also Bars Plaintiff's Claims Under The Doctrine of *Res Judicata*

The preclusive effect of the Illinois state court judgment is governed by Illinois law. *Rogers v. Desierio*, 58 F.3d 299, 301 (7th Cir.1995) ("The preclusive effect of a state judgment in federal litigation depends on the rendering state's law") (citing 28 U.S.C. § 1738). The Illinois law of claim preclusion is in all relevant respects identical to federal law on this point: "a final judgment on the merits rendered by a court of competent jurisdiction acts as a bar to a subsequent suit between the parties involving the same cause of action."*River Park, Inc. v. City of Highland Park*, 184 Ill.2d 290, 234 Ill.Dec. 783, 703 N.E.2d 883, 889 (1998)."The bar extends to what was actually described in the first action, as well as those maters that could have been decided in that suit."*Id.*"For the doctrine of *res judicata* to apply, the following three requirements must be satisfied: (1) there was a final judgment on the merits rendered by a court of competent jurisdiction; (2) there is an identity of cause of action; and (3) there is an identity of parties or their privies."*Id.* Finally, "[s]eparate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 4
Not Reported in F.Supp.2d, 2006 WL 850881 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 850881)**

theories of relief." *Id.* at 893.

Thus, for precisely the same reasons that Plaintiff's complaint is barred by the earlier federal judgment (*Brown I* ), it is barred by the judgment in the state court lawsuit as well. First, the state court judgment is final, as Plaintiff formally abandoned his appeal in that case. Second, there is an identity of causes of action. Plaintiff's claims here arise out of the same group of operative facts as his claims in the Illinois state court litigation: allegations of Chrysler Financial's mishandling of his check no. 1042, illegal collection efforts, impairment of his credit, and repossession of his vehicle. Third, there is identity of parties or their privies. Plaintiff and Chrysler Financial were parties to the Illinois state court suit. Thus, the judgment in the state court suit bars Plaintiff's complaint in this case under the doctrine of *res judicata.*

## CONCLUSION

For the foregoing reasons, we grant the motion of Defendant DaimlerChrysler Services N.A. LLC to dismiss Plaintiff's Complaint (# 9). Plaintiff has alleged the same cause of action twice before and both times his claims were rejected on the merits. Plaintiff's complaint is dismissed in its entirety with prejudice.

It is so ordered.

N.D.Ill.,2006.
Brown v. Chrysler Financial Services
Not Reported in F.Supp.2d, 2006 WL 850881 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                                                    Page 1
Not Reported in F.Supp., 1991 WL 18421 (N.D.Ill.)
(Cite as: Not Reported in F.Supp., 1991 WL 18421)

C
Pearson v. Hafnia Holdings, Inc.
N.D.Ill.,1991.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
Fred PEARSON, Plaintiff,
v.
HAFNIA HOLDINGS, INC., Hafnia Insurance
Company, Ltd., Hafnia Insurance Group, Otto A.
Groegler, Frans H. Witt, Per Villum Hansen, and
Hans Koeford, Defendants.
No. 90 C 991.

Feb. 7, 1991.

MEMORANDUM OPINION AND ORDER

LEINENWEBER, District Judge.
*1 At issue in this case is whether defendants,
Hafnia Holdings, Inc. ("Holdings"), Hafnia Insur-
ance Company, Ltd., and Hafnia Insurance Group
(collectively "Hafnia"), and individual defendants,
Otto A. Groegler, Frans H. Witt, Per Villum
Hansen and Hans Koeford, fraudulently induced
plaintiff to enter into a stock purchase agreement
("SPA"). By virtue of the SPA, plaintiff, Fred Pear-
son ("Pearson"), became the 100 percent owner of
Cameron General Corporation ("CGC"). At all rel-
evant times, CGC owned 100 percent of the Rein-
surance Company of America ("RCA").

*DISCUSSION*

The parties came together in or around March, 1983
when Holdings acquired a 51.02 percent interest in
CGC. At the time Holdings acquired 51.02 percent
of CGC, Pearson owned the other 48.98 percent of
CGC. Apparently, Hafnia and Pearson became con-
cerned about RCA's net worth and statutory policy-
holder surplus, and in 1985 they entered into a Ret-
rocession Balances Transfer Agreement ("Retro
Agreement").[FN1] At some point after entering into

the Retro Agreement, Hafnia decided it wanted to
sell its 51.02 percent interest in CGC to Pearson.
Pearson alleges that in order to induce him to sign
the SPA for the 100 percent interest in CGC,
Hafnia offered to enter into an Amended Retro
Agreement ("Amended Retro Agreement") with
RCA, which was allegedly designed to maintain ac-
ceptable levels of RCA's statutory surplus and net
worth. The SPA and the Amended Retro Agreement
were apparently executed on the same day.

Under the terms of the Amended Retro Agreement,
Hafnia was required to pay to RCA amounts associ-
ated with uncollected reinsurance recoveries up to
$2 million over an amount in a special Retro Ac-
count. More importantly, however, the Amended
Retro Agreement provided that Hafnia was to main-
tain a $2 million letter of credit ("LOC") in favor of
RCA. The parties disputed the intent and purpose of
the Amended Retro Agreement, and the dispute was
submitted to arbitration. A unanimous panel of ar-
bitrators concluded: that the purpose and intent of
the Amended Retro agreement corresponded to the
objectives of the original Retro Agreement, that
funds in the Retro Account were to be returned to
RCA, that the $2 million LOC was to be returned to
Hafnia, and upon completion of these transactions,
Hafnia's liability under the Amended Retro Agree-
ment was terminated. This court's colleague, Judge
Zagel, affirmed the decision of the arbitration pan-
el.

Pearson now contends in his lawsuit that he either
mistakenly entered into or was fraudulently induced
by defendants to enter into the SPA. Specifically,
Pearson contends that the fraud resulted from
Hafnia's failure to inform him that it never regarded
its $2 million LOC would be subject to draw-down
and that it was purely for statutory and cosmetic
purposes. Other counts of the complaint allege
breach of fiduciary duty, mistake of fact and unjust
enrichment. The case is presently before the court
on all defendants' motion to dismiss on the ground
that res judicata and collateral estoppel bar Pear-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.    Page 2
Not Reported in F.Supp., 1991 WL 18421 (N.D.Ill.)
(Cite as: Not Reported in F.Supp., 1991 WL 18421)

son's present action. All defendants also move to dismiss the individual counts as failing to state a claim upon which relief can be granted. Finally, the individual defendants move to dismiss for lack of personal jurisdiction. For the reasons stated herein, all defendants' motion to dismiss based on collateral estoppel and/or res judicata is denied. All defendants' motion to dismiss the individual counts is granted in part and denied in part. The individual defendants' motion to dismiss for lack of personal jurisdiction is granted.

I. All Defendants' Motions

A. Res Judicata and Collateral Estoppel

As an initial matter, the court must consider whether a party may bring a motion to dismiss predicated on res judicata and collateral estoppel. Pearson contends that because such a motion requires introduction of evidence beyond the pleadings, it should be treated as a motion for summary judgment. However, the Seventh Circuit has clearly stated that res judicata "may be raised by pre-answer motion or at least it is well within the district court's discretion to allow it to be so raised." *Lambert v. Conrad*, 536 F.2d 1183, 1186 (7th Cir.1976); *see also Frier v. City of Vandalia*, 770 F.2d 699, 701 (7th Cir.1985) (noting that raising res judicata or collateral estoppel in motion to dismiss is irregular, but not fatally so). Moreover, the court notes that Pearson attached numerous exhibits to his complaint, including the notice of cancellation, the Amended Retro Agreement, the SPA, and *the decision of the arbitration panel.* Accordingly, the decision of the arbitration panel is within the scope of the pleadings, and the court elects to treat defendants' motion as a motion to dismiss.

*2 Collateral estoppel bars relitigation of issues actually litigated in a prior suit while res judicata bars relitigation of claims that were litigated in an earlier suit and those that could have been litigated in the prior suit. *Shaver v. F.W. Woolworth Co.*, 840

F.2d 1361, 1364 (7th Cir.1988). The elements of collateral estoppel and res judicata are virtually identical. Res judicata requires a final judgment on the merits in the initial action, identity of the causes of actions and in the parties or privies. *Brown v. J.I. Case Co.*, 813 F.2d 848, 854 (7th Cir.1987); *see also In re Wheat Rail Freight Rate Antitrust Litigation*, 579 F.Supp. 517, 541 (N.D.Ill.1984) (noting similar elements of collateral estoppel). The parties do not dispute that an arbitration award affirmed by the district court represents a final judgment. Thus, the parties contest only whether the instant action and the earlier arbitration involved identical causes of action or identical parties or privies.

Even assuming, *arguendo,* that the arbitration and the present action involved identical causes of actions, defendants here have failed to establish the degree of privity required for collateral estoppel or res judicata. Both sides agree that in deciding whether a current party is in privity with a party in the previous action, the real question is whether the current party was sufficiently involved in the prior action to actuate the principles of collateral estoppel or res judicata. *See* Memo in Support of All Defendants' Motion to Dismiss at 10, citing *Montana v. U.S.,* 440 U.S. 147, 155 (1979); Plaintiff's Memo in Opposition to All Defendants' Motion to Dismiss at 7, also citing *Montana.*

Defendants contend that where a person is involved with a corporate entity and owning a substantial portion of stock, he is in privity with the corporate entity for purposes of res judicata and collateral estoppel. However, cases cited by defendants to support this principal are distinguishable. In all of the cases cited by defendants, courts have clearly concentrated on the party's participation in and effective control over the previous litigation. Thus, in *In re Gottheiner,* 703 F.2d 1136, 1140 (9th Cir.1983), the Ninth Circuit held that an individual who owned all of the outstanding shares of the corporate entity, and who exercised control over the day-to-day affairs of the corporate entity, was in privity. In the instant case, at the time Pearson signed the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                Page 3
Not Reported in F.Supp., 1991 WL 18421 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp., 1991 WL 18421)**

SPA he did not own all of the outstanding shares of the corporate entity. In fact, Pearson was actually the minority shareholder. Further, defendants have not shown that Pearson-and not RCA's president-exercised control over RCA's day-to-day affairs.

**\*3** Similarly, in *In re Teletronics Services, Inc*, 762 F.2d 185, 190 (2d Cir.1985), the Second Circuit specifically held that "judgment against a corporation bars later litigation on the same cause of action by an officer, director or shareholder, if the individual participated in and *effectively controlled the case* " (emphasis added). Moreover, the court noted that the party alleged to be in privity actively participated in the earlier cases by submitting affidavits, executing consent forms to change counsel, causing the engagement of counsel for appeal and by being the corporate entity's sole witness. Further, although the individual in *Teletronics Services* owned only 20 percent of the outstanding stock, he was the principal shareholder. In the instant case, defendants have only alleged that Pearson was a witness on behalf of RCA. Participation as a witness, however, is an insufficient indication that Pearson effectively controlled the arbitration. *Ponderosa Development Corp. v. Bjordahl*, 787 F.2d 533, 536-37 (10th Cir.1986). Further, RCA's president, and not Pearson, executed affidavits on behalf of RCA and was RCA's sole representative during the arbitration.

Finally, defendants rely on *Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 870 (5th Cir.1984), for the proposition that where an individual is a substantial shareholder of a corporation and has a direct proprietary interest in the outcome of the earlier action, he is likewise bound by the determination. However, the court in *Southmark* noted that unlike the instant case, the individual claimed to be in privity was "*actively involved* in the reorganization proceedings [i.e., the earlier action]" (emphasis added).[FN2]

Exercise of control is a question of fact to be proved affirmatively by the party invoking the conclusiveness of the judgment. *Church of Scientology*

*of Calif. v. Linberg,* 529 F.Supp. 945 (C.D.Cal.1981). Although defendants baldly assert that Pearson controlled the prior litigation, *see e.g.*, Memo in Support of All Defendants' Motion to Dismiss at 12, his participation as a witness is the only proof offered. Apparently, the arbitration panel allowed only one representative per side, and RCA sent its president, not Pearson. Further, RCA's president, and not Pearson, executed affidavits on behalf of RCA. Thus, it is clear that mere participation as a witness is not enough to affirmatively show that a party controlled the prior litigation. *See Ponderosa Development Corp.,* 787 F.2d at 536-536 (testimony as witness, even with full access to former plaintiff's evidence does not show control over litigation). Finally, to say that Pearson was the 100 per cent owner of CGC at the time of the arbitration between RCA and defendants, and thus that he is precluded from raising his claim, begs the question of whether he was fraudulently induced into becoming the sole owner of CGC by virtue of the SPA. Therefore, as the court concludes that Pearson was neither a party nor in privity with a party in the earlier action, all defendants' motion to dismiss on grounds of collateral estoppel and/or res judicata is denied.

### B. Failure to Plead Fraud with Particularity

**\*4** All defendants have also moved for dismissal of the complaint on the ground that Pearson has failed to comply with the particularity requirements for pleading fraud imposed by Fed.R.Civ.P. 9(b).[FN3] To satisfy Rule 9(b), "the plaintiff must describe the 'time, place and particular contents of the false representations, as well as the identity of the party making the misrepresentation, and what was obtained or given up thereby.' " *D & G Enterprises v. Continental Ill. Natl. Bank & Trust Co.*, 574 F.Supp. 263, 267 (N.D.Ill.1983); *see also Rallis v. Holiday Inns, Inc.,* 622 F.Supp. 63, 65 (N.D.Ill.1985). Plaintiff's complaint fails to set out the misrepresentations, who made them, or when they were made. Indeed, although plaintiff's complaint targets the individual defendants, it fails to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 4
Not Reported in F.Supp., 1991 WL 18421 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp., 1991 WL 18421)**

identify which defendant allegedly made the mis-representations, when they were made, or the specific nature of the misrepresentation. Thus, defendants have objected that the complaint fails to " 'inform each defendant of the specific fraudulent acts' which constitute the basis of the action against the particular defendant." *Cross v. Simons,* 729 F.Supp. 588 (N.D.Ill.1989) citing *D & G supra* at 267. As the court is granting the individual defendants' motion to dismiss, *infra,* this objection is moot as to the individual defendants. Nevertheless, as the complaint fails to set out the misrepresentations, who made them, or when they were made, the court concludes that Count I fails to satisfy the requirements of Rule 9(b). Accordingly, Count I of the complaint is dismissed without prejudice. Pearson is given three weeks from entry of this order to submit an amended complaint or else Count I will be dismissed with prejudice.

### C. Breach of Fiduciary Duty

Pearson's claim of breach of fiduciary duty rests on the assertion that Pearson and Holdings were in a joint venture.[FN4] Thus, Pearson contends that Holdings breached its fiduciary obligations to Pearson by failing to disclose that Holdings and Hafnia did not regard Hafnia's obligations under the Amended Retro Agreement as subject to risk. *See* Cmplt. at ¶ 37. Defendants, however, contend that Illinois law does not recognize a fiduciary duty in this case because "this was not a joint venture." All Defendants' Reply Memo at 10. Rather, defendants contend that the SPA which transferred Holdings' interest to Pearson was an arms-length transaction.

Illinois courts have consistently held that most business relationships do not of themselves create fiduciary obligations, *Bonfield v. AAMCO Transmissions, Inc.,* 708 F.Supp. 867, 883 (N.D.Ill.1989). However, Illinois courts have held that a relationship between joint venturers is fiduciary in character, imposing an obligation of loyalty and good faith upon participants. *Ambuul v. Swanson,* 162 Ill.App.3d 1065 (1st Dist.1987). Moreover, the fi-

duciary obligation remains in effect until the joint venture is terminated. In the instant case, the alleged joint venture was created in or around March, 1983 when Holdings acquired a 51.02 percent interest in CGC, and terminated by execution of the SPA in September, 1986. Although defendants' argument implies otherwise, nobody contends that the SPA itself was a joint venture. Any fiduciary obligation of loyalty and good faith created by the joint venture would extend up to and through the negotiations surrounding the SPA. By focusing only on the arms-length nature of the SPA, defendants have ignored the more central question of whether there was, in fact, a joint venture between Holdings and Pearson in the joint ownership of CGC.

**\*5** For his part, Pearson has failed to allege facts sufficient to show that a joint venture existed between Pearson and Holdings. The existence of a joint venture is not presumed and the burden of proving joint venture is on the party asserting its existence. *Palin Mfg. Co., Inc. v. Water Technology, Inc.,* 103 Ill.App.3d 926, 59 Ill.Dec. 553 (1st Dist 1982). The court in *Hallmark Ins. Admrs. Inc. v. Colonial Penn Life Ins. Co.,* 697 F.Supp. 319, 325 (N.D.Ill.1988), noting that determining the existence of a joint venture is a matter of gleaning the parties' intent, stated that the following elements are essential to a joint venture:

"a common interest in the purpose of the venture, as shown by each venturers' contributions of property, financial resources, effort, skill or knowledge; mutual control over the policies of the enterprise; the right to direct and govern the conduct of the other in connection with the venture and the sharing of the venture's profits and loses." [citations omitted]

Moreover, the court stated that in the absence of any of these elements, there is no joint venture. *Id.* Although there is some indication Holdings purchased its 51.02 percent interest in CGC from Pearson,[FN5] the plaintiff has failed to allege any facts relating to Holdings' purchase of stock in CGC which might indicate that the parties were in a joint

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1991 WL 18421 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp., 1991 WL 18421)**

venture. Owning shares of a corporation, without more, is insufficient to show a joint venture. In the absence of these vital facts, the court, on a motion to dismiss, is unwilling to determine that Holdings and Pearson entered into a joint venture. On a motion to dismiss, only reasonable inferences from well pled facts need to be taken as true. The court is not required to accept legal conclusions either alleged or inferred from pleaded facts. *See Carl Sandburg Village Condo. Ass'n. No. 1 v. First Condo. Dev. Co.,* 758 F.2d 203, 207 (7th Cir.1985). Therefore, Pearson has failed to properly allege a breach of fiduciary duty. Accordingly, Count II of the complaint is dismissed without prejudice. As was the case for Count I, Pearson is given three weeks from entry of this order to amend this count, or the dismissal will be with prejudice.

### D. Mistake of Fact and Unjust Enrichment

Defendants moved in their initial brief to dismiss Counts III (mistake of fact) and IV (unjust enrichment) against the individual defendants because the individual defendants were not parties to the SPA. The court notes, however, that Counts III and IV do not purport to state claims against the individual defendants. Perhaps recognizing this, defendants have abandoned that argument and now argue (without any authority) that unilateral mistake alone is not a basis of rescission.

In Illinois, three conditions must be fulfilled before a contract may be rescinded: (1) the mistake must relate to a material fact, (2) it must have occurred despite exercise of reasonable care, and (3) the other party must be placed in the position it was in prior to the execution of the contract. *S.T.S. Transport Service, Inc. v. Volvo White Truck Corp.,* 766 F.2d 1089, 1093 (7th Cir.1985). Pearson has alleged each element. Moreover, the court is unconvinced that Counts III and IV are premised solely on the basis of the fraud alleged in Count I. Accordingly, the motion to dismiss Counts III and IV is denied.

### II. Individual Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

**\*6** All of the individual defendants are officers or agents of the corporate defendants and all are citizens of Denmark.[FN6] Although all of the individual defendants were involved in the negotiations surrounding the Amended Retro Agreement and the SPA, all contend that their respective involvements in the negotiations were solely as officers or directors of a Hafnia entity. *See* affdvts. at ¶ 4. Thus, the individual defendants seek to invoke the "fiduciary shield" doctrine, which holds in certain circumstances, that an individual's acts undertaken as a representative of his corporate employer do not serve to confer jurisdiction over the individual. *See Rollins v. Ellwood,* No. 69697, slip op. (Ill.Sup.Ct., Nov., 1990); *Hurletron Whittier, Inc. v. Barda,* 82 Ill.App.3d 443 (1st Dist.1980).

Courts that have applied the doctrine have found it unreasonable, under either the Federal or Illinois due process clause, to assert personal jurisdiction over an "individual who seeks protection and benefits of Illinois law, not to serve his personal interests, but to serve those of his employer or principal." *Rollins v. Ellwood,* No. 69697, slip op. at 26. The parties have correctly pointed out that the fiduciary shield doctrine is equitable in nature and committed to the sound discretion of the court based on the facts of each case. *Washburn v. Becker,* 186 Ill.App.3d 629, (1st Dist.1989).

In the instant case, the complaint clearly alleges that the individual defendants were, and are, officers and agents of Holdings and Hafnia. Cmplt. at ¶¶ 4-5. Furthermore, the complaint alleges that the individual defendants acted in their capacity as officers and agents of the corporate defendants "at all times relevant hereto." *Id.* Although Pearson now attempts to assert that the individual defendants engaged in "personal misdeeds" and other tortious conduct that "reaches beyond their duties and obligations as officers and directors of the corporate defendants,"*see e.g.,* Memo in Opposition to Individual Defendants' Motion at 1, 5, he has failed to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                Page 6
Not Reported in F.Supp., 1991 WL 18421 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp., 1991 WL 18421)**

allege any facts substantiating these assertions. Thus, Pearson has failed to rebut assertions in the affidavits that none of the individual defendants was a party in an individual capacity to the negotiations surrounding the Amended Retro Agreement and the SPA. Affdvts. at ¶ 5.

Further, cases cited by plaintiff to support the view that the fiduciary shield should not apply are distinguishable. *Club Assistance Program, Inc. v. Zukerman,* 594 F.Supp. 341 (N.D.Ill.1984), stands for the proposition that defendants can lower the fiduciary shield when they commit acts not as fiduciaries, but for their own benefit. *Id.* at 345. As indicated above, Pearson has failed to allege facts suggesting that the individual defendants acted beyond their obligations and duties as officers and agents, or that they committed acts for their own benefit. Although Pearson cites cases which state that tortious conduct committed by a corporate officer in the name of the corporation can give rise to a cause of action against the individual, neither case deals with the jurisdictional question of whether the conduct gives rise to personal jurisdiction over the individual. *Polo Fashions, Inc. v. Craftex, Inc.,* 816 F.2d 145 (4th Cir.1987); *Trak Microcomputer Corp. v. Wearne Bros.,* 628 F.Supp. 1089 (N.D.Ill.1985). Finally, in noting that application of the doctrine is discretionary, the court in *Washburn v. Becker* stated that courts have refused to apply it where the individual defendant represents a "sham" corporation lacking sufficient assets to respond to the suit or where the corporation is simply the defendant's alter ego. In this case, there has been no allegation that the corporate defendants lack sufficient assets to respond to the suit or that the corporate defendants are merely the alter egos of the individual defendants. Thus, *Washburn* does not suggest that the court should deny application of the doctrine here.

*7 Upon analysis of the facts in this case, the court concludes that the fiduciary shield doctrine protects the individual defendants from having to defend the instant action in Illinois. The complaint alleges only that the individual defendants were sued in their ca-

pacity as officers and agents of the corporate defendants. Further, the complaint alleges that the individual defendants acted as officers and agents at all times relevant to the suit. Pearson has failed to allege facts showing that the individual defendants acted beyond their duties as officers and agents and has failed to rebut the individual defendants' assertions that they did not act in an individual capacity in negotiating the SPA. Further, Pearson has failed to allege facts showing that the individual defendants acted for their own benefit. Therefore, the court finds that equity requires application of the doctrine in this case. Accordingly, the individual defendants' motion to dismiss for lack of personal jurisdiction is granted.

## CONCLUSION

For the foregoing reasons, all defendants' motion to dismiss on grounds of collateral estoppel or res judicata is denied. Counts I and II are dismissed without prejudice. All defendants' motion to dismiss Counts III and IV is denied. Finally, the individual defendants' motion to dismiss for lack of personal jurisdiction is granted.

IT IS SO ORDERED.

>    FN1. Neither party has indicated that the terms of the original Retro Agreement were disputed.

>    FN2. The court also stated, "[b]ecause Craig, as a major stockholder in appellant corporation, its president, and a guarantor on the construction loan, had a strong and direct pecuniary interest in the outcome of the organization proceedings, and by his own admission had *exercised substantial control over the litigation...* he is bound by the reorganization orders. *Southmark Properties,* 742 F.2d at 870 (emphasis added).

>    FN3. Rule 9(b) states: "In all averments of fraud or mistake, the circumstances consti-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 7
Not Reported in F.Supp., 1991 WL 18421 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp., 1991 WL 18421)**

tuting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

FN4. Paragraph 35 of the complaint alleges, "Holdings' and Pearson's association through [CGC] constituted a joint venture, intended to carry out a single enterprise-the business of RCA-for a profit."

FN5. Defendants have stated, for example, that at the relevant times *prior to March, 1983* and after September, 1986, Pearson owned 100 percent of the common stock of Cameron. Memo in Support of All Defendants' Motion to Dismiss at 3.

FN6. *See* affidavits of Per Villum Hansen, Frans Henrik Witt, Hans Henrik Koeford, and Otto A. Groegler at ¶ 1 respectively (hereafter referred to as "the affidavits").

N.D.Ill.,1991.
Pearson v. Hafnia Holdings, Inc.
Not Reported in F.Supp., 1991 WL 18421 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                    Page 1
Slip Copy, 2007 WL 3087197 (N.D.Ill.)
(Cite as: Slip Copy, 2007 WL 3087197)

**C**

Waivio v. Board of Trustees University of Illinois
at Chicago
N.D.Ill.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern
Division.
Rodica WAIVIO, Plaintiff
v.
BOARD OF TRUSTEES UNIVERSITY OF
ILLINOIS AT CHICAGO, Sol Shatz, individual
and director, Peter Nelson, individual and Head
Dep., and Arnstein & Lehr LLP, Defendants.
No. 06 C 7189.

Oct. 18, 2007.

Rodica Waivio, Palatine, IL, pro se.
Norman P. Jeddeloh, Arnstein & Lehr, LLP, Chica-
go, IL, for Defendant.

### *MEMORANDUM OPINION AND ORDER*

VIRGINIA M. KENDALL, United States District
Judge.
*1 Plaintiff Rodica Waivio ("Waivio" or
"Plaintiff"), proceeding pro se, brings this action
against the Board of Trustees University of Illinois
at Chicago (the "Board" or "UIC"), Sol Shatz
("Shatz"), Peter Nelson ("Nelson"), and Arnstein &
Lehr LLP ("Arnstein" and together with Shatz and
Nelson, "Defendants"). Before the Court is Defend-
ants' Motion to Strike and Dismiss pursuant to
Rules 11 and 12(b) of the Federal Rules of Civil
Procedure. For the reasons set forth below, Defend-
ants' Motion under Rule 11 is Denied and Defend-
ants' Motion to Dismiss under Rule 12(b) is Gran-
ted and the Amended Complaint is dismissed with
prejudice.

### *Background*

On December 29, 2006, Waivio filed her initial
complaint in this action. Less than four months

earlier, Judge Norgle entered an order dismissing
with prejudice several consolidated cases between
Waivio, UIC and various other parties (including
Shatz, Nelson and Arnstein) for Waivio's abuse of
the legal process. Seemingly unsatisfied with the
result she obtained from Judge Norgle, Waivio then
brought this action, which seeks to resurrect the
same disputes Waivio has already raised-or could
have raised-in previous cases.

Waivio's Amended Complaint in this case-like her
"Corrected Second Short Amended Complaint" in
Case No. 04 C 3545 before Judge Norgle-comprises
a rambling, disjointed, and almost entirely incom-
prehensible 203 paragraphs related to UIC's de-
cisions to dismiss her from its graduate program
and to deny her financial support and employment
with the university. Waivio claims that UIC and its
agents discriminated against her based on her disab-
ility, national origin and gender. Specifically, Wai-
vio alleges that in early 2004, UIC improperly
denied her requests for financial support, denied her
requests for employment, and denied her requests
for letters of recommendation. Strangely, Waivio
also alleges that Arnstein-UIC's *counsel*-retaliated
against her for "plaintiff's protected actions and op-
position of UIC [sic] unlawful practice" by threat-
ening Waivio with "dismissal of cases." (Am. Cplt.
at ¶ 41.) Waivio appears further to allege that UIC's
counsel, in the person of Richard Hellerman,
caused the death of her unborn child:

[Hellerman] screamed vehemently at plaintiff, in-
flicted emotional distress, threatened plaintiff with
adverse actions, psychologically coercing intimidat-
ing her to file response to UIC.motion. dismiss. Ju-
ly8-12,2005. He misinformed, deceived plaintiff.
He was full of anger, bitterness, and hostility to-
ward plaintiff. Plaintiff asked him to stop intimidat-
ing and threatening her. He instigated plaintiff and
created hostile environment against plaintiff by in-
flicting emotional pain, sufferings. 15-20 days later
plaintiffs' baby died.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 2
Slip Copy, 2007 WL 3087197 (N.D.Ill.)
**(Cite as: Slip Copy, 2007 WL 3087197)**

*Id.* at ¶ 47.

Waivio seems to be particularly troubled by the manner in which UIC and its counsel treated Julie Grosch ("Grosch"), one of the lawyers representing defendant Educational Testing Services in Case No. 04 C 3545.Essentially, Waivio complains that UIC and its counsel treated Grosch more favorably than they treated Waivio, which Waivio characterizes as "Defendants' discriminatory practice." *Id.* at ¶ 58-59.Waivio alleges that UIC's counsel, in the persons of Hellerman and Norman Jeddeloh ("Jeddeloh") "proved interested and vehemently interacted with Julie Grosch, (woman, American, non-disabled)" while "[Waivio] was treated very severely as defendant."*Id.* at ¶ 51, 54.In what the Court can only interpret as an allegation related to the motive for the disparate treatment as between herself and Grosch (because it is almost completely unintelligible), Waivio further alleges that:

*2 Plaintiff's female characteristics are opposite to Grosch; Grosch has long blond hear [sic], Waivio has short brown hear [sic], Grosch is tall, thin, Waivio is short, not thin; Grosch dressed "extravagant cloths," [sic] Waivio dressed uninteresting cloths; [sic] Grosch is beautiful, Waivio is uninteresting; Pursuant Rule 8(e)(2), Defendants misclassified plaintiff as opposite alternative Grosch, inappropriately related plaintiff's actions with their sexual interests.... Defendants have specific sexual interest, national origin, non disability, retaliation interests and plaintiff is [or plaintiff was wrongly classified as] related and opposite [regarded as impairment] to their sexual interest national origin, non disability retaliation e[sic] interests, therefore plaintiff was discriminated, refused and suffered adverse actions and effects based on her sexuality or other protected characteristics and protected actions.

*Id.* at ¶ 61-62.In addition to her allegations related to Defendants' "discriminatory practices," Waivio also includes similarly incomprehensible allegations related to "Plaintiffs Severe Treatment." Specifically, Waivio alleges that:
Defendants refused to treat gently plaintiff. Plaintiff

was inappropriately treated as criminal "kill you", unwelcome, unwanted ("physically restrain"), refused, rejected ("yelled obscenity"), defendants regarded plaintiff's protected characteristics as "impairment". Defendants regarded plaintiff's disability as threat, as impairment; Defendants harassed plaintiff based on her sexual characteristics, hostile environment against plaintiff. "Lie in bed", "attempted physically restrain" is insulting, "ashamed court publish". Intimidations are harsh words "kill", "obscenity", "admitted[false]", "abused court proceudre" or "fail to give notice", verbally harassed" "give harsh words", "crazy". Plaintiff's Romanian language is regarded as "obscenity", while plaintiff's disability is regarded as threats, or harsh words, while matters were evident misunderstandings. Plaintiff's genter is regarded as "uncommon" "unsolicited visits or wants plaintiff lie in bed or restrain him". Retaliation is related to plaintiff's state actions or discovery, opposition of unlawful discrimination, when defendants regarded Waivio's protected actions as "impairment", harassing, falsely claiming "abuse process", while barring her actions. All these negatively affected plaintiff's performances or opportunities; plaintiff suffered substantive losses, state actions were dismissed.

*Id.* at ¶ 64-65.

Waivio's previous case-No. 04 C 3545 before Judge Norgle-sought relief from a variety of defendants for a large range of allegedly discriminatory practices related to Waivio's status as a student and an employee at UIC. Indeed, in her "Corrected Second Short Amended Complaint," filed in August 2005 in that case, Waivio alleged that *"plaintiff was almost never evaluated based on her individual merit: she was almost never free from discrimination;* the plaintiff was unlawfully discriminated against almost all the time in education and employment."(Exh. A to Mtn. to Dismiss at ¶ 57) (emphasis in original). Judge Norgle's Opinion dismissing that case also reflects that Waivio raised, in the course of litigating that case, her concerns about

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                          Page 3
Slip Copy, 2007 WL 3087197 (N.D.Ill.)
**(Cite as: Slip Copy, 2007 WL 3087197)**

Grosch and the loss of her unborn child-allegedly as a result of the conduct of Jeddeloh and Hellerman. *Waivio v. Bd. of Trs.,* No. 04 C 3545, 04 C 2314, 04 C 6263, 05 C 2316, 2006 U.S. Dist. LEXIS 62126, *14-16 (N.D.Ill. Aug. 31, 2006).

### Discussion

### I. Defendants' Motion Under Rule 11 is Denied.

**\*3** Fed.R.Civ.P. 11(c)(1)(A) requires that a "motion for sanctions under this rule shall be made separately from other motions or requests ..." In filing a combined motion under Rules 11 and 12(b), Defendants have failed to comply with the procedural requirements of Rule 11(c)(1)(A). Moreover, the Court cannot ascertain from Defendants' papers whether they have complied with the "safe harbor" provision of Rule 11(c)(1)(A). That provision prohibits the filing of a motion for sanctions under Rule 11"unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected."The plain language of Rule 11 requires the party filing a motion for sanctions under the rule to serve the motion upon the opposing party and allow 21 days before filing the motion with the court so that the party upon which the motion is served might have an opportunity to avoid sanctions by withdrawing the offending paper or allegation. In this case, the Defendants have not advised the Court whether they have provided Waivio with an opportunity to withdraw the Amended Complaint before bringing their Motion under Rule 11. Accordingly, because the Court cannot ascertain whether the Defendants have complied with the "safe harbor" provision set forth in Rule 11(c)(1)(A) and for their failure to comply with the requirement, under that same rule, that Rule 11 motions be brought separately from other motions, Defendants' Motion under Rule 11 is denied.

### II. Waivio's Claims are Barred by the Doctrine

of *Res Judicata.*

Defendants also move to dismiss the Amended Complaint, arguing that Waivio's claims are barred by the doctrine of *res judicata.*"A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint for failure to state a claim upon which relief may be granted."*Johnson v. Rivera,* 272 F.3d 519, 520-21 (7th Cir.2001). In reviewing a motion to dismiss, the court must accept all well-pleaded factual allegations in the complaint and must draw reasonable inferences from those facts in favor of the Plaintiff. *Richards v. Kiernan,* 461 F.3d 880, 882 (7th Cir.2006). Moreover, the courts must "treat pro se litigants gently." *Lockhart v. Sullivan,* 925 F.2d 214, 216 (7th Cir.1991). However, to survive a motion to dismiss, a complaint-even one filed by a pro se litigant-must set forth "enough facts to state a claim to relief that is plausible on its face."*Bell Atlantic Corp. v. Twombly,* --- U.S. ----, ----, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007).*Res judicata* is an affirmative defense, and the plaintiff need not plead around affirmative defenses.*United States Gypsum Co. v. Indiana Gas Co.,* 350 F.3d 623, 626 (7th Cir.2003); Fed.R.Civ.P. 8(c). Still, a plaintiff "may plead himself out of court by alleging (and thus admitting) the ingredients of a defense."*United States Gypsum,* 350 F.3d at 626.

**\*4** "Under the doctrine of res judicata, 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'"*Highway J Citizens Group v. United States DOT,* 456 F.3d 734, 741 (7th Cir.2006) (quoting *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)).*Res judicata* applies to bar a subsequent action when the following three requirements are met: (1) there is an identity of causes of action; (2) there is an identity of parties or their privies; and (3) a final judgment on the merits. *Id.* (citing *Cent. States, S.E. & S.W. Areas Pension Fund v. Hunt Truck Lines, Inc.,* 296 F.3d 624, 628 (7th Cir.2002))."[T]he doctrine of res judicata

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 4
Slip Copy, 2007 WL 3087197 (N.D.Ill.)
**(Cite as: Slip Copy, 2007 WL 3087197)**

provides that, when a final judgment has been entered on the merits of a case, it is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose."*Nevada v. United States*, 463 U.S. 110, 129-30, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983) (internal quotation marks omitted).

*A. As Between this Case and Waivio's Previous Lawsuit, there is an Identity of Causes of Action.*

"A claim has 'identity' with a previously litigated matter if it emerges from the same 'core of operative facts' as that earlier action."*Brzostowski v. Laidlaw Waste Sys.*, 49 f.3d 337, 338-39 (7th Cir.1995) (citing *Colonial Penn Life Ins. Co. v. Hallmark Ins. Admin., Inc.*, 31 F.3d 445, 447 (7th Cir.1994)). That is to say, "[t]wo claims are one for the purposes of res judicata if they are based on the same, or nearly the same, factual allegations."*Id.* (citing *Colonial Penn*, 31 F.3d at 447). Accordingly, "the question is not [just] whether the legal issues now presented were raised previously; rather, it is whether these matters 'could have been raised' in [the prior] action.'"*Highway J.* 456 F.3d at 743 (quoting *Brzostowski*, 49 F.3d at 338 (emphasis added by *Highway J* court)).

"To determine 'whether the plaintiff could have raised the [current] issue[s] in the first suit,' we employ a 'same transaction' test."*Id.* (quoting *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 913 (7th Cir.1993))."Under the 'same transaction' test, 'a cause of action consists of a single core of operative facts giving rise to a remedy.... Once a transaction has caused injury, all claims arising from that transaction must be brought in one suit or lost. A plaintiff may not avoid an earlier judgment on the merits by merely concocting a new legal theory."*Id.* (quoting *Allied-Signal*, 985 F.2d at 913).

In this case, Waivio argues that *res judicata* is no bar to her claims because she has presented new facts regarding her interactions with UIC and because, she claims, her current Complaint focuses on events that occurred from 2004 until the present, as opposed to her previous suit which, she argues, sought recovery for events occurring between 2001 and 2004. (Am.Cplt.17-19.) Despite the fact that Waivio focuses on different facets of her experience at UIC in the two complaints, the discrimination she alleges in the operative complaint in this case-discrimination based on her national origin, gender, and disability-arises from the same "core of operative facts" discussed in the first complaint-the events and interactions that led to her eventual termination from UIC's graduate program. Waivio reviews her time at UIC in detail in both complaints. In both complaints she alleges that UIC denied her requests for accommodations for her disability; alleges that her dismissal stems from her Romanian heritage and her gender; and alleges that UIC discriminated against her by not offering her employment or funding-presumably on the same impermissible bases. That Waivio may have failed to raise certain facts or legal theories in her previous action is of no moment; she could have and should have raised all claims relating to her student status and employment with UIC in her previous action.

*B. There Exists an Identity of the Parties or their Privies as between this Case and Waivio's Previous Lawsuit.*

**\*5** In order for the doctrine of *res judicata* to apply as a bar to this action, there must be-as between this suit and Waivio's earlier lawsuit-an identity of the parties or their privies. While the parties to this suit are not nominally identical to the parties in Waivio's previous lawsuit (Arnstein was not a party to Judge Norgle's case), *res judicata* may still bar this action to the extent that the parties to this suit share a sufficiently close identity of interests with the parties to the earlier suit-and they do. *See People Who Care v. Rockford Bd. of Educ.*, 68 F.3d 172, 177 (7th Cir.1995) (concluding that privity "is gen-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                  Page 5
Slip Copy, 2007 WL 3087197 (N.D.Ill.)
(Cite as: Slip Copy, 2007 WL 3087197)

erally applied to those with a sufficiently close identity of interests"). Here, there can be no question that the defendants in this case share an identity of interest with the defendants to Waivio's previous lawsuit. UIC, Shatz and Nelson are parties to both suits. And Arnstein's interest in this suit is sufficiently identical to the individual lawyers who faced allegations in the previous suit. Jeddeloh and Hellerman-who practice law with the Arnstein firm-faced allegations in Waivio's earlier suit that they caused the death of Waivio's unborn child; those allegations have been resurrected in this suit, but are now levied against the firm and not the individual lawyers.

### C. Waivio's Previous Action Proceeded to a Final Judgment on the Merits.

It is beyond question that Waivio's previous case proceeded to a final judgment on the merits. As a sanction for her abuse of the legal system, Judge Norgle dismissed that case with prejudice. *Waivio v. Bd. of Trs.*, No. 04 C 3545, 04 C 2314, 04 C 6263, 05 C 2316, 2006 U.S. Dist. LEXIS 62126 (N.D.Ill. Aug. 31, 2006). A dismissal with prejudice is a final judgment on the merits for the purposes of *res judicata*. *Phillips v. Shannon*, 445 F.2d 460, 462 (7th Cir.1971). Accordingly, Waivio's previous action-which was dismissed with prejudice as a sanction for abuse of the legal system-was disposed of via a final judgment on the merits; Waivio's arguments to the contrary are without merit.

### III. Even if Not Barred by *Res Judicata*, This Court Would Nevertheless Decline to Exercise Supplemental Jurisdiction Over Plaintiff's Claims Against Arnstein.

Even if Waivio had not already raised her claims against Arnstein in her previous lawsuit-which she did-this Court would still decline to exercise supplemental jurisdiction over those allegations which, if they amount to anything at all, are tort claims under Illinois law between non-diverse parties. Al-

though Waivio appears to couch her allegations against Arnstein in terms of discrimination and retaliation, the Court fails to comprehend how Arnstein could be liable for any discrimination against Waivio in employment or education since Waivio does not allege that Arnstein is an educational institution nor does she allege that Arnstein ever employed Waivio or considered any application for employment submitted by Waivio. That is to say, taking Waivio's allegation that Arnstein treated Grosch favorably while treating Waivio poorly as true, that allegation does not state a claim for discrimination in employment or in education under federal law. As such, even if Waivio's allegations against Arnstein were new and could not have been addressed in the earlier litigation, they would still amount to nothing more than tort claims under state law over which this Court would decline to exercise its supplemental jurisdiction. *Baker v. Kingsley*, 387 F.3d 649, 654, n. 1 ("28 U.S.C. § 1367... expressly authoriz[es] district courts to decline to exercise supplemental jurisdiction over a state-law claim if all claims within the court's original jurisdiction [have] been dismissed.").[FN1]

> FN1. Because Waivio's claims against Arnstein appear to arise almost exclusively from the alleged "severe treatment" Waivio received from Hellerman and Jeddeloh during the course of the previous litigation, it is possible-if not probable-that those claims would also be barred by the litigation privilege under Illinois law. *See Steffes v. Stepan Co.*, 144 F.3d 1070, 1074 (7th Cir.1998) (quoting from the underlying district court opinion) ("Illinois law recognizes an absolute litigation privilege which protects anything said or written in the course of a legal proceeding. The only qualification to this privilege is that the communication pertain to the litigation. This requirement is not applied strictly, and the communication need not be confined to the specific issues involved in the litigation ... The absolute privilege is af-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 6
Slip Copy, 2007 WL 3087197 (N.D.Ill.)
(Cite as: Slip Copy, 2007 WL 3087197)

forded even when malice is assumed to have motivated the attorney. All doubts are to be resolved in favor of finding that the privilege applies.")

### *Conclusion*

*6 For the reasons stated herein, Defendants' Motion to Dismiss is granted and Plaintiff's complaint is dismissed with prejudice.

So ordered.

N.D.Ill.,2007.
Waivio v. Board of Trustees University of Illinois at Chicago
Slip Copy, 2007 WL 3087197 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.

Not Reported in F.Supp., 1997 WL 769347 (N.D.Ill.)

(Cite as: Not Reported in F.Supp., 1997 WL 769347)

Page 1

**H**

Luis v. Baxter Healthcare Corp.

N.D.Ill.,1997.

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois.

Shirleen LUIS, Plaintiff,

v.

BAXTER HEALTHCARE CORP., Defendant.

**No. 96 C 8157.**

Dec. 5, 1997.

MEMORANDUM OPINION AND ORDER

LINDBERG, J.

*1 Plaintiff Shirleen Luis complains of gender discrimination, harassment, and retaliation by her former employer Baxter Healthcare Corporation. She asserts her claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e. *et. seq.* (1997). Defendant filed a motion to dismiss the complaint and, for the reasons set forth below, that motion will be granted.

I. *Factual and Procedural Background*

On June 18, 1992, plaintiff filed charges of age discrimination, sexual harassment, and retaliation against defendant Baxter Healthcare Corporation in the Illinois Department of Human Rights ("IDHR"). When the IDHR filled out her charge form, however, it indicated that she had a single claim of age discrimination. The IDHR then transferred plaintiff's file to the Equal Employment Opportunity Commission ("EEOC"). When plaintiff completed her EEOC intake form, she once again complained of sex discrimination, age discrimination, and retaliation. She repeated those allegations in at least one interview with an EEOC investigator. Like the IDHR, however, the EEOC prepared a formal charge sheet that contained a single claim of age discrimination. Plaintiff signed the charge sheet in the apparent belief that her other claims were

"supplemented rather than supplanted" by the EEOC charge. On September 24, 1993, EEOC received a right to sue letter from the EEOC that authorized her to proceed only with her claims under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (1997). At some point, plaintiff sought an amended right to sue letter from the EEOC, but the complaint does not indicate when or how this occurred.

On December 22, 1993, plaintiff filed an age discrimination claim before the Honorable Marvin E. Aspen in the Northern District of Illinois. *Luis v. Baxter Healthcare Corp.*, No. 93 C 7690 (N.D.Ill.) ("*Baxter I* "). The parties consented to proceed before a Magistrate Judge, and Magistrate Judge Denlow ultimately granted summary judgment for defendant on July 11, 1996. On July 23, 1996, plaintiff received an amended right to sue letter from the EEOC which rescinded her prior letter and authorized her to proceed with her claims under Title VII as well as the ADEA. Shortly after receiving the amended letter, plaintiff filed a Rule 59(e) motion to alter or amend the summary judgment order and a motion to amend her complaint to include the retaliation and sex discrimination claims. Magistrate Judge Denlow denied both motions and instructed plaintiff to present her claims in a new and separate complaint. Plaintiff appealed the denial of her motion to file an amended complaint, and that appeal is currently pending before the Seventh Circuit.

Plaintiff filed the instant complaint on December 12, 1996. Although the complaint does not enumerate separate causes of action, it could be construed to include claims of sexual harassment, gender discrimination, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1997). Defendant filed a motion to dismiss the complaint on the grounds that it is barred by the res judicata effect of the judgment in *Baxter I*.[FN1]

FN1. Defendant also argues that the action

Not Reported in F.Supp.                                                                                    Page 2
Not Reported in F.Supp., 1997 WL 769347 (N.D.Ill.)
(Cite as: Not Reported in F.Supp., 1997 WL 769347)

must be dismissed because it was not filed within ninety days after plaintiff received her amended right to sue letter. The court need not reach this issue, however, in light of its ruling that the action is barred by the doctrine of res judicata.

## II. *Discussion*

**\*2** A complaint is barred under the doctrine of res judicata if there is (1) a final judgment on the merits in a prior suit, (2) an identity of the causes of action in the prior and current suits, and (3) an identity of parties in the two suits. *Brzostowski v. Laidlaw Waste Systems, Inc.,* 49 F.3d 337, 338 (7th Cir.1995). A cause of action is identified with a previous claim if it arises from the same nucleus of operative facts as the earlier action. *Herrmann v. Cencom Cable Assoc., Inc.,* 999 F.2d 223, 226 (7th Cir.1993) (claims are identified for purposes of res judicata if they are "based on the same, or nearly the same, factual allegations"). The doctrine of res judicata bars claims that were actually brought in a prior suit as well as claims that could have been brought in that suit. *Brzostowski,* 49 F.3d at 338.

Plaintiff argues the entry of summary judgment in *Baxter I* was not a final judgment on the merits because that ruling is still pending on appeal. Plaintiff cites absolutely no authority for this proposition, and for good reason: "[T]he federal rule is that the pendency of an appeal does not suspend the operation of an otherwise final judgment." *Kurek v. Pleasure Driveway & Park District,* 557 F.2d 580, 595 (7th Cir.1977), *vacated on other grounds,* 435 U.S. 992, 98 S.Ct. 1642, 56 L.Ed.2d 81 (1978); *see also Hazel v. Curtiss-Wright Corp.,* 1992 WL 436236, at \*3 (S.D.Ind.1992) ("[t]he overwhelming majority rule in the federal courts is that a judgment may be given res judicata effect during the pendency of an appeal") (collecting cases); 18 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4433, at 308 & n.1 (1981) ("[t]he established rule in the federal courts is that a final judgment retains all of its res judicata consequences pending decision of the appeal"), *citing Deposit*

*Bank v. Frankfort,* 191 U.S. 499, 24 S.Ct. 154, 48 L.Ed. 276 (1903). Accordingly, the court finds that the summary judgment opinion in *Baxter I* was a final judgment on the merits.

Plaintiff also contends that her current Title VII claims should not be identified with the ADEA claims in *Baxter I.* It is apparent from the face of the complaint that plaintiff's Title VII and ADEA claims arise from the same nucleus of facts because they all concern plaintiff's employment at Baxter Healthcare from 1989 until her termination in 1992. In essence, her claims simply assert different theories of liability for the same acts. Plaintiff argues that even if her Title VII claims are transactionally related to her prior ADEA claims, she was unable to bring her Title VII claims in the earlier litigation because she did not receive her amended right to sue letter until after summary judgment was entered. But this is only partially true. While plaintiff could not file her Title VII claims until she received her amended EEOC letter, she could have brought them in the prior litigation by asking the court to stay its proceedings or by waiting to file her complaint until she received the amended letter. *Brzostowski v. Laidlaw Waste Systems, Inc.,* 49 F.3d 337, 339 (7th Cir.1995). What she could not do, however, was "split causes of action and use different theories of recovery as separate bases for multiple suits." *Brzostowski,* 49 F.3d at 339, *citing Button v. Harden,* 814 F.2d 382, 384 (7th Cir.1987); *see generally Herrmann v. Cencom Cable Associates, Inc.,* 999 F.2d 223 (7th Cir.1993). Because the instant Title VII claims arise from the same nucleus of operative facts as the ADEA claims in *Baxter I* and could have been brought in that lawsuit, the court finds that they are barred under the doctrine of res judicata.

**\*3** Finally, the court notes that the instant ruling might be construed to bar plaintiff from asserting her Title VII claims before Judge Aspen or Magistrate Judge Denlow in the event that *Baxter I* is reopened by the Seventh Circuit. *See* 18 Charles A. Wright & Arthur R. Miller, *Federal Practice and*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                 Page 3
Not Reported in F.Supp., 1997 WL 769347 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp., 1997 WL 769347)**

*Procedure* § 4433, p. 311-312 (1981). Plaintiff may avoid this result by filing a motion to vacate the instant judgment under Federal Rule of Civil Procedure 60(b)(5) if *Baxter I* is reversed.

ORDERED: Defendant's motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) is granted.

N.D.Ill.,1997.
Luis v. Baxter Healthcare Corp.
Not Reported in F.Supp., 1997 WL 769347 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 1999 WL 162793 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 1999 WL 162793)

**H**

Janusz v. Fasco Industries, Inc.
N.D.Ill.,1999.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
Frank JANUSZ, Plaintiff,
v.
FASCO INDUSTRIES, INC., BTR, Inc., H.S. Investments, Inc. and Robert T. Coyle, Defendants.
No. 97 C 7976.

March 12, 1999.

MEMORANDUM OPINION AND ORDER

COAR, District J.

*1 Before this court are three motions in plaintiff Frank Janusz's ("plaintiff" or "Janusz") two-count case of retaliatory discharge and tortious interference in an employment contract. First is plaintiff's motion to reconsider this court's grant of summary judgment in favor of Fasco Industries, Inc. ("defendant" or "Fasco") on the Count I claim of retaliatory discharge. The second and third motions are defendants BTR, Inc. ("defendant" or "BTR") and Robert Coyle's ("defendant" or "Coyle") motion to dismiss and motion for summary judgment on plaintiff's Amended Count II claim of tortious interference in an employment contract. For the following reasons, plaintiff's motion to reconsider is DENIED, defendants' motion to dismiss is DENIED, and defendants' motion for summary judgment is GRANTED.

Statement of Facts

This case surrounds the October, 1992 termination of the plaintiff, Frank Janusz, from his position as Tax Manager for Fasco, a subsidiary of BTR plc.FN1 As a result of this termination, on September 24, 1994 Janusz filed a complaint *Janusz v. Fasco Industries, Inc.,* No. 94 C 5962, in the United States District Court for the Northern District of Illinois, Eastern Division, alleging that Fasco violated 29 U.S.C. Sec. 1132 and 28 U.S.C. Sec. 133 ("ERISA") by wrongly withholding his severance benefits ("*Janusz I*"). (Dft.'s 12(M) Stmt. ¶ 11; Group Ex. 2). On February 16, 1995, the court entered an order that stated:

> FN1. BTR plc is the parent corporation of H.S. Investments, Inc. ("HSII"), which is the direct parent corporation of Fasco. BTR Dunlop, Inc. is the sister corporation of HSII and the direct parent corporation of BTR, Inc. BTR, Inc. provides a variety of services to HSII, BTR Dunlop, Inc., and their direct and indirect subsidiaries, including tax management. (Dft's 12(M) Stmt. ¶ 9).

Pursuant to agreement of parties, this action is dismissed with prejudice with leave to reinstate by or on 3/14/95. Each party to bear its own costs and fees. All pending motions are now moot. Any future status date is stricken. Terminating case.
On April 21, 1195, the case was closed, for no motion to reinstate was filed.

The plaintiff then filed another complaint with the Circuit Court of Cook County, which was removed to this court ("*Janusz II*"). This complaint consisted of two counts: the first count alleged retaliatory discharge against Fasco, BTR, and HSII; the second count alleged tortious interference with an employment contract against Janusz's supervisor, Robert Coyle, BTR's Vice President of Taxation. (Pl's Original Complaint ¶¶ 26, 27, 28; 23, 24, 25 (misnumbered)). The defendants filed for dismissal and summary judgment on these claims. On April 24, 1998, this court granted summary judgment on Count I for Fasco, BTR, and HSII, finding that BTR and HSII were not employers of Janusz, and that the doctrine of res judicata barred Janusz's claim against Fasco.FN2 (Opinion and Order, pp. 7-9). However, Coyle's motion to dismiss on Count

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 162793 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 1999 WL 162793)

II was denied, because it could be reasonably inferred from Janusz's complaint that Coyle acted to further his personal goals or against the best interests of the corporation. (Opinion and Order, p. 5).

> FN2. This court found that the central factual issue in *Janusz I* and Count I against Fasco were the same: "Both cases concerned whether or not Janusz was fired in retaliation for questioning accounting procedures and tax returns."(Opinion and Order, p. 9).

As a result of these rulings, Janusz amended Count II of his complaint to allege that BTR as well as Coyle as tortiously interfering with his employment contract. In the complaint, Janusz alleges that Coyle was acting within his authority as BTR's Vice President of Taxation when Coyle and BTR caused Janusz to be terminated. (Amended Complaint ¶ 29). Janusz also alleges that Coyle and BTR's actions were "a willful, wanton and malicious"violation of the public policy of Illinois and interference with plaintiff's employment contract. (Amended Complaint ¶ 30).

*2 This brings us to the present set of motions before the court. Janusz has filed a motion for reconsideration of this court's grant of summary judgment for Fasco on Count I.[FN3] Janusz argues that this court misapprehended the claim brought in *Janusz I*. (Pl's Motion to Reconsider Memo, p. 1). The defendants Coyle and BTR filed a motion to dismiss and a motion for summary judgment on Count II of the plaintiff's amended complaint. The defendants argue that Count II should be dismissed because Coyle and BTR benefit from a qualified privilege to act on behalf of the corporation to the detriment of third party contracts unless the action was "totally unrelated" to the corporation's interest. (Dft's Motion to Dismiss Memo, p. 1). In their motion for summary judgment, the defendants argue that Janusz's claim is barred by res judicata. (Dft's Motion for Summary Judgment Memo, p. 3). The court addresses each of these motions in turn.

> FN3. Janusz does not ask the court to reconsider its decision to grant summary judgment to BTR and HSII on Count I.

Analysis

I. Motion for Reconsideration

A. Standard

"Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence."*Keene Corp. v. International Fidelity Ins. Co.,* 561 F.Supp. 656, 665-66 (N.D.Ill.1982), *aff'd*736 F.2d 388 (7th Cir.1988). A court should entertain a motion of reconsideration under very limited circumstances:

where 'the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court. Such problems rarely arise that the motion to reconsider should be equally rare.'

*Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir.1990) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,* 99 F.R.D. 99, 101 (E.D.Va.1983)). Therefore, a motion for reconsideration may not be used "as a vehicle to introduce new evidence that could have been adduced during the pendency of the summary judgment motion" or "as the occasion to tender new legal theories for the first time."*Rothwell Cotton Co. v. Rosenthal & Co.,* 827 F.2d 246, 251 (7th Cir.1987) (quoting *Keene,* 561 F.Supp. at 665-66;*Publishers Resource, Inc. v. Walker-Davis Publications, Inc.,* 762 F.2d 557, 561 (7th Cir.1985).

B. Discussion

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 3
Not Reported in F.Supp.2d, 1999 WL 162793 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 1999 WL 162793)

The plaintiff argues that the retaliatory discharge claim in the present case (Count I) is separate and distinct from the ERISA claim in *Janusz I.* (Pl's Motion for Reconsideration Memo, p. 5). To support this argument, the plaintiff refers to *Herrmann v. Cencom Cable Associates, Inc.,* 999 F.2d 223 (7th Cir.1993).[FN4] In *Herrmann,* the Seventh Circuit ruled that the plaintiff's unsuccessful suit under ERISA does not bar the plaintiff's subsequent Title VII suit, even though the cases arose from the same discharge. Instead, the court found the claims were not based on the same factual allegations, for the ERISA suit addressed the employer's behavior after the dismissal and the Title VII suit addressed the employer's behavior before the dismissal. *Herrmann,* 999 F.2d at 226-7. Janusz argues the same is true here: his ERISA claim was based on Fasco's behavior after the termination, and the retaliatory discharge claim is based on Fasco's behavior before the termination. (Pl's Motion for Reconsideration Memo, pp. 6-7).

> FN4. The plaintiff also refers to *Perkins v. Board of Trustees of the University of Illinois,* 116 F.3d 235 (7th Cir.1997), which upholds *Herrmann.* However, *Perkins* addresses the effect of two separate events on a res judicata argument, while in the present case there is only one event-the termination of the plaintiff.

*3 Janusz misunderstood the reasoning of *Herrmann.* The Seventh Circuit in *Herrmann* presents the standard for when two claims are treated as one for purposes of res judicata: "if they are based on the same, or nearly the same, factual allegations." *Herrmann,* 999 F.2d at 226 (citations omitted). The court then gives several examples of what it means by this standard in employment cases and follows up with the reasoning, "... it is enough that the question *why she was fired* would as a practical matter be at the center of litigation of both claims," for res judicata to apply. *Id,* at 227 (emphasis added). In the present situation, both the ERISA claim in *Janusz I* and the retaliatory dis-

charge claim here are dependent upon the same factual issue-why Janusz was terminated. As this court reasoned in its previous opinion, both claims concern the same operative facts and factual allegations. Therefore, res judicata bars Count I of plaintiff's complaint and the plaintiff's motion to reconsider is denied.

II. Motion to Dismiss

A. Standard

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure does not test whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim for which relief may be granted. *Pickerel v. City of Springfield, Ill.,* 45 F.3d 1115 (7th Cir.1995). The court must accept as true all of the plaintiff's well-pleaded factual allegations, as well as all reasonable inferences. *Id.* Thus, the court will dismiss a complaint under Rule 12(b)(6) only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Bedford v. Sullivan,* 105 F.3d 354. 357 (7th Cir.1997) (quoting *Hechuan v. King & Spalding,* 467 U.S. 69, 78, 104 S.Ct. 2229, 2232 (1984)). Any ambiguities are construed in favor of the plaintiff. *Curtis v. Bembenek,* 48 F.3d 281, 283 (7th Cir.1995). However, the court need "not strain to find inferences favorable to the plaintiffs which are not apparent on the face of the complaint." *Coates v. Illinois State Bd. of Ed.,* 559 F.2d 445, 447 (7th Cir.1977).

B. Discussion

Defendants Coyle and BTR argue that plaintiff's amended Count II of complaint should be dismissed because both BTR and Coyle, as a corporation and one of its officers, benefit from a qualified privilege to interfere with contracts when exercising their business judgment and discretion on behalf of the corporation. (Dft's Motion to Dismiss Memo, p. 4, citing *Swager v. Courie,* 77 Ill.2d 173. 185 (1979)).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 4
Not Reported in F.Supp.2d, 1999 WL 162793 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 1999 WL 162793)**

Since the plaintiff alleged in his complaint that Coyle was acting within the scope of his authority as BTR's Vice President of Taxation, then the plaintiff cannot overcome this privilege. (Dft's Motion to Dismiss Memo, p. 6).

Under Illinois law, to establish a claim of tortious interference with a contractual relationship, a plaintiff must show: 1) the existence of a valid and enforceable contract between the plaintiff and another party; 2) that the defendant was aware of the contractual relationship; 3) an intentional and unjustified inducement of a breach of the contract by the defendant; 4) the subsequent breach of the contract by the other party caused by the defendant's inducement; and 5) damages. *Williams v. Shell Oil Co.,* 18 F.3d 396, 402 (7th Cir.1994) (citations omitted). Illinois courts have recognized a privilege in intentional interference with contract cases when the defendant acts to protect an interest "which the law deems to be of equal or greater value than the plaintiff's contractual rights."*HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.,* 131 Ill.2d 145, 157 (1989). To overcome this privilege, the plaintiff "must set forth factual allegations from which it can be reasonably inferred that the defendant's conduct was unjustified."*Id.,* at 158.

*4 In the present case, the plaintiff did allege that Coyle was acting within the scope of his authority as BTR's Vice President of Taxation when he filed the tax returns in question and when he terminated the plaintiff. (Pl's Amended Complaint, ¶ 29). However, the qualified privilege that defendants assert "does not apply where officers act solely for their own gain or solely for the purpose of harming the plaintiff since such conduct is not taken to further the corporation's interest."*Mittleman v. Witous,* 135 Ill.2d 220, 248 (1989). The plaintiff alleged activity by Coyle that is illegal-i.e. the filing of incorrect tax returns-as the underlying reason for plaintiff's termination, as well as allege that Coyle and BTR's actions were "a willful, wanton and malicious violation of the public policy of the State of Illinois and a willful, wanton and malicious inter-

ference with Plaintiff's employment contract."(Pl's Amended Complaint, ¶ 30). These allegations are enough to overcome the privilege on a motion to dismiss. *Roy v. Austin Co.,* 1996 WL 599435, *11 (N.D.Ill.1996) (stating that a plaintiff's contention that the defendant's given reason for termination is pretextual is enough to overcome qualified privilege); *HPI,* 131 Ill.2d at 158-9 (stating that a defendant who is protected by a privilege is unjustified in using illegal means). Therefore, the defendants' motion to dismiss is denied.

### III. Motion for Summary Judgment

#### A. Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."Fed.R.Civ.P. 56(c); *Cox v. Acme Health Serv., Inc.,* 55 F.3d 1304, 1308 (7th Cir.1995). A genuine issue of material fact exists for trial when, after viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant.*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Hedberg v. Indiana Bell Tel. Co,* 47 F.3d 928, 931 (7th Cir.1995). The party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Hedberg,* 47 F.3d at 931. If this burden is met by the movant, the non-movant must then set forth specific facts to show that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U .S. at 324. In deciding a motion for summary judgment, the court must read the facts in a light most favorable to the non-movant. *Cuddington v. Northern Ind. Public Serv. Co.,* 33 F.3d 813, 815 (7th Cir.1994). However, Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 5
Not Reported in F.Supp.2d, 1999 WL 162793 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 1999 WL 162793)

of an element essential to that party's case, and in which that party will bear the burden of proof at trial ."*Celotex*, 477 U.S. at 322. A scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion: "there must be evidence on which they jury could reasonably find for the [non-movant]."*Anderson*, 477 U.S. at 250.

**B. Discussion**

**\*5** The defendants argue that this court should grant summary judgment to BTR and Coyle on plaintiff's amended Count II under the res judicata doctrine. This court ruled previously that plaintiff's claim of retaliatory discharge against Fasco was barred under the doctrine of res judicata. (Opinion and Order, pp. 8-9). The defendants argue that plaintiff's claim against BTR and Coyle should also be barred, since they are privies to Fasco. (Dft's Motion for Summary Judgment Memo, pp. 3-5).

Res judicata prohibits parties from relitigating issues that were actually decided in a prior lawsuit, as well as those issues that could have been raised in a previous suit. *Humphrey v. Tharaldson Enters., Inc.*, 95 F.3d 624, 626 (7th Cir.1996). Three elements must be present for a court to apply res judicata: 1) judgment on the merits in an earlier action, 2) identity of the parties or parties in privity to the two suits, and 3) identity of the cause of action in both suits. *Brzostowski v. Laidlaw Waste Systems, Inc.*, 49 F.3d 337, 338 (7th Cir.195). All three elements are met in this case.

First, there is a judgment in the earlier action. The judgment on the ERISA claim against Fasco (*Janusz I*) was a final judgment on the merits, for a dismissal with prejudice has the same res judicata effects as a litigation. (Opinion and Order, pp. 8-9, citing *Phillips v. Shannon*, 445 F.2d 460, 462 (7th Cir.1971); *Cartolano v. Tyrrell*, 421 F.Supp. 526, 630 (N.D.Ill.1976)). This court then found that the retaliatory discharge claim against Fasco was barred by res judicata because of the judgment in

*Janusz I.*

Second, the claims are based on the same factual allegations. "A claim has 'identity' with a previous litigated matter if it emerges from the same 'core of operative facts' as the earlier action."*Brzostowski*, 49 F.3d at 338-39. Here, the ERISA claim, the retaliatory discharge claim, and the tortious interference with an employment contract claims all come from the same factual allegations. In fact, the defendants and plaintiff used the same 12(M) and 12(N) statement of facts in the motion for summary judgment on the retaliatory discharge claim and on the tortious interference with an employment contract claim. As this court stated in its previous opinion, the same central factual issue is key to all these claims: why Janusz was terminated from his position. (Opinion and Order, p. 9).

Finally, BTR and Coyle are in privity with Fasco for the purposes of res judicata. The Seventh Circuit has found that for res judicata purposes, a corporation, its officers, directors, and employees, are privies. See *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1235 (7th Cir.1986); *Mandarino v. Pollard*, 718 F.2d 845, 850 (7th Cir.1983); *Lee v. City of Peoria*, 685 F.2d 196, 199 (7th Cir.1982). The Seventh Circuit has also found that a corporation and its subsidiaries are in privity for res judicata purposes. See *Aetna Casualty and Surety Co. v. Kerr-McGee Chemical Corp.*, 875 F.2d 1252 (7th Cir.1989). Therefore, BTR, as the parent corporation of Fasco, and Coyle, as an officer and employee who was acting within his authority as Vice President, are in privity with Fasco.

**\*6** Since all three elements of the doctrine of res judicata are met, Janusz's claim of tortious interference of an employment contract against BTR and Coyle is barred by res judicata. BTR and Coyle's motion for summary judgment is granted.

**Conclusion**

For the foregoing reasons, plaintiff Frank Janusz's

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 162793 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 1999 WL 162793)

motion to reconsider is DENIED, defendants BTR, Inc. and Robert Coyle's motion to dismiss is DENIED, and defendants' motion for summary judgment is GRANTED. This case is now CLOSED.

N.D.Ill.,1999.
Janusz v. Fasco Industries, Inc.
Not Reported in F.Supp.2d, 1999 WL 162793 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                                                                   Page 1
Not Reported in F.Supp., 1996 WL 182563 (N.D.Ill.)
(Cite as: Not Reported in F.Supp., 1996 WL 182563)

**H**
Zahran v. Frankenmuth Mut. Ins. Co.
N.D.Ill.,1996.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
Robin and Karen ZAHRAN, Plaintiffs,
v.
FRANKENMUTH MUTUAL INSURANCE CO.,
et al., Defendants.
No. 94 C 4827.

April 15, 1996.

*MEMORANDUM OPINION*

GRADY, District Judge.
*1 Before the court is the defendants' motion to dismiss. For the reasons stated in this opinion, the motion is granted.

*BACKGROUND*

Robin and Karen Zahran ("Zahrans") are suing their insurance company and a cast of characters associated with that company. The Zahrans are aggrieved because their insurer refused to pay for damage resulting from a tornado and a fire on the Zahrans' Wisconsin property.

On May 24, 1989, a tornado struck the Zahrans' farm located in Denmark, Wisconsin, which was insured by Frankenmuth Mutual Insurance Company. Robin Zahran submitted a proof of loss to Frankenmuth of which Frankenmuth paid about $161,000.00. Frankenmuth and Zahran negotiated to settle the remainder of the claim, but they reached no agreement. In September of 1989, Frankenmuth hired defendant General Adjusting Bureau ("GAB"), a claims adjustment firm, and Larry Mours, an adjuster who was engaged by GAB to work on the Zahrans' property loss adjustment. Zahran met with Mours and defendant Orvil

Krueger, a building contractor hired by Mours, to inspect the damaged property in the presence of an independent contractor. Mours, Krueger, and the independent contractor gave Zahran a proposal to replace the damaged farm buildings. On September 28, 1989, Zahran submitted his second proof of loss to Frankenmuth.

On October 9, 1989, Frankenmuth rejected both of Zahran's proofs of loss as unsubstantiated. The Zahrans allege that this rejection began a conspiracy by Frankenmuth, Mours, and Krueger (and later joined by others) to defraud the Zahrans of their property. Frankenmuth later paid $6,274.00 as full payment for the damage assessed by Krueger and Mours, and $14,000.00 based on a report of damage to a slurry tank. The Zahrans claim, however, that the damage reports upon which the claims were paid were fraudulent.

In January 1990, Robin and Karen Zahran filed suit against Frankenmuth, alleging breach of contract and breach of good faith in Frankenmuth's refusal to pay the amount claimed by the Zahrans. *Zahran v. Frankenmuth Mutual Ins. Co.*, No. 90 C 337 (E.D. Wis. filed Jan. 19, 1990) ("*Frankenmuth I*"). Frankenmuth retained the law firm Clausen Miller Gorman Caffrey & Witous, P.C. ("Clausen") and attorneys Jim Hoey and Dennis Fitzpatrick to represent it. Frankenmuth filed a counterclaim against the Zahrans which alleged that the insurance policy was void due to the Zahrans' misrepresentation, concealment, and fraud. The Zahrans allege that Clausen Miller, Hoey and Fitzpatrick joined the conspiracy to defraud the Zahrans of their property.

A trial was held in the tornado case. The jury found by special verdict that Frankenmuth was not obligated to pay under the policy because the Zahrans committed fraud in submitting their claim to Frankenmuth. The court of appeals affirmed the judgment for Frankenmuth and further held that Frankenmuth was entitled to judgment on its counterclaim for fraud against the Zahrans.*Zahran v.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 2
Not Reported in F.Supp., 1996 WL 182563 (N.D.Ill.)
(Cite as: Not Reported in F.Supp., 1996 WL 182563)

*Frankenmuth Mutual Ins. Co.,* Nos. 92-1778 and 92-1848 (7th Cir. March 28, 1994) (unpublished order). The Zahrans allege that Clausen Miller, Hoey, and Frankenmuth falsified documents in this litigation, that Spalding, Mours, Krueger, and Brander testified falsely and submitted false documents, and that Frankenmuth's attorneys filed false pleadings.

**\*2** During the pendency of the tornado case, a fire occurred at a farm home owned by the Zahrans and insured by Frankenmuth. Defendant Pat Vickers of defendant Crawford & Company ("Crawford"), a claims adjustment firm, visited the premises on March 22, 1990, and estimated the loss to be $6,000.00. The Zahrans allege that Frankenmuth and its lawyers and adjustors then used the claim for fire damage as a pretext to investigate the Zahrans' private life for the purpose of defaming them.

On March 30, 1990, Vickers mailed Robin Zahran an estimate of the cost of repairs. The Zahrans allege that Crawford, Vickers, and Frankenmuth knew that the estimate was fraudulent. Frankenmuth paid $3,000.00 as partial payment for the losses caused by the fire, then later informed the Zahrans that they were paid in full for their losses.

Another fire occurred on July 8, 1990, on another paece of the plaintiffs' property. Frankenmuth, its adjusters, and its lawyers investigated the loss and retained cause and origin experts. Frankenmuth recruited Sheriff Eugene Kusche of the Manitowoc Sheriff's Department to investigate. Zahran had a longstanding dispute with Kusche over Kusche's alleged failure to investigate property damage, vandalism, and hate crimes perpetrated against Zahran. Frankenmuth paid $99,995.00 for the loss caused by this fire.

In January 1991, the Zahrans sued Frankenmuth again for failing to pay the amount claimed for the fire losses. *Zahran v. Frankenmuth Mutual Ins. Co.,* No. 91 C 808 (E.D. Wis. 1991) ("*Frankenmuth II*"). At trial, the judge directed a verdict in favor of Frankenmuth on the Zahrans' claim of bad faith, but

the jury deadlocked on the remaining breach of contract claim. At a second trial, the jury returned a verdict in favor of Frankenmuth on the contract claim. The court of appeals again affirmed the judgment. *Zahran v. Frankenmuth Mutual Ins. Co.,* No. 93-2853 (7th Cir. April 25, 1995). The Zahrans allege that again in this suit, Frankenmuth and its attorneys recruited witnesses to give false testimony, tampered with and falsified documents, and failed to disclose all witnesses with knowledge of the fires.

The Zahrans have now filed this lawsuit against Frankenmuth, Frankenmuth claims adjustors Robert Spalding and Patrick Harmon, Clausen Miller Gorman Caffrey & Witous, P.C., attorneys James Hoey and Dennis Fitzpatrick, General Adjusting Bureau and its adjustor Larry Mours, Crawford & Company and its adjustor Pat Vickers, Orvil Krueger, and Merle Brander. On September 1, 1995, we dismissed defendants Frankenmuth, Spalding, Mours, Vickers, Krueger, and Brander from this action. The Zahrans filed their First Amended Complaint on June 26, 1995. Count I against Frankenmuth alleges breach of fiduciary duty, Count II against all defendants alleges invasion of privacy and violations of the Fair Credit Reporting Act, Count III against Clausen, Hoey, and Fitzpatrick alleges breach of duty of care, Count IV against all defendants alleges slander and libel, Count V against all defendants alleges interference with contractual relations, and Count VI against all defendants alleges conspiracy and racketeering. Defendants Harmon, Clausen, Hoey, Fitzpatrick, Crawford, and GAB have moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## DISCUSSION

**\*3** In deciding a motion to dismiss, the court must assume the truth of all facts alleged in the complaint, construing the allegations liberally and viewing them in the light most favorable to the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 3
Not Reported in F.Supp., 1996 WL 182563 (N.D.Ill.)
(Cite as: Not Reported in F.Supp., 1996 WL 182563)

plaintiff. *Wilson v. Formigoni*, 42 F.3d 1060, 1062 (7th Cir. 1994); *McMath v. City of Gary*, 976 F.2d 1026, 1031 (7th Cir. 1992). Dismissal is properly granted "'if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'"*Cushing v. City of Chicago*, 3 F.3d 1156, 1159 (7th Cir. 1993) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). Where a plaintiff is proceeding pro se, the court has an obligation to construe the pleadings liberally, however inartfully pleaded. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### Res Judicata

Res judicata bars not only those issues which were actually decided in a prior suit, but also all issues which could have been raised in that action.*Brzostowski v. Laidlaw Waste Sys.*, 49 F.3d 337, 338 (7th Cir. 1995); *Shaver v. F.W. Woolworth Co.*, 840 F.2d 1361, 1364 (7th Cir.), *cert. denied,*488 U.S. 856 (1988). To apply the doctrine of res judicata, three elements must be present: (1) judgment on the merits in an earlier action; (2) identity of the parties or their privies in the two suits; and (3) identity of the cause of action between both suits. *Brzostowski*, 49 F.3d at 338,*Wade v. Hopper*, 993 F.2d 1246, 1252 (7th Cir.), *cert. denied,*114 S.Ct. 193 (1993). Because the prior litigation was brought in federal court, federal rules of res judicata determine whether the present suit is barred. *Barnett v. Stern*, 909 F.2d 973, 977 (7th Cir. 1990); *In re Energy Cooperative, Inc.*, 814 F.2d 1226, 1230 (7th Cir.), *cert. denied,*484 U.S. 928 (1987).

The first requirement, judgment on the merits, is easily met. Frankenmuth I and Frankenmuth II were both resolved by jury verdicts following trials and subsequent appeals.[FN1] The resolution of these two cases by jury verdicts and affirmances on appeal constitutes judgment on the merits.

The second requirement, identity of the parties or those in privity with the parties is met by defend-ants Harmon, Clausen, Hoey, and Fitzpatrick. Employees and attorneys of a defendant in a prior suit are in privity with the defendant for the purposes of res judicata. *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1235 n.6 (7th Cir. 1986) (holding that res judicata bars federal RICO claims against directors, officers, employees, and attorneys of bank even though the bank was the only actual party to the prior state court mortgage foreclosure proceedings).*See also Hunziker v. German-American State Bank*, 908 F.2d 975, 1990 WL 100829 (7th Cir.). Harmon was employed by Frankenmuth as an adjuster. Clausen was the law firm retained to represent Frankenmuth, and Hoey and Fitzpatrick were two attorneys with that firm.

Crawford and GAB are not as clearly in privity with Frankenmuth as the other four defendants. They are neither employees of Frankenmuth nor were they acting as Frankenmuth's attorneys. Defendants maintain that since both were adjusters retained by Frankenmuth to investigate and adjust plaintiffs' claims, Frankenmuth could have been held liable for any alleged misconduct of the adjusters in a bad faith action brought by plaintiffs; thus, they are in privity with Frankenmuth for the purposes of res judicata. Defendants argue that *Bachenski v. Malnati*, 11 F.3d 1371, 1377-78 (7th Cir. 1993) applies: "Although a master and his servant are not technically in privity, the preclusive principles underlying res judicata were thought to have equal application in the respondeat superior setting because the operative facts and law controlling a servant's direct liability are always identical to those that determine the vicarious liability of his master (so long as the agency relationship and its scope are not in dispute)."

*4 However, we do not think that the relationship between Frankenmuth and its adjusters is that of master and servant. In *Bachenski*, the master was the defendant cab company, and the servant was one of the cab drivers. Here, the adjusters were not permanent employees of Frankenmuth: they were outside companies hired to do one specific investig-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 4
Not Reported in F.Supp., 1996 WL 182563 (N.D.Ill.)
(Cite as: Not Reported in F.Supp., 1996 WL 182563)

ation. Thus, Crawford and GAB do not satisfy the second requirement for res judicata.

The third requirement for res judicata is whether there is an identity of the cause of action between the prior litigant and this suit. "A claim has 'identity' with a previously litigated matter if it emerges from the same 'core of operative facts' as that earlier action. Two claims are one for the purposes of res judicata if they are based on the same, or nearly the same, factual allegations."*Brzostowski,* 49 F.3d at 338-39 (quoting *Colonial Penn Life Ins. Co. v. Hallmark Ins. Admin., Inc.,* 31 F.3d 445, 447 (7th Cir. 1994)). Although a single group of facts may give rise to different theories of recovery, under the federal definition of res judicata this is a single cause of action, for "'[o]nce a transaction has caused injury, all claims arising from that transaction must be brought in one suit or lost.'"*Shaver v. F.W. Woolworth Co.,* 840 F.2d 1361, 1365 (7th Cir. 1988) (quoting Restatement (Second) of Judgments § 24 (1982)). This rule prevents a plaintiff from splitting a cause of action by using several theories of recovery in separate lawsuits. *Id.*

We find that the claims against Harmon, Clausen, Hoey, and Fitzpatrick clearly arise from the same core of operative facts as the previous lawsuits. The Zahrans have put forth a number of new legal theories in this suit, but the central factual issues are identical: the tornado, the fire, and the behavior surrounding Frankenmuth's failure to pay the Zahrans under the policy for the losses resulting from these events.

All of the allegations in the Zahrans' First Amended Complaint regarding Harmon derive from the same conduct that was previously considered either at trial or on appeal. The only allegation citing Harmon by name states that Harmon covered up the investigation of the fires, intentionally concealed information, and was a member of the conspiracy against the Zahrans. Other allegations made against "defendants" generally include: violations of the Fair Reporting Credit Act, slander and libel, inter-

ference with contractual relations, and conspiracy and racketeering. None of these allegations state that the complained of conduct occurred following the prior trials and appeals. The transactions causing injury -- the conduct surrounding the investigation and conduct regarding trial -- have already been litigated. Thus, the claims against Harmon arise from the same core of operative facts as the previous litigation against Frankenmuth.

The allegations involving Clausen, Hoey, and Fitzpatrick also derive from the same conduct that was previously litigated either at trial or on appeal. The Zahrans claim that Frankenmuth's attorneys withheld information during the trial, falsified documents and induced false testimony at trial, covered up the investigation of the fires and intentionally concealed information about the fires, violated the Fair Credit Reporting Act, violated a duty of care, slandered and libeled the Zahrans, interfered with contractual relations, and conspired to defraud the Zahrans. They also claim that Clausen acted as an enterprise to conspire and defraud the Zahrans. The duty of care claim alleges that attorneys falsely accused the Zahrans of committing fraud and Frankenmuth relied on these statements. All of these claims either relate to conduct during the investigations of the fires or conduct during the litigation. Again, none of the claims allege conduct subsequent to the trials or appeals. The claims arise from the same core of operative facts as the previous litigation against Frankenmuth. Thus, because all three elements are met, res judicata bars the Zahrans claims against Harmon, Clausen, Hoey, and Fitzpatrick.

*Collateral Estoppel*

**\*5** "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."*Allen v. McCurry,* 449 U.S. 90, 94 (1980). In a defensive use of collateral estoppel, a plaintiff is estopped from asserting

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                   Page 5
Not Reported in F.Supp., 1996 WL 182563 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp., 1996 WL 182563)**

a claim that the plaintiff had previously litigated and lost against another defendant.*Parklane Hosiery v. Shore,* 439 U.S. 322, 329 (1979). Defensive use of collateral estoppel precludes a plaintiff from relitigating identical issues merely by switching adversaries; it gives plaintiffs a strong incentive to join all potential defendants in the first action if possible. *Id.* at 329-30.Unlike res judicata, there is no requirement that the party claiming estoppel have been a party or in privity with a party to the prior suit.[FN2]"For collateral estoppel to apply, four elements must be met: (1) the issue sought to be precluded must be the same as that involved in the prior litigation, (2) the issue must have been actually litigated, (3) the determination of the issue must have been essential to the final judgment, and (4) the party against whom estoppel is invoked must be fully represented in the prior action."*Meyer v. Rigdon,* 36 F.3d 1375, 1379 (7th Cir. 1994).

The claims asserted against GAB and Crawford include: conspiring to defraud the Zahrans, submitting fraudulent estimates to the Zahrans, covering up the investigation of the fires, concealing material information regarding the investigation, testifying falsely, violating the Fair Reporting Credit Act, slander and libel, conspiring and operating as an enterprise to defraud the Zahrans. All of these allegations involve conduct prior to the Zahrans' trials and appeals.

During the second trial against Frankenmuth, the judge directed a verdict in favor of Frankenmuth on the Zahrans' claim of bad faith and the jury found in favor of Frankenmuth on the breach of contract claim. The appellate court affirmed, disregarding the Zahrans' allegations of false testimony. Whether or not Frankenmuth acted in bad faith during the investigation process was essential to determining whether it was liable to the Zahrans. All of the issues the Zahrans raise pertaining to GAB and Crawford have already been litigated. The court has already decided that the investigation of the Zahrans' claims was not conducted in bad faith; this precludes a finding that Frankenmuth's adjusters

could have, during this same investigation, done the acts the Zahrans now allege.

The Zahrans cannot attempt to relitigate the same issues they have already lost against Frankenmuth merely by bringing them against Frankenmuth's adjusters. Collateral estoppel bars all claims against GAB and Crawford.

*CONCLUSION*

For the foregoing reasons, defendants' motion to dismiss is granted. Final judgment will be entered in favor of all defendants.

> FN1. In deciding the res judicata issue, the court has considered the documents from the two prior lawsuits. A court may take judicial notice of matters of public record in ruling on a 12(b)(6) motion to dismiss.*Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir. 1994); *United States v. Wood,* 925 F.2d 1580, 1582 (7th Cir. 1991).

> FN2."Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."*Allen v. McCurry,* 449 U.S. 90, 94 (1980).

N.D.Ill.,1996.
Zahran v. Frankenmuth Mut. Ins. Co.
Not Reported in F.Supp., 1996 WL 182563 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                                                              Page 1
Not Reported in F.Supp., 1995 WL 758333 (N.D.Ill.)
(Cite as: Not Reported in F.Supp., 1995 WL 758333)

**H**
Davis v. Rodriguez
N.D.Ill.,1995.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
William P. DAVIS, Plaintiff,
v.
Matt L. RODRIGUEZ, Superintendent of Police,
Chicago Police Department, Defendant.
No. 95 C 4584.

Dec. 19, 1995.

*MEMORANDUM OPINION AND ORDER*

NORDBERG, District Judge.
*1 Plaintiff William Davis ("Plaintiff"), formerly
the Director of News Affairs for the Chicago Police
Department, sued Defendant Matthew L. Rodriguez
("Defendant"), the Superintendent of the Chicago
Police Department, alleging that Defendant, by fir-
ing Plaintiff, violated Plaintiff's rights under the
United States Constitution and the Illinois State
Constitution. Plaintiff seeks to be reinstated as the
Director of News Affairs of the Chicago Police De-
partment and recover compensatory and punitive
damages. Before the Court is Defendant's Motion to
Dismiss Plaintiff's Complaint pursuant to Federal
Rule of Civil Procedure 12(b)(6).

I. BACKGROUND

A. ALLEGED FACTS

According to the Complaint, the facts of the case
are as follows.

Plaintiff was hired by Defendant as the Director of
News Affairs ("Director") on October 9, 1992.
Plaintiff was employed primarily as a spokesperson
for the Chicago Police and as a liaison between the
police and the news media. Plaintiff claims that the
Director is a "civilian member" of the Police De-
partment. Moreover, Plaintiff claims that the Dir-
ector, as a civilian member is entitled to all of the
benefits of the rules and regulations governing the
Chicago Police Department. Plaintiff attaches and
incorporates into his complaint a copy of the Rules
and Regulations of the Chicago Police Department
published November 1, 1975. Plaintiff also claims
that his employment was governed by the General
Order No. 93-3, issued by Defendant, on Complaint
and Disciplinary Procedures, which Plaintiff at-
taches and incorporates into his Complaint.
Plaintiff claims that he has a property right in his
employment as Director due to the Rules and Regu-
lations and General Order 93-3.

On October 3, 1994, a Cook County grand jury re-
turned a three-count indictment against Plaintiff for
official misconduct, charging: that Plaintiff dissem-
inated information concerning a pending police in-
vestigation to the suspect of that investigation,
Melvin Reynolds; that Plaintiff performed an act in
excess of his lawful authority to obtain a personal
advantage for himself or another; and that Plaintiff
failed to report to the police information concerning
crimes and unlawful conduct involving Melvin
Reynolds. On October 4, 1994, Defendant caused
two documents titled "Notification of Charges-
Allegations" and "Criminal Rights-Chicago Police
Department" to be served on Plaintiff. Both docu-
ments are attached to Plaintiff's Complaint. Both
documents notified Plaintiff that charges were
made against him and informed him of his rights
prior to interrogation. Upon receipt of these docu-
ments, Plaintiff executed a "Request to Secure
Counsel."

Also on October 4, 1994, Plaintiff was given a doc-
ument titled "Notification of Duty Restrictions,"
which instructed Plaintiff to turn in his "Chicago
Police Star, Shield and Identification Card." In ad-
dition, Defendant allegedly informed Plaintiff that
"his employment and services as Director of News
Affairs of the Chicago, Illinois Police Department

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 2
Not Reported in F.Supp., 1995 WL 758333 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp., 1995 WL 758333)**

were discharged, terminated and severed." Plaintiff thus claims that he was terminated as a result of the allegations contained in the indictment.

Plaintiff further alleges that another employee of the Chicago Police Department who disseminated information concerning the pending investigation of Melvin Reynolds was reprimanded by a mere suspension, as opposed to termination, and was afforded the procedural benefits expounded in the Rules and Regulations of the Chicago Police Department.

Plaintiff alleges that Defendant's termination of his employment as the Director of News Affairs violated his rights as secured by the Fourteenth Amendment of the United States Constitution. In addition, Plaintiff alleges that the termination violated his rights as provided for in Article I, Sections 2, 12, 17 and 18 of the Illinois State Constitution.

**B. PROCEDURAL BACKGROUND**

**\*2** On July 25, 1995, Plaintiff filed a two-count complaint in the Circuit Court of Cook County, Illinois, County Department, Law Division, case number 95 L 11406. On August 9, 1995, Defendant filed a Notice of Removal pursuant to 18 U.S.C. § 1441(b), bringing Plaintiff's July 25, 1995 complaint before this Court ("Present Complaint"). In addition to its removal petition, Defendant has filed a Motion to Dismiss the Present Complaint.

Prior to this action, Plaintiff filed a complaint against Defendant in the United States District Court for the Northern District of Illinois on December 15, 1994 ("Earlier Complaint"). The Earlier Complaint is almost identical to that filed on July 25, 1995 in the Circuit Court of Cook County, except that the Present Complaint is brought pursuant to provisions of the Illinois State Constitution as well as pursuant to the Fourteenth Amendment of the United States Constitution.

On February 27, 1995, this Court dismissed the December 15, 1994 complaint in its entirety.

(Memorandum Opinion and Order, February 27, 1995). Plaintiff filed an appeal of the Court's dismissal of his Earlier Complaint. Plaintiff has subsequently withdrawn the appeal.

**II. ANALYSIS**

**A. NOTICE OF REMOVAL**

On August 9, 1995, Defendant filed its Notice of Removal pursuant to 28 U.S.C. § 1441(b), removing Plaintiff's July 25, 1995 compliant in the Circuit Court of Cook County to this Court. A defendant may, pursuant to Section 1441(b), remove a suit which states a claim founded upon a federal question. Specifically Section 1441(b) provides:

Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.

18 U.S.C. § 1441(b). Removal is proper in this case because Plaintiff seeks to recover damages for the alleged denial of his rights under the Due Process and Equal Protection clauses of the Fourteenth Amendment to the United States Constitution. (Complaint, ¶ 1). Removal of the state law claims is also permissible because those claims and the federal claims derive from a "common nucleus of operative fact" *United Mine Workers v. Gibbs,* 383 U.S. 715, 725 (1966). The Court has supplemental jurisdiction over state claims that "are so related to claims in the action within such original jurisdiction they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

Plaintiff has not filed a motion to remand. "A plaintiff who believes that a case has been removed improperly must challenge the removal by a motion to remand in the federal court...." 14A Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3739. A court resolves whether an action should be remanded based on the complaint

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                   Page 3

Not Reported in F.Supp., 1995 WL 758333 (N.D.Ill.)

**(Cite as: Not Reported in F.Supp., 1995 WL 758333)**

at the time the petition for removal was filed. *Id.* The removing party must bear the burden of proof. *Id.* Instead of filing a motion to remand, Plaintiff filed a response brief to Defendant's Motion to Dismiss in which he objected to Defendant's Notice of Removal. Nevertheless, the Court will consider Plaintiff's arguments regarding whether Defendant's removal was proper.

**\*3** Defendant contends that removal is improper because the Circuit Court action was not brought "under the Constitution, treaties or laws of the United States," but rather it was brought under Article I, sections 2, 12, 17 and 18 of the Illinois State Constitution. (Plaintiff's Response, ¶ 3). This assertion is not true because Paragraph 1 of Plaintiff's Complaint expressly states that Plaintiff's Complaint is brought pursuant to the Fourteenth Amendment of the United States Constitution, in addition to provisions of the Illinois State Constitution. (Complaint, ¶ 1). Under the part of the Present Complaint that Plaintiff titled "Nature of the Action," Plaintiff quotes the Fourteenth Amendment as providing the rights and privileges that Plaintiff was allegedly denied. Therefore, this Court has jurisdiction over the lawsuit pursuant to Section 1441(b) because Plaintiff alleges that Defendant violated the Due Process and Equal Protection Clauses of the United States Constitution.

## B. RES JUDICATA

Defendant claims that Plaintiff's Present Complaint should be dismissed in its entirety because it is barred by res judicata. Plaintiff filed a suit in federal court on December 15, 1994, and this Court dismissed the Earlier Complaint on February 27, 1995 for failure to state a claim upon which relief may be granted. Plaintiff filed the Present Complaint against Defendant on July 25, 1995, asserting that his rights guaranteed by the United States Constitution had been violated and that his rights provided by the Illinois State Constitution had been violated.

The Earlier Complaint was brought and adjudicated

in federal court, and, therefore, the federal rules of res judicata apply. *E.E.O.C. v. Harris Chernin, Inc.,* 10 F.3d 1286, 1289 n. 4 (7th Cir.1993). Res judicata is comprised of three essential elements: "(1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and later suit; and (3) an identity of parties or privies in the two suits." *Harris,* 10 F.3d at 1289; *Matter of Energy Co-op., Inc.,* 814 F.2d 1226, 1230 (7th Cir.), *cert. denied,* 484 U.S. 928 (1987). "[R]es judicata bars not only those issues which were actually decided in the prior action but also any issues which could have been raised." *Shaver v. Woolworth Co.,* 840 F.2d 1361, 1363 (7th Cir.) (quoting *Lee v. City of Peoria,* 685 F.2d 196, 198 (7th Cir.1982), *cert. denied,* 488 U.S. 856 (1988)).

In the instant case, there was a final judgment on the merits of the Earlier Complaint. In this Court's Memorandum Opinion and Order issued February 27, 1995, dismissing Plaintiff's Earlier Complaint, the Court stated that Plaintiff could file an amended complaint within 28 days, but, if he chose not to do so, the judgment of dismissal would be with prejudice. Plaintiff chose not to amend the Earlier Complaint, and on March 24, 1995, filed a notice of appeal, which he has since abandoned. Accordingly, the court's dismissal of the Earlier Complaint was a final judgment on the merits. There is identity of parties because in the Earlier Complaint, as in the Present Complaint, Plaintiff, William P. Davis, brought suit against Defendant, Matt L. Rodriguez.

**\*4** Finally, there is an identity of cause of action in both the earlier and later suit. The Seventh Circuit has clarified the "identity of cause of action" element as follows: "Once a transaction has caused injury, all claims arising from that transaction must be brought in one suit or lost." *Energy Co-op.,* 814 F.2d at 1230-31 (quoting *Restatement (Second) of Judgments* § 24 (1982)). Federal law defines a single cause of action as " 'a core of operative facts' which gives rise to a remedy." *Energy Co-op.,* 814 F.2d at 1231. A plaintiff must join all relevant theories of relief in a single proceeding. *Shaver,* 840

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 4
Not Reported in F.Supp., 1995 WL 758333 (N.D.Ill.)
(Cite as: Not Reported in F.Supp., 1995 WL 758333)

F.2d at 1366; *Harper Plastics, Inc. v. Amoco Chemicals Corp.,* 657 F.2d 939, 946 (7th Cir.1981).

The essential facts surrounding Plaintiff's Present Complaint all derive from the termination of Plaintiff as the Director of News Affairs by Defendant. Plaintiff's Earlier Complaint is almost identical to the Present Complaint. In the Earlier Complaint, as in the Present Complaint, Plaintiff alleged that he had a property right in his employment due to the Rules and Regulations of the Chicago Police Department and the Chicago Police Department General Order Number 93-3. Plaintiff claimed that he was terminated as a result of the allegations contained in the three-count indictment. Plaintiff further alleged, as he does in the instant case, that another employee of the Chicago Police Department, who disseminated information concerning the pending investigation of Congressman Reynolds, was reprimanded by a mere suspension, as opposed to termination, and was afforded the procedural benefits expounded in the General Order and in the Rules and Regulations of the Chicago Police Department. Plaintiff further claimed that Defendant violated his rights by discharging him without offering him a "pre-termination opportunity to respond to the accusations against him." In addition, and also as in the Present Complaint, Plaintiff claimed that his rights were violated by Defendant's alleged failure to comply with the administrative procedures of the Chicago Police Department in the course of terminating Plaintiff's employment.

In the instant case, Plaintiff alleges the exact same sequence of events as alleged in the Earlier Complaint, except in the Present Complaint, Plaintiff brings his action under the United States Constitution, without specifying a statutory provision, and the Illinois State Constitution, rather than explicitly stating that his cause of action is brought pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 1983, as in the Earlier Complaint. In fact, page numbers six through 35 of the Present Complaint are identical to pages six through 35 of the Earlier Complaint. Therefore, it cannot be disputed that the facts that

gave rise to Plaintiff's first suit against Defendant are the same core facts that now give rise to Plaintiff's present suit against Defendant. Accordingly, Plaintiff is barred by the doctrine of res judicata from pursuing his claims under the United States Constitution and the Illinois State Constitution.

**\*5** The applicability of res judicata was not mentioned by Plaintiff in his response. Had Plaintiff responded to the issue, Plaintiff may have argued that the state constitutional claims should not be barred because it is unfair to require him to join state theories of relief in a federal complaint where those state claims can be entertained only pursuant to this Court's supplemental jurisdiction. 28 U.S.C. § 1367(a). Furthermore, this Court dismissed the federal claims of Plaintiff's Earlier Complaint, and, therefore, it would have been up to the Court's discretion whether to hear Plaintiff's state constitutional claims had Plaintiff included such claims in his Earlier Complaint. 28 U.S.C. § 1367(c)(3).

In *Harper,* the court considered whether res judicata barred the plaintiff from bringing a state contract claim, following a dismissal on the merits of his federal antitrust claim. *Harper,* 657 F.2d at 945-46. The plaintiff did not join the contract claims in the original federal action pursuant to the court's pendent jurisdiction. *Id.* Res judicata barred the state claims because the plaintiff failed to join all the relevant theories of recovery in the first proceeding. The court further explained that, "[t]he uncertainty over whether a trial judge would exercise pendent jurisdiction does not justify permitting the institution of a multiplicity of proceedings which may have the effect of harassing defendants and wasting judicial resources." *Id.* at 946.

In the instant case, as in *Harper,* the uncertainty over whether the federal court would have ultimately adjudicated Plaintiff's state constitutional claims in the earlier suit does not justify permitting Plaintiff to file the instant suit. If Plaintiff had presented his state claims to the Court in his Earlier Complaint, and if the Court had declined to exer-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 5
Not Reported in F.Supp., 1995 WL 758333 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp., 1995 WL 758333)**

cise jurisdiction over the state claims after dismissing Plaintiff's federal claims, the state claims would then be left to the state courts for resolution. *See, Harper,* 657 F.2d at 946.

Other courts in this jurisdiction have barred a plaintiff's state law claims after the plaintiff failed to raise those claims in a prior federal proceeding arising out of the same core of operative facts. In *Shaver,* the plaintiff, Shaver, filed a complaint alleging that his discharge violated the Age Discrimination in Employment Act ("ADEA"), and he joined pendent state law claims. *Shaver,* 840 F.2d at 1363. Shaver's ADEA suit was not timely filed and was dismissed, and the district judge refused to exercise pendent jurisdiction over the remaining state law claims. *Id.* Shaver filed a second lawsuit in state court alleging only state law breach of contract and negligent employment termination claims, which was removed to federal court on the basis of diversity of citizenship. *Id.* The court found that Shaver's layoff, due to the defendant's liquidation of one of its divisions, gave rise to both of Shaver's lawsuits, and therefore, the suits were identical causes of action under res judicata principles. *Id.* at 1365. Consequently, the Seventh Circuit affirmed the district court's dismissal of the suit. See also, *Brzostowski v. Laidlaw Waste Systems, Inc.,* 49 F.3d 337, 338-39 (7th Cir.1995) (The plaintiff's lawsuit alleging that his discharge violated his employment contract with the defendant was dismissed; res judicata barred the plaintiff's subsequent suit under the ADEA, alleging that the defendant unlawfully terminated his employment on the basis of his age, because the termination of the plaintiff's employment by the defendant constituted "the nucleus of allegations giving rise to both suits."); *Sanders v. Venture Stores, Inc.,* 899 F.Supp. 387, 388-89 (N.D.Ill.1995) (The plaintiffs' lawsuit alleging that their discharges violated Title VII was dismissed on summary judgment as time-barred; res judicata barred the plaintiffs' subsequent suit under the state law theory of breach of contract, which was removed to federal court based on diversity jurisdiction, because the plaintiffs' "Title VII and state law breach of contract claims were identical causes of action for res judicata proposes.")

*6 In *Shaver,* the fact that the plaintiff had presented the state claims to the district judge in his original suit, who declined to exercise jurisdiction over them, did not preclude res judicata. In our case, Plaintiff did not even attempt to present his state constitutional claims to this Court in the earlier lawsuit. A fortiori, res judicata is not precluded in this case.

In his prior suit, Plaintiff had an opportunity to invoke this Court's supplemental jurisdiction by asserting his state constitutional claims against Defendant at that time. Instead, Plaintiff did not include all relevant theories of relief in his Earlier Complaint before the Court. As in *Shaver,* Plaintiff's failure to pursue the claims arising under the Illinois State Constitution, and under all theories of recovery under the United States Constitution, in the forum originally selected by him, precludes him from taking "a second bite of the apple" now.

III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED with prejudice.

JUDGMENT

IT IS ORDERED AND ADJUDGED for the foregoing reasons, Defendant's Motion to Dismiss is GRANTED with prejudice.

N.D.Ill.,1995.
Davis v. Rodriguez
Not Reported in F.Supp., 1995 WL 758333 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.