# Exhibit C

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| DIEP X. HOANG | ) ) ) ) | **FILED** |
| Plaintiff, | ) ) | NOV - 3 2003 |
| V. | ) ) | CIVIL ACTION |
| | ) ) | NO. 03 C 2910 |
| ABBOTT LABORATORIES, | ) | MICHAEL W. DOBBINS |
| KATHERINE GREEN, | ) | CLERK, U.S. DISTRICT COURT |

DIEP X. HOANG

   Plaintiff,

   V.

ABBOTT LABORATORIES,
KATHERINE GREEN,
KENNETH A. WILSON,
CINDY PEREZ, LOIS FORD,
and MAURIZO ACQUASALIENTE,

   Defendants.

) ) ) ) ) CIVIL ACTION
) ) NO. 03 C 2910
) ) ) ) ) ) ) )
) JUDGE PLUNKETT
) MAGISTRATE JUDGE SCHENKIER

**FILED**

NOV - 3 2003

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**DOCKETED**

NOV 0 6 2003

## PLAINTIFF'S FIRST AMENDED COMPLAINT

NOW COMES the Plaintiff, DIEP HOANG, by and through her Attorney, DAVID A.

BOONSTRA, of the Law Firm RUSIN PATTON MACIOROWSKI & FRIEDMAN, LTD. and

complaining of the Defendants, ABBOTT LABORATORIES, KATHERINE GREEN,

KENNETH A. WILSON, CINDY PEREZ, LOIS FORD and MAURIZO ACQUASALIENTE,

states as follows:

1.    This is an action for employment discrimination and other pendant state claims.

## PARTIES

2.    The Plaintiff is DIEP X. HOANG of the County of Cook in the State of Illinois.

3.    A Defendant is ABBOTT LABORATORIES, which resides at 1401 Sheridan Road,

North Chicago, Lake County, Illinois.

4.    A Defendant is KATHERINE GREEN, individually and as agent and/or employee of

ABBOTT LABORATORIES, who, on information and belief, resides in the State of Illinois.

29

5.    A Defendant is KENNETH A. WILSON, individually and as agent and/or employee of ABBOTT LABORATORIES, who, on information and belief, resides at 935 Kilburn Court, Grayslake, Illinois 60030.

6.    A Defendant is CINDY PEREZ, individually and as agent and/or employee of ABBOTT LABORATORIES, who, on information and belief, resides in the State of Illinois.

7.    A Defendant is LOIS FORD, individually and as agent and/or employee of ABBOTT LABORATORIES, who, on information and belief, resides in the State of Illinois.

8.    A Defendant is MAURIZIO ACQUASALIENTE, individually and as agent and/or employee of ABBOTT LABORATORIES, who, on information and belief, resides at 1014 Central, Highland Park, Illinois 60035.

## JURISDICTION

9.    Jurisdiction over the statutory violation alleged is conferred as follows: over Title VII claims by 28 U.S.C. Section 1331, 28 U.S.C. Section 1343(a)(3), and 42 U.S.C. Section 2000e-5(f)(3); over 42 U.S.C. Section 1981 and Section 1983 by 42 U.S.C. Section 1988; over the A.D.E.A. by 42 U.S.C. Section 12117. Plaintiff also pleads pendant state law claims for relief pursuant to 28 U.S.C. Section 1367.

## VENUE

10.    The Plaintiff currently resides in Cook County, Illinois, which is in this District; the claims alleged also arose in this District. Accordingly, venue properly lies pursuant to 28 U.S.C. Section 1391.

## FACTS

11.    On or about April 1993, the Plaintiff began her employment with Abbott Laboratories.

12.    The Plaintiff continued to work for Abbott Laboratories until she was terminated in January of 2002.

13.    During the course of Plaintiff's employment with Abbott Laboratories, the Plaintiff was discriminated against because of her color, disability, national origin, race, and sex.

2

14.    During the course of Plaintiff's employment with Abbott Laboratories, the Plaintiff was subjected to sexual harassment by at least one of her supervisors.

15.    The Defendant, ABBOTT LABORATORIES, by and through its agents and/or its employees, discriminated against the plaintiff, created a hostile work environment, failed to promote the Plaintiff, and eventually wrongfully terminated Plaintiff's employment.

16.    Between November 1, 2001 and November 20, 2001, the Defendants, KATHERINE GREEN, KENNETH A. WILSON, CINDY PEREZ, LOIS FORD and MAURIZIO ACQUASALIENTE, individually and as agents and/or employees of the Defendant, ABBOTT LABORATORIES, knowing that the Plaintiff had mental health problems, kept the Plaintiff in a room for several hours against her will and subjected the Plaintiff to severe interrogation.

17.    The Defendants' actions of discrimination, sexual harassment, false imprisonment and intentional infliction of emotional distress caused the Plaintiff severe emotional distress and other damages.

## COUNT I

18.    The Defendants discriminated against the Plaintiff on or about, or beginning on or about April, 1994.

19.    The Plaintiff has filed a charge against the Defendant, ABBOTT LABORATORIES, asserting the acts of discrimination in this First Amended Complaint with the following governmental agencies: the United States Equal Employment Opportunity Commission on or about November 12, 2002. A copy of the charge is attached hereto as Exhibit A.

20.    It is the policy of both the Equal Employment Opportunity Commission and the Illinois Department of Human Rights to cross-file with the other agency all charges received. The Plaintiff has no reason to believe that this policy was not followed in this case.

21.    The United States Equal Employment Opportunity Commission has issued a Notice of Right to Sue, which was received by the Plaintiff in January 31, 2003, a copy of which Notice is attached to this First Amended Complaint.

3

22.    The Defendants discriminated against the Plaintiff because of the Plaintiff's: Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. Section 1981; Disability (Americans with Disabilities Act); National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. Section 1981); Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. Section 1981); and Sex (Title VII of the Civil Rights Act of 1964).

23.    The Plaintiff is suing the Defendant, ABBOTT LABORATORIES, a corporation who, on information and belief, has 15 or more employees for each working day for 20 or more calendar weeks in the current and preceding calendar year.

    WHEREFORE, the Plaintiff prays for the following relief: find that the Defendant, ABBOTT LABORATORIES, wrongfully terminated her employment; that the Defendant, ABBOTT LABORATORIES, failed to promote the Plaintiff; that the Defendant, ABBOTT LABORATORIES, failed to reasonably accommodate the Plaintiff's disabilities; that the Defendant, ABBOTT LABORATORIES, wrongfully discriminated and against the Plaintiff; reasonable attorneys' fees; and award to the Plaintiff any and all other relief that may be allowed under the law.

## COUNT II (False Imprisonment)

24.    Plaintiff re-alleges paragraphs 1 through 17 above.

    WHEREFORE, the Plaintiff prays for relief in monetary damages for false imprisonment against the Defendants for all economic, non-economic and punitive damages allowed under the law.

## COUNT III (Intentional Infliction of Emotional Distress)

25.    Plaintiff re-alleges paragraphs 1 through 17 above.

WHEREFORE, the Plaintiff prays for relief in monetary damages for intentional infliction of emotional distress against the Defendants for all economic, non-economic and punitive damages allowed under the law.

Respectfully submitted,

David A. Boonstra
Attorney for Diep X. Hoang

Rusin Patton Maciorowski & Friedman, Ltd.
10 South Riverside Plaza
Suite 1530
Chicago, Illinois 60606-3802
(312) 454-5110
00178032.DOC

5

## CHARGE OF DISCRIMINATION

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ☐ FEPA  ☒ EEOC | 210A300078 |

|  |  |
|---|---|
| **Illinois Dept. of Human Rights** | and EEOC |
| *State or local Agency, if any* | |

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Ms. Diep X. Hoang | (773) 878-1208 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 2454 W. Gunnison St., Chicago, IL 60625 | | 11/20/1965 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Abbott Laboratories | Cat D (501 +) | (847) 935-2610 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 1401 N. Sheridan Road, North Chicago, IL 60064 | | 097 |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☒ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ OTHER(Specify)

| DATE DISCRIMINATION TOOK PLACE | |
|---|---|
| EARLIEST | LATEST |
| 01/15/2002 | 01/15/2002 |
| ☐ CONTINUING ACTION | |

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s)):

I.  I was employed by the above named Respondent on August 1993. Most recently I held the position of Associate Scientist. I was harassed and subjected to a hostile work environment since on or about 1994. I was treated differently than my counterparts. I was the only female and the only Asian (Vietnamese) and was subjected to lower wages. I complained to management to no avail about these issues. Since on or about November 20, 2001, I went on a medical leave of absence due to my disability. Respondent was aware of my disability. On January 10, 2002, my physician recommended my leave of absence be extended by an additional thirty days pending further medical evaluation. However, on January 16, 2002, Respondent terminated my employment.

II.  I believe that I have been discriminated against because of my race, Asian, my national origin, Vietnamese, and my sex, Female, in violation of Title VII of the Civil Rights Act of 1964, as amended, and my disability, in violation of the Americans with Disabilities Act of 1990.

**EXHIBIT**

**A**

RECEIVED EEOC

NOV 1 2 2002

CHICAGO DISTRICT OFFICE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Month, day and year) |
| Nov 12, 2002 | |
| Date        Charging Party (Signature) | |

EEOC FORM 5 (Rev. 07/99)

**CHARGING PARTY COPY**

**Equal Employment Opportunity Commission**

# DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: Diep X. Hoang<br>2454 W. Gunnison Street<br>Chicago, IL 60625<br><br>Certified No.: 7099 3400 0006 7300 6293 | From: Equal Employment Opportunity Commission<br>500 West Madison<br>Suite 2800<br>Chicago, Illinois 60661 |

[        ] *On behalf of a person aggrieved whose identity is*
*CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 210A300078 | Dorothea Hines, Investigator | (312) 886-9123 |

*(See the additional information attached to this form.)*

YOUR CHARGE IS DISMISSED FOR THE FOLLOWING REASON:

[        ] The facts you allege fail to state a claim under any of the statutes enforced by the Commission

[        ] Respondent employs less than the required number of employees.

[        ] Your charge was not timely filed with the Commission, *i.e.*, you waited too long after the date(s) of the discrimination you alleged to file your charge. Because it was filed outside the time limit prescribed by law, the Commission cannot investigate your allegations.

[        ] You failed to provide requested information, failed or refused to appear or to be available for necessary interviews/conferences, or or otherwise refused to cooperate to the extent that the Commission has been unable to resolve your charge. You have had more than 30 days in which to respond to our final written request.

[        ] The Commission has made reasonable efforts to locate you and has been unable to do so. You have had at least 30 days in which to respond to a notice sent to your last known address.

[        ] The respondent has made a reasonable settlement offer which affords full relief for the harm you alleged. At least 30 days have expired since you received actual notice of this settlement offer.

[   X   ] The Commission issues the following determination: Based upon the Commission's investigation, the Commission is unable to to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[        ] Other (*briefly state*)

## - NOTICE OF SUIT RIGHTS -

[   X   ] Title VII and/or the Americans with Disabilities Act: This is your NOTICE OF RIGHT TO SUE, which terminates the Commission's processing of your charge. If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in a court of competent jurisdiction. If you decide to sue, you must sue **WITHIN 90 DAYS** from your receipt of this Notice; otherwise your right to sue is lost.

[        ] Age Discrimination in Employment Act: This is your NOTICE OF DISMISSAL OR TERMINATION, which terminates processing of your charge. If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in a court of competent jurisdiction. If you decide to sue, you must sue **WITHIN 90 DAYS** from your receipt of this Notice; otherwise your right to sue is lost.

[        ] Equal Pay Act (EPA): EPA suits must be brought within 2 years (3 years for willful violations) of the alleged EPA underpayment.

On behalf of the Commission

1-31-03                                     *John P. Rowe*

John P. Rowe, District Director

Enclosures
   Information Sheets
   Copy of Charge
cc:  Respondent(s)            Abbott Laboratories

EEOC Form 161 (Test 5/95)

# Exhibit D

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DIEP X. HOANG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03 C 2910 |
| | ) | Judge Paul E. Plunkett |
| ABBOTT LABORATORIES, | ) | Magistrate Judge Sidney I. Schenkier |
| KATHERINE GREEN, | ) | |
| KENNETH A. WILSON, CINDY PEREZ, | ) | |
| LOIS FORD, and | ) | |
| MAURIZO ACQUASALIENTE, | ) | |
| | ) | |
| Defendants. | ) | |

**DOCKETED**
AUG 2 5 2004

**FILED**
AUG 2 4 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

NOTICE OF FILING

To:       See attached service list.

PLEASE TAKE NOTICE that on August 24, 2004, I have caused to be filed with the Clerk of
the United States District Court, Northern District of Illinois, Eastern Division, the following
documents: PLAINTIFF'S SECOND AMENDED COMPLAINT, a copy of which is attached
hereto and hereby served upon you.

By:  _____

Attorneys for Plaintiff, Diep X. Hoang

Richard P. Tauras
**BOLLINGER, RUBERRY & GARVEY**
500 West Madison Street, Suite 2300
Chicago, Illinois 60661
(312) 466-8000

40

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that I served a copy of the attached to the parties listed on the attached service list by mailing same in a sealed envelope with proper postage prepaid and by depositing in the U.S. Mail Chute at 500 West Madison Street, in Chicago, Illinois 60661, before 5:00 p.m. on August 24, 2004

Richard P. Tauras
**BOLLINGER, RUBERRY & GARVEY**
Appointed Attorney for Plaintiff
500 W. Madison Street, Suite 2300
Chicago, Illinois 60606

### SERVICE LIST

**Attorneys for Defendants**
Hubert O. Thompson
Ronald Austin, Jr.
BROTHERS & THOMPSON, P.C.
100 West Monroe Street
Suite 1700
Chicago, IL 60603
        312-372-2090
Fax:    312-704-6693

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DIEP X. HOANG,                              )
                                            )
            Plaintiff,                       )
                                            )
      v.                                     )   No. 03 C 2910
                                            )   Judge Paul E. Plunkett
ABBOTT LABORATORIES,                         )   Magistrate Judge Sidney I. Schenkier
KATHERINE GREEN,                             )
KENNETH A. WILSON, CINDY PEREZ,              )   **FILED**
LOIS FORD, and                               )
MAURIZO ACQUASALIENTE,                       )   AUG 2 4 2004
                                            )
            Defendants.                       )   MICHAEL W. DOBBINS
                                                 CLERK, U.S. DISTRICT COURT

## PLAINTIFF'S SECOND AMENDED COMPLAINT

NOW COMES the plaintiff, DIEP X. HOANG, by and through her appointed attorney,

Richard P. Tauras of the law firm of BOLLINGER, RUBERRY & GARVEY, and complaining of

the defendants ABBOTT LABORATORIES, KATHERINE GREEN, KENNETH WILSON,

CINDY PEREZ, LOIS FORD and MAURIZO ACQUASALIENTE, states as follows:

### Nature of the Case

1.    The cause of action for plaintiff, DIEP X. HOANG, arises under Title VII of the

Civil Rights Act, 42 U.S.C. 2000e *et seq.*, as amended, Illinois Human Rights Act, Ill.Ann.Stat.Ch.

775 5/1-101, *et seq.*, as amended, American with Disabilities Act, 42 U.S.C. 12101 *et seq.*, as

amended, Family Medical Leave Act, 29 U.S.C. 2601 *et seq.*, as amended, and pendent state law

claims of false imprisonment and intentional infliction of emotional distress.

### Jurisdiction and Venue

2.    This Court has jurisdiction over this matter based upon 42 U.S.C. 2000e,  42

U.S.C. 12101, 29 U.S.C. 2601, 42 U.S.C. 1331 and 42 U.S.C. 1367.



3.    This action properly lies in the Northern District of Illinois because the claims for relief arose out of incidents occurring in the State of Illinois and in this judicial district.

4.    On or about November 12, 2002, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, satisfying the requirements of 42 U.S.C. 2000e-5(b) and (c). See Exhibit A attached hereto. On or about January 31, 2003, the Equal Employment Opportunity Commission issued a notice of Right-to-Sue to plaintiff with respect to plaintiff's charges of discrimination. See Exhibit B attached hereto. On April 30, 2003, plaintiff filed her complaint in this matter.

### Parties

5.    Plaintiff, DIEP X. HOANG, a female of Asian decent, is a citizen of the United States and a resident of the State of Illinois.

6.    Defendant, ABBOTT LABORATORIES, is an Illinois corporation. Upon information and belief, at all times relevant hereto, defendant was engaged in an industry affecting commerce and at all times material herein, employed fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar years.

7.    Upon information and belief, defendant, KATHERINE GREEN, is a citizen of the United States and a resident of the State of Illinois. At all times relevant hereto, she was employed by defendant, ABBOTT LABORATORIES.

8.    Upon information and belief, defendant, KENNETH WILSON, is a citizen of the United States and a resident of the State of Illinois. At all times relevant hereto, he was employed by defendant, ABBOTT LABORATORIES.

9.    Upon information and belief, defendant, CINDY PEREZ, is a citizen of the

2

United States and a resident of the State of Illinois. At all times relevant hereto, she was employed by defendant, ABBOTT LABORATORIES.

10.    Upon information and belief, defendant, LOIS FORD, is a citizen of the United States and a resident of the State of Illinois. At all times relevant hereto, she was employed by defendant, ABBOTT LABORATORIES.

11.    Upon information and belief, defendant MAURIZO ACQUASALIENTE, is a citizen of the United States and a resident of the State of Illinois. At all times relevant hereto, he was employed by defendant, ABBOTT LABORATORIES.

## ·Facts

12.    Plaintiff was hired in April 1993 to work as a laboratory technician at ABBOTT LABORATORIES in the Microbiology Department and in 1994 assigned to work in the Chemical Process Development Department at defendant, ABBOTT LABORATORIES, located in North Chicago, Illinois.

13.    At all times material herein, Plaintiff was employed by defendant, ABBOTT LABORATORIES, until discharged in January 2002.

14.    During plaintiff's employment at ABBOTT LABORATORIES, she was supervised by among others, Steven Montgomery, Ph.D., who was employed by defendant, ABBOTT LABORATORIES, was a group leader who was later promoted to section manager.

15.    During plaintiff's employment at ABBOTT LABORATORIES, starting in October or November 1996 and continuing to December 2001, plaintiff was subjected to unwelcome verbal and written sexual harassment, sexual advances and physical contact by her supervisor and self-proclaimed "mentor", Steven Montgomery, Ph.D, which created a hostile work environment and

3

subjected her to quid pro quo sexual harassment in that her submission to the unwelcome advances was an express or implied condition for receiving job benefits and the refusal to submit to her supervisor's sexual demands would result in a tangible job detriment.

16.    As a result of the aforementioned sexual harassment, plaintiff suffered severe mental and emotional distress and required a medical leave of absence in September 1998 and again in December 2001.

17.    On more than one occasion, plaintiff reported these incidents of sexual harassment to various supervisors and managers of defendant, ABBOTT LABORATORIES, specifically Laura Song, Kenneth Wilson, Mel Hodkinson, Cindy Perez and Katherine Green.

18.    Upon information and belief, defendant, ABBOTT LABORATORIES, took no corrective action against Steven Montgomery, Ph.D. after it became aware that he was making unwelcome sexual advances toward plaintiff and assaulting her.

19.    Steven Montgomery, Ph.D. continued to use his authority as plaintiff's supervisor to force his unwelcome sexual advances and offensive conduct on plaintiff.

20.    Upon information and belief, at all times material herein, defendant, ABBOTT LABORATORIES, utilized a performance review or evaluation procedure for employees, designed to evaluate all employees' work performance.

21.    Defendant, ABBOTT LABORATORIES, by and through its supervisors and agents, did not follow its performance review or evaluation procedure in evaluating plaintiff.

22.    Defendant, ABBOTT LABORATORIES, failed to appropriately promote plaintiff during the course of her employment with defendant, ABBOTT LABORATORIES.

23.    On more than one occasion, plaintiff was reassigned and isolated from other

4

employees of defendant, ABBOTT LABORATORIES, based on plaintiff's performance reviews and evaluations.

24.    On November 2, 2001, following plaintiff's complaints to defendant, ABBOTT LABORATORIES, that Steven Montgomery, Ph.D. was sexually harassing her and her lack of promotion, plaintiff's immediate supervisor, defendant MAURIZO ACQUASALIENTE, and defendants KATHERINE GREEN, and KENNETH WILSON, summoned plaintiff into defendant MAURIZO ACQUASALIENTE's office, and with the knowledge of plaintiff's mental health condition(s), closed the door and interrogated plaintiff for approximately three hours concerning her ideas and inventions regarding certain chemical processes and told plaintiff that she could not leave the office until such time as she agreed to capitulate and "give up" her ideas and inventions.

25.    On November 12, 2001 and again on November 20, 2001, plaintiff was again summoned by her immediate supervisor, defendant MAURIZO ACQUASALIENTE, to his office where once again she was interrogated for approximately three hours by defendants MAURIZO ACQUASALIENTE, KATHERINE GREEN, and KENNETH WILSON about her aforesaid ideas and notebooks and told that she could not leave the office until such time as she agreed to capitulate and "give up" her ideas and inventions.

26.    Following the interrogation on November 20, 2001, plaintiff was unable to return to work due to the mental and emotional distress inflicted upon her by the interrogation in defendant MAURIZO ACQUASALIENTE's closed office.

27.    Plaintiff thereafter came under her physician's care and treatment and was ordered by her physician to take a thirty day medical leave of absence beginning on December 10, 2001, which was communicated to defendant, ABBOTT LABORATORIES.

5

28.    On January 10, 2002, plaintiff's physician ordered an additional thirty day medical leave of absence, which was communicated to defendant, ABBOTT LABORATORIES.

29.    On January 16, 2002, defendants LOIS FORD and ABBOTT LABORATORIES, being on notice that plaintiff was under a physician's care and treatment and physician ordered medical leave of absence, terminated plaintiff for excessive absenteeism.  See Exhibit C attached hereto.

## COUNT I - SEXUAL HARASSMENT
## (QUID PRO QUO AND HOSTILE ENVIRONMENT)
## AGAINST
## ABBOTT LABORATORIES

30.    Plaintiff re-alleges Paragraphs 1 through 29 and incorporates the same by references as if fully set forth in Count I herein.

31.    The defendant, ABBOTT LABORATORIES, condoned sexual harassment and failed to maintain a harassment-free work environment by failing to provide adequate training, counseling and instructions to its employees and supervisors, especially Steven Montgomery, Ph.D., with respect to sexual harassment of female employees.

32.    The defendant, ABBOTT LABORATORIES, condoned sexual harassment and failed to maintain a harassment-free work environment by failing to employ an effective anti-sexual harassment policy with respect to its employees and supervisors, especially Steven Montgomery, Ph.D.

33.    The defendant, ABBOTT LABORATORIES, condoned sexual harassment and failed to maintain a harassment-free work environment by failing to take effective corrective actions against Steven Montgomery, Ph.D., after it became aware that he was making unwelcome sexual advances toward plaintiff and harassing her.

6

34.    As a result of these failures by defendant, ABBOTT LABORATORIES, Steven Montgomery, Ph.D. continued to use his authority as plaintiff's supervisor to force his unwelcome sexual advances and offensive conduct on plaintiff.

35.    Defendants' treatment of plaintiff was in reckless and callous indifference and disregard to plaintiff's federally protected rights.

36.    The harassment that plaintiff was subjected to by the defendant, ABBOTT LABORATORIES, their agents, representatives and employees was persistent in nature, unwelcome, extremely offensive, humiliating, and had the effect of creating a hostile and intimidating work environment for the plaintiff.

37.    The continuous and persistent sexual harassment adversely affected the terms and conditions of plaintiff's employment with defendant, ABBOTT LABORATORIES.

38.    As a direct and proximate result of said unlawful employment practices and disregard for plaintiff's rights and sensibilities, plaintiff, DIEP X. HOANG, has lost and will continue to lose substantial income, including but not limited to, wages, fringes, seniority benefits, and other employment benefits that are due her.

39.    As a further direct and proximate result of said unlawful employment practices, plaintiff, DIEP X. HOANG, has suffered the indignity of discrimination, the invasion of her right to be free from discrimination and great humiliation which is manifest in physical illnesses and emotional stress on plaintiff and on the relationships between plaintiff and her family and friends.

40.    As a further direct and proximate result of said unlawful employment practices, plaintiff, DIEP X. HOANG, has suffered extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself, harm to her employability and earing capacity, painful

7

embarrassment among her family, friends, and former co-workers, damage to her reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of life.

WHEREFORE, plaintiff, DIEP X. HOANG, prays that this Honorable Court enter judgment in her favor and against defendant ABBOTT LABORATORIES and award her reasonable compensatory damages as well as attorney's fees and any other relief that this Court deems equitable and appropriate.

## COUNT II - SEX DISCRIMINATION
## AGAINST
## ABBOTT LABORATORIES

41.    Plaintiff re-alleges Paragraphs 1 through 40 and incorporates the same by references as if fully set forth in Count II herein.

42.    Similarly situated male employees were not subject to the same treatment.

43.    Defendants' inferior treatment of plaintiff was due to plaintiff's sex, female, in violation of Title VII of the Civil Rights Act, 42 U.S.C. 2000e *et seq.*, as amended and the Illinois Human Rights Act, Ill.Ann.Stat.Ch. 775 5/1-101, *et seq.*, as amended.

WHEREFORE, plaintiff, DIEP X. HOANG, prays that this Honorable Court enter judgment in her favor and against defendant ABBOTT LABORATORIES and award her reasonable compensatory damages as well as attorney's fees and any other relief that this Court deems equitable and appropriate.

## COUNT III - RACE DISCRIMINATION
## AGAINST
## ABBOTT LABORATORIES

44.    Plaintiff re-alleges Paragraphs 1 through 29 and incorporates the same by references as if fully set forth in Count III herein.

8

45.    Similarly situated non-Asian employees were not subject to the same treatment.

46.    Defendants' inferior treatment of plaintiff was due to plaintiff's race, Asian, in violation of Title VII of the Civil Rights Act, 42 U.S.C. 2000e *et seq.*, as amended and the Illinois Human Rights Act, Ill.Ann.Stat.Ch. 775 5/1-101, *et seq.*, as amended.

WHEREFORE, plaintiff, DIEP X. HOANG, prays that this Honorable Court enter judgment in her favor and against defendant ABBOTT LABORATORIES and award her reasonable compensatory damages as well as attorney's fees and any other relief that this Court deems equitable and appropriate.

## COUNT IV - FALSE IMPRISONMENT
## AGAINST
## DEFENDANTS ABBOTT LABORATORIES, KATHERINE GREEN, KENNETH WILSON, and MAURIZO ACQUASALIENTE

47.    Plaintiff re-alleges Paragraphs 1 through 29 and incorporates the same by references as if fully set forth in Count IV herein.

48.    On November 2, 2001, Defendants MAURIZO ACQUASALIENTE, KATHERINE GREEN, and KENNETH WILSON intentionally and unlawfully confined plaintiff in defendant MAURIZO ACQUASALIENTE's office for approximately 3 hours, during which time plaintiff was unable to leave defendant MAURIZO ACQUASALIENTE's office.

49.    On November 12, 2001, Defendants MAURIZO ACQUASALIENTE, KATHERINE GREEN, and KENNETH WILSON intentionally and unlawfully confined plaintiff in defendant MAURIZO ACQUASALIENTE's office for approximately 3 hours, during which time plaintiff was unable to leave defendant MAURIZO ACQUASALIENTE's office.

50.    On November 20, 2001, Defendants MAURIZO ACQUASALIENTE, KATHERINE GREEN, and KENNETH WILSON intentionally and unlawfully confined plaintiff

9

in defendant MAURIZO ACQUASALIENTE office for approximately 3 hours, during which time plaintiff was unable to leave defendant MAURIZO ACQUASALIENTE's office.

51.    Upon information and belief, defendant, CINDY PEREZ, knew of and approved of the above described interrogation of plaintiff on November 2, 12 and 20, 2001.

52.    As a direct and proximate result of the unlawful imprisonment in defendant MAURIZO ACQUASALIENTE office on November 2, 2001, plaintiff was intentionally confined and imprisoned against her will and unable to leave defendant MAURIZO ACQUASALIENTE's office.

53.    As a direct and proximate result of the unlawful imprisonment in defendant MAURIZO ACQUASALIENTE office on November 12, 2001, plaintiff was intentionally confined and imprisoned against her will and unable to leave  defendant MAURIZO ACQUASALIENTE's office.

54.    As a direct and proximate result of the unlawful imprisonment in defendant MAURIZO ACQUASALIENTE office on November 20, 2001, plaintiff was intentionally confined and imprisoned against her will and unable to leave  defendant MAURIZO ACQUASALIENTE's office for approximately three hours.

WHEREFORE, plaintiff, DIEP X. HOANG, prays that this Honorable Court enter judgment in her favor and against defendants and award compensatory and punitive damages in an amount to appropriately compensate plaintiff and punish defendants for their conduct and any other relief that this Court deems equitable and appropriate.

### COUNT V - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST
### DEFENDANTS ABBOTT LABORATORIES, KATHERINE GREEN, KENNETH WILSON, CINDY PEREZ, LOIS FORD and MAURIZO ACQUASALIENTE

10

55.     Plaintiff re-alleges Paragraphs 1 through 53 and incorporates the same by references as if fully set forth in Count V herein.

56.     Defendants, by their own actions or the actions of their supervisors and acting individually and in concert with each other, forced plaintiff to work in a hostile work environment where plaintiff was sexually harassed, discriminated against due to her sex, race and mental health condition, wrongfully terminated and falsely imprisoned on three occasions.

57.     Upon information and belief, the actions taken by defendants against plaintiff were taken with the intent to cause plaintiff emotional distress, humiliation and embarrassment.

58.     The defendants know, or should have known, that the outrageous actions taken against plaintiff would inflict severe emotional distress upon plaintiff.

59.     Neither defendant, ABBOTT LABORATORIES, nor the other above-named defendants took any meaningful action to prevent and cease the adverse employment actions and harassment taken against plaintiff.

60.     As a direct and proximate cause of actions engaged in by the afore named defendants and the above alleged unlawful employment practices, plaintiff has suffered severe emotional distress manifested by sleeplessness, anxiety, stress, distress, depression, embarrassment and humiliation and other physical manifestations, which include loss of appetite, headaches and back pain.

61.     Plaintiff was forced to seek medical care and counseling to deal with the emotional distress inflicted upon her by the afore named defendants.

62.     Plaintiff was ordered by her physician on more than one occasion to take a medical leave of absence from her job at defendant ABBOTT LABORATORIES.

11

63.    On January 16, 2002, plaintiff was terminated by defendant ABBOTT LABORATORIES while on medical leave of absence.

64.    As a result of plaintiff's leave of absence and subsequent termination, plaintiff lost monies in the form of wages and benefits associated with said employment.

WHEREFORE, plaintiff, DIEP X. HOANG, prays that this Honorable Court enter judgment in her favor and against defendants and aware compensatory and punitive damages in an amount to appropriately compensate plaintiff and punish defendants for their conduct and any other relief that this Court deems equitable and appropriate.

## COUNT VI - DISCRIMINATION BASED ON DISABILITY
## AGAINST ABBOTT LABORATORIES

65.    Plaintiff re-alleges Paragraphs 1 through 40 and 47 through 64 and incorporates the same by references as if fully set forth in Count VI herein.

66.    Defendants' inferior treatment of plaintiff was due to plaintiff's disability in violation of the Americans with Disabilities Act, 42 U.S.C. 12101 *et seq.*, as amended.

WHEREFORE, plaintiff, DIEP X. HOANG, prays that this Honorable Court enter judgment in her favor and against defendant ABBOTT LABORATORIES and award her reasonable compensatory damages as well as attorney's fees and any other relief that this Court deems equitable and appropriate.

## COUNT VII - VIOLATION OF THE FAMILY MEDICAL LEAVE ACT
## AGAINST ABBOTT LABORATORIES

67.    Plaintiff re-alleges Paragraphs 1 through 40 and 47 through 64 and incorporates the same by references as if fully set forth in Count VII herein.

68.    Defendants' treatment of plaintiff, specifically terminating her employment while

12

on a physician ordered medical leave of absence, was in violation of the Family Medical Leave Act, 29 U.S.C. 2601 *et seq.*, as amended.

WHEREFORE, plaintiff, DIEP X. HOANG, prays that this Honorable Court enter judgment in her favor and against defendant ABBOTT LABORATORIES and award her reasonable compensatory damages as well as attorney's fees and any other relief that this Court deems equitable and appropriate.

Respectfully requested,

By:    _DIEP X. HOANG_

Richard P. Tauras
**BOLLINGER, RUBERRY & GARVEY**
Appointed Attorney for Plaintiff
500 W. Madison Street, Suite 2300
Chicago, Illinois 60606
(312) 466-8000

13

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| | FEPA | |
| ☒ | EEOC | 210A300078 |

Illinois Dept. of Human Rights _____ and EEOC
*State or local Agency, if any*

| NAME *(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| Ms. Diep X. Hoang | (773) 878-1208 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 2454 W. Gunnison St., Chicago, IL 60625 | | 11/20/1965 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| Abbott Laboratories | Cat D (501 +) | (847) 935-2610 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 1401 N. Sheridan Road, North Chicago, IL 60064 | | 097 |

| NAME | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

| CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))* | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| ☒ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☒ NATIONAL ORIGIN | EARLIEST  LATEST |
| ☐ RETALIATION ☐ AGE ☒ DISABILITY ☐ OTHER *(Specify)* | 01/15/2002  01/15/2002 |
| | ☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s)):*

I. I was employed by the above named Respondent on August 1993. Most recently I held the position of Associate Scientist. I was harassed and subjected to a hostile work environment since on or about 1994. I was treated differently than my counterparts. I was the only female and the only Asian (Vietnamese) and was subjected to lower wages. I complained to management to no avail about these issues. Since on or about November 20, 2001, I went on a medical leave of absence due to my disability. Respondent was aware of my disability. On January 10, 2002, my physician recommended my leave of absence be extended by an additional thirty days pending further medical evaluation. However, on January 16, 2002, Respondent terminated my employment.

II. I believe that I have been discriminated against because of my race, Asian, my national origin, Vietnamese, and my sex, Female, in violation of Title VII of the Civil Rights Act of 1964, as amended, and my disability, in violation of the Americans with Disabilities Act of 1990.

EXHIBIT A

RECEIVED EEOC
NOV 1 2 2002
CHICAGO DISTRICT OFFICE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - *(When necessary for State and Local Requirements)* |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| | |
| *Nov 12, 2002*     *Diep Hoang* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(Month, day and year)* |
| Date          Charging Party *(Signature)* | |

EEOC FORM 5 (Rev. 07/99)

**CHARGING PARTY COPY**

Equal Employment Opportunity Commission

# DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: Diep X. Hoang<br>2454 W. Gunnison Street<br>Chicago, IL 60625 | From: Equal Employment Opportunity Commission<br>500 West Madison<br>Suite 2800<br>Chicago, Illinois 60661 |

Certified No.: 7099 3400 0006 7300 6293

] *On behalf of a person aggrieved whose identity is*
*CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No.<br>210A300078 | EEOC Representative<br>Dorothea Hines, Investigator | Telephone No.<br>(312) 886-9123 |
|---|---|---|

*(See the additional information attached to this form.)*

**OUR CHARGE IS DISMISSED FOR THE FOLLOWING REASON:**

[  ] The facts you allege fail to state a claim under any of the statutes enforced by the Commission

[  ] Respondent employs less than the required number of employees.

[  ] Your charge was not timely filed with the Commission, i.e., you waited too long after the date(s) of the discrimination you alleged to file your charge. Because it was filed outside the time limit prescribed by law, the Commission cannot investigate your allegations.

[  ] You failed to provide requested information, failed or refused to appear or to be available for necessary interviews/conferences, or or otherwise refused to cooperate to the extent that the Commission has been unable to resolve your charge. You have had more than 30 days in which to respond to our final written request.

[  ] The Commission has made reasonable efforts to locate you and has been unable to do so. You have had at least 30 days in which to respond to a notice sent to your last known address.

[  ] The respondent has made a reasonable settlement offer which affords full relief for the harm you alleged. At least 30 days have expired since you received actual notice of this settlement offer.

[ X ] The Commission issues the following determination: Based upon the Commission's investigation, the Commission is unable to to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[  ] Other (briefly state) _____

- **NOTICE OF SUIT RIGHTS** -

[ X ] **Title VII and/or the Americans with Disabilities Act:** This is your NOTICE OF RIGHT TO SUE, which terminates the Commission's processing of your charge. If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in a court of competent jurisdiction. If you decide to sue, you must sue **WITHIN 90 DAYS** from your receipt of this Notice; otherwise your right to sue is lost.

[  ] **Age Discrimination in Employment Act:** This is your NOTICE OF DISMISSAL OR TERMINATION, which terminates processing of your charge. If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in a court of competent jurisdiction. If you decide to sue, you must sue **WITHIN 90 DAYS** from your receipt of this Notice; otherwise your right to sue is lost.

[  ] **Equal Pay Act (EPA):** EPA suits must be brought within 2 years (3 years for willful violations) of the alleged EPA underpayment.

On behalf of the Commission

1-31-03                    *John P. Rowe*

John P. Rowe, District Director

Enclosures
  Information Sheets
  Copy of Charge
cc: Respondent(s)                    Abbott Laboratories

EXHIBIT
B

EEOC Form 161 (Test 5/95)

## Specialty Products Division

Lois J. Ford
Divisional Vice President
SPD Human Resources

Abbott Laboratories
1401 Sheridan Road
North Chicago, Illinois 60064-6316

January 16, 2002

Ms. Diep Hoang
2454 W. Gunnison
Chicago, IL. 60625

Dear Ms. Hoang:

We have been reviewing your employment status due to your extensive absences from work and the fact that you are not on an authorized leave of absence. This leave is unauthorized because you have not complied with our Short Term Sick Pay Program by returning any of the documents requested. For this reason, **the decision has been made to terminate your employment from Abbott as of January 15, 2002.**

As part of our termination checklist process, we discovered that you have a number of Abbott laboratory notebooks in your possession. You were sent an urgent letter on January 8, 2001, demanding the immediate return of these notebooks. We received a message from you indicating receipt of this letter, however, you did not comply with our request. You have not returned the notebooks, nor did you give any indication that you intended to return these notebooks. This further reinforced our decision to terminate your employment.

Your message also indicates that you would like us to send you copies of your performance reviews and a "grievance form". We cannot comply with any requests made for information as long as you continue to withhold important confidential information belonging to Abbott, as defined by the Employee Agreement signed by you on October 13, 1997.

It is important for you to know that Abbott will take all appropriate steps available to recover our property, including legal action. This information is of vital importance to us and must be returned as soon as possible. **Therefore, to prevent us from moving forward, please contact me immediately to arrange for the delivery of these notebooks.**

Lois J. Ford
Divisional Vice President, SPD Human Resources

EXHIBIT
C

# Exhibit E

**FILED**

MAR 1 1 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| DIEP X. HOANG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| ABBOTT LABORATORIES, INC., | ) |
| KATHERINE GREEN, KENNETH A. WILSON, | ) |
| MAURIZO ACQUASALIENTE, LOIS FORD, | ) |
| And CINDY PEREZ, | ) |
| Defendants. | ) |

No.: 03 C 2910

Judge Paul E. Plunkett
Magistrate Judge Schenkier

## PLAINTIFF'S THIRD AMENDED COMPLAINT

**NOW COMES** Plaintiff, **DIEP X. HOANG**, by and through her attorney Gregory H. Andrews of ANDREWS KOEHLER & PASSARELLI, P.C. and, complaining of the Defendants, ABBOTT LABORATORIES, INC., KATHERINE GREEN, KENNETH A. WILSON, MAURIZO ACQUASALIENTE, LOIS FORD and CINDY PEREZ, states as follows:

### Statement of the Case

1.      This cause of action for Plaintiff, DIEP X. HOANG, arises under Title VII of the Civil Rights Act, 42 U.S.C. 2000e *et seq.*, as amended; the Illinois Human Rights Act, 755 ILCS 5/1-101, *et seq.*, as amended; the American's with Disabilities Act, 42 U.S.C. 12101, *et seq.*, as amended; the Equal Pay Act, 29 U.S.C. 206(d), as amended; the Family and Medical Leave Act, 29 U.S.C. 2601, *et seq.*, retaliation, and pendent state law claims of unlawful restraint, intentional infliction of emotional distress, and violations of the Illinois Personnel Records Review Act, 820 ILCS 40/1 *et seq.*

## The Parties

2.     Plaintiff, DIEP X. HOANG, a female, is a citizen of the United States and a resident of the State of Illinois, residing in the Northern District of Illinois. At all times relevant, Plaintiff was employed by Defendant ABBOTT LABORATORIES, INC. ("Abbott") at their North Chicago, Illinois location. Plaintiff during the periods in question, Plaintiff was a scientist assigned to work in the Clarithromycin Group ("Clari Group") and to the Ritonavir Group.

3.     Defendant, ABBOTT LABORATORIES, INC. ("Abbott") is an Illinois corporation, engaged in an industry affecting commerce and at all times relevant, employed fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar years.

4.     Defendant, KATHERINE GREEN ("Green"), is a citizen of the United States and a resident of the State of Illinois. At all time relevant, Green was employed as a Human Resources Representative by Abbott.

5.     Defendant, KENNETH WILSON ("Wilson"), is a resident of the State of Illinois. At all times relevant, Wilson was employed as a scientist and Department Manager by Abbott.

6.     Defendant, MAURIZO ACQUASALIENTE ("Acquasaliente") is a resident of the State of Illinois. At all times relevant, Acquasaliente was employed as a scientist and Group Leader by Abbott in the combined Clari/Ritonavir Groups.

7.     Defendant, LOIS FORD ("Ford") is a citizen of the United States and a resident of the State of Illinois. At all times relevant, Ford was employed as a Divisional Vice President by Abbott.

2

8.     Defendant, CINDY PEREZ ("Perez") is a citizen of the United States and a resident of the State of Illinois.  At all time relevant, Perez was employed in the human resources department of Abbott.

## Jurisdiction and Venue

9.     This action properly lies in the Northern District of Illinois because the claims for relief arose out of incidents occurring in the State of Illinois and in this judicial district.

10.     This court has jurisdiction over plaintiff's federal claims pursuant to 42 U.S.C. §2000.  This court has concurrent jurisdiction over plaintiff's state claims.

11.     At all relevant times hereto, Defendant Abbott Laboratories is and was an employer pursuant to § 701(b) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b).  For purposes of the Civil Rights Act of 1991, 42 U.S.C. § 1981(a) Defendant is an employer who employs in excess of fifteen employees.

## Exhaustion of Remedies

12.     On or about November 12, 2002, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, satisfying the requirements of 42 U.S.C. §2000e-5(b) and (c), Charge #210A300078.

13.     On or about January 31, 2003, the Equal Employment Opportunity Commission issued a notice of Right-to-Sue to plaintiff with respect to plaintiff's charges of discrimination.

14.     Plaintiff has exhausted the administrative remedies necessary for the filing of this complaint.

15.     Plaintiff timely filed her complaint on April 30, 2003, within ninety days of her notice of Right-to-Sue.

3

**COUNT I**
**SUPERVISORY SEXUAL HARASSMENT AGAINST**
**ABBOTT LABS, INC. AND STEPHEN MONTGOMERY**

16.    Plaintiff adopts and incorporates paragraphs 1 through 14 as if fully set forth herein as paragraphs 1 through 14 of this Count I.

17.    Plaintiff is a member of a protected class, female.

18.    Stephen Montgomery ("Montgomery") at all times relevant was and continues to be a member of Abbott management:

    a.    Montgomery instructed Plaintiff that he was her mentor and would teach her everything about Abbott.

    b.    Montgomery instructed other scientists to direct all of Plaintiff's work to him.

    c.    Montgomery instructed Plaintiff to direct her work questions only to himself and other people he deemed "appropriate."

    d.    Montgomery instructed Abbott personnel to correct Plaintiff's contact information in the Abbott directory information.

    e.    Montgomery declared he was in a parallel organization to Plaintiff, even when he was no longer her manager.

19.    Plaintiff was subjected to unwelcome harassment beginning in 1996 and continuing until her termination by Abbott in January 2002.

    a.    Beginning in January 1997, Montgomery began sending love letters, "vision" letters and notes to Plaintiff.

    b.    In November 1996, Montgomery invited Plaintiff to his home to meet his family and to discuss his mentoring of Plaintiff and how Plaintiff could

4

become a successful chemist/leader at Abbott. Montgomery advised Plaintiff that he frequently invited people from his "group" to his home. When Plaintiff arrived, no one was present at the house except for Montgomery and Plaintiff.

c.   From December 1996 until December 2001, Montgomery followed Plaintiff around the Abbot campus and appeared in Plaintiff's lab at least once a day whenever both Montgomery and Plaintiff were working.

d.   Beginning in January 1997, Montgomery waited for Plaintiff at the North Chicago train station.

e.   Beginning in January 1997, Montgomery began sending gifts and flowers to Plaintiff.

f.   In December, 1997, knowing that Plaintiff was Catholic and Vietnamese, Montgomery sent plaintiff a book about witches and sorcerers of Vietnam, which Plaintiff found offensive and deeply disturbing.

g.   On August 10, 1998, Montgomery asked Plaintiff if he could attend the Interscience Conference on Antimicrobial Agents and Chemotherapy (ICAAC conference) with Plaintiff in San Diego.

h.   On September 23, 1998, Montgomery followed Plaintiff to O'Hare Airport, where she was to board a plane for the ICAAC Conference. Plaintiff cried in fear and Montgomery began to kiss Plaintiff. Montgomery took Plaintiff to his car where he sexually assaulted Plaintiff.

i.   Upon Plaintiff's return from San Diego on September 25, 1998, Montgomery asked Plaintiff if she wanted to lose her virginity.

Montgomery took Plaintiff to the Hilton Hotel near the O'Hare International Airport, where he physically and sexually assaulted Plaintiff, then gave her a jade bracelet.

j. Montgomery repeatedly told Plaintiff that he loved her.

k. While on medical leave following the sexual assault of September 25, 1998, Montgomery continued to contact Plaintiff at her home and while resting in California, informing Plaintiff and her relatives that he was in love with Plaintiff.

l. In January 1999, while Plaintiff remained on medical leave, Montgomery contacted Plaintiff and her brother, requesting that Plaintiff not quit her position, promising that the work environment would change for the better, and promising Plaintiff a raise and promotion.

m. Upon return from medical leave, in February 1999, although no longer working in the Clari group, Montgomery continued to visit Plaintiff in her lab every day.

n. Between February and April 1999, Montgomery sexually assaulted Plaintiff in various conference rooms, unoccupied offices and a storage room of building R13 at the Abbot campus.

o. During Easter weekend 1999, Montgomery requested Plaintiff meet him at the Abbot campus, but Plaintiff did not go.

p. In or about April of 1999, Plaintiff received a poor performance evaluation, which Montgomery later admitted he wrote.

6

q.     During the summer of 1999, Plaintiff's lab was moved away from the Clari lab to the Ritonavir lab. Montgomery continued to visit Plaintiff at her new location. Montgomery continued to kiss and fondle Plaintiff.

r.     From 1999 until her termination, Montgomery continued to send letters, notes and cards to Plaintiff.

s.     Immediately after Plaintiff's return to work, on February 4, 1999, Montgomery told Plaintiff's former manager Mel Hodkinson to tell Plaintiff that "she was already dead" and he did so.

t.     On April 13, 2001, Montgomery sent Plaintiff an email asking her if she still had her dog.

u.     On May 9, 2001, Montgomery sent Plaintiff an email warning her not to ask about her performance evaluations.

v.     While on Plaintiff's second medical leave of absence from November 2001 through her termination in January 2002, Montgomery sent cards to Plaintiff's home asking her to return to work.

20.    The harassment Plaintiff complains of was based upon sex.

21.    The harassment Plaintiff was subject to had the purpose and effect of unreasonably interfering with Plaintiff's work performance and causing numerous job detriments in the following ways:

a.     Plaintiff came under the care of a physician for physical and mental health ailments following the sexual assault in 1998 and was required to take a medical leave of absence from September 1998 through January 1999.

7

      b.     Plaintiff received less favorable performance reviews following the sexual assault.

      c.     Plaintiff was transferred to a less desirable work group and given less meaningful work assignments following her 1998 medical leave.

      d.     Plaintiff was required to take a second medical leave of absence for physical and mental health disabilities in November 2001 after continued harassment by Montgomery and Abbott.

      e.     The harassment had the purpose and effect of creating an intimidating, hostile and offensive work environment.

22.     Plaintiff believed that she had to subject herself to such offensive behavior because Montgomery was her supervisor.

23.     When Plaintiff was transferred to another department, she requested that Montgomery stop all conversations, attention, and unnecessary visits.

24.     Abbott was on notice of the harassment as early as 1998 and failed to take prompt, appropriate or any corrective action to alleviate the discrimination.

25.     Plaintiff complained to Abbott on numerous occasions in accordance with Abbott's Code of Business Conduct:

      a.     Plaintiff's request for disability benefits completed on October 21, 1998 indicated that the purpose for her disability request was "work related." Abbott failed to undertake any investigation of these allegations.

      b.     Plaintiff repeatedly requested Montgomery cease his behavior.

      c.     On May 10, 2001, Plaintiff reported the harassment to Laura Song of Abbott Human Resources. No investigation or corrective action occurred.

8

    d.    On July 5, 2001, Plaintiff reported the harassment to Wilson in a meeting. No investigation or corrective action occurred.

    e.    On August 29, 2001, Plaintiff reported to Cindy Perez of Abbott Human Resources that she continued to receive emails from Montgomery. No investigation or corrective action occurred.

    f.    Plaintiff provided a doctor's note dated March 26, 2001, indicating her psychosis occurred while working with the Clari Group and advising that working with those same employees would be detrimental to Plaintiff's health. No investigation or corrective action occurred.

    g.    Plaintiff provided a doctor's note dated November 12, 2001, indicating that she was receiving treatment for stress related to harassment at work. No investigation or corrective action occurred.

26.    Abbott condoned sexual harassment and failed to maintain a harassment-free work environment by failing to take effective corrective actions against Montgomery and by engaged in harassing conduct as an entity:

    a.    In April 2001, Plaintiff provided Abbott Human Resources with a physician's note dated March 26, 2001, indicating that it would be detrimental to her physical and mental health for Plaintiff to work with members of the Clari Group.

    b.    Laura Song acknowledged receipt of the doctor's note on April 11, 2001.

    c.    After Plaintiff made her harassment allegations to Song, Plaintiff's computer data was deleted and her computer was encrypted, resulting in the inability of Plaintiff to print emails or company policies.

    d.    Plaintiff's group was consolidated with the Clari Group and Plaintiff was required to report to and attend one-on-one meetings with Acquasaliente, a member of the Clair Group, in direct violation of her physician's orders beginning in October 2001.

    e.    When Plaintiff questioned whether Acquasaliente was from the Clari Group, Plaintiff was disciplined and threatened with termination.

    f.    Plaintiff was not offered an alternative position until November, 2001.

    g.    The position offered to Plaintiff was in the Fermentation Chemistry Research and Development section. Plaintiff was not provided with a job description or a grade level for the alternative position offered.

    h.    Plaintiff did not have an opportunity to accept or decline the alternative position as she was terminated while on medical leave shortly after the alternative position was offered to her.

27.    On November 21, 2001, Plaintiff became physically and mentally ill due to the continued harassment and took medical leave of absence.

28.    Plaintiff provided the same information to Abbott during this medical leave, in the form of physician's notes, as she did during her 1998 medical leave of absence.

29.    Plaintiff received a card from Montgomery on December 26, 2001, requesting she return to work.

30.    Plaintiff received harassing and intimidating letters from Abbott while on medical leave.

31.    Abbott's final tangible employment action against Plaintiff was its termination of Plaintiff on January 16, 2002.

10

32.     As a direct and proximate result of said unlawful employment practices, Plaintiff has lost and will continue to lose substantial income, including, but not limited to wages, fringe benefits, seniority benefits, retirement benefits and other employment benefits that are due her.

33.     As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered the indignity of discrimination, the invasion of her right to be free from discrimination, and great humiliation which is manifest in physical illness and emotional stress on Plaintiff.

34.     As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself, harm to her employability and earning capacity, painful embarrassment among her family, friends, and former co-workers, damage to her reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of life.

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment in her favor and against Defendants Abbott and award her reasonable compensatory damages, punitive damages, attorney's fees and any other relief that this Court deems just and equitable.

## COUNT II
### SUPERVISORY SEXUAL HARASSMENT AGAINST KENNETH WILSON, KATHERINE GREENE, MAURIZO ACQUASALIENTE AND ABBOTT LABS

35.     Plaintiff adopts and realleges paragraphs 1 through 15 of this Complaint as though fully set forth herein.

36.     Wilson was a member of Abbott management and was the alter ego of Abbott.

   a.   Wilson was a Department Manager.

11

    b.  Wilson instructed Plaintiff on who she could correspond with within Abbott, including limiting such contacts to Tom Campbell, Laura Song, or himself.

    c.  Wilson instructed Plaintiff to cease sending emails.

    d.  Wilson set forth the reporting order and group composition for Plaintiff, including having Plaintiff report to Acquasaliente.

    e.  Wilson required Plaintiff's attendance at Department meetings.

    f.  Wilson held three meetings with Plaintiff and Green from Human Resources demanding Plaintiff report to Acquasaliente and divulge her proprietary inventions and ideas.

37.    Green was a member of management and was the alter ego of Abbott.

    a.  Green represented Abbott Human Resources Department.

    b.  Green attended meetings with Wilson and Plaintiff requiring Plaintiff report to Acquasaliente and divulge her proprietary inventions and ideas.

38.    Acquasaliente was a member of management and was the alter ego of Abbott.

    a.  Acquasaliente was promoted to a management position in the fall of 2001 and took over management of the Ritonavir Group.

    b.  Prior to his promotion, Acquasaliente was a member of the Clari Group.

    c.  Under the new arrangements, Plaintiff would report directly to Acquasaliente.

    d.  Acquasaliente reported to Wilson and Green.

    e.  Acquasaliente had access to Plaintiff's personnel records, including grade level and salary information.

        f.   Acquasaliente demanded Plaintiff attend one-on-one meetings with him.

39.    Plaintiff was subject to unwelcome harassment from these defendants until her termination by Abbott in January 2002.

      a.     Plaintiff was reassigned and isolated from other employees upon her return to work following her medical leave from September 1998 through January 1999.

      b.     Plaintiff was told the reassignment was based upon a headcount cutback, but Plaintiff's position in the group was replaced by three male scientists.

      c.     Plaintiff was not allowed to work on her inventions and ideas.

      d.     Plaintiff was not promoted above a grade level 11.

      e.     Based upon her grade level, Plaintiff received lower pay than other similarly qualified scientists.

      f.     Plaintiff received only fifty shares of Abbott stock when she was awarded Scientist of the Year in 1998. Acquasaliente received 100 shares of Abbot Stock when he was Scientist of the Year in 2001.

      g.     Abbott failed to follow its performance review or evaluation procedures as they related to Plaintiff by not providing her with a review in 1994 and by permitting Montgomery, someone not her supervisor, to write her 1998 review.

      h.     Plaintiff was subject to reprimand for making routine inquiries of a scientist's background.

    i.     Plaintiff was kept in an enclosed office for hours and barred from exiting the office room until she agreed to report to Wilson and Acquasaliente and divulge her proprietary inventions and ideas.

    j.     Plaintiff received harassing emails from Wilson and Acquasaliente in the fall of 2001, requiring her to report to Acquasaliente in direct violation of her physician's orders.

    k.     Plaintiff received harassing correspondence from Abbott while on medical leave of absence regarding her position at Abbott.

40.    Plaintiff's submission to this conduct affected Plaintiff's employment by causing numerous tangible job detriments, including:

    a.     Plaintiff came under the care of a physician for physical and mental health ailments following the sexual assault in 1998 and was required to take a four month medical leave of absence from September 1998 through January 1999.

    b.     Plaintiff received less favorable performance reviews following the sexual assault.

    c.     Plaintiff was transferred to a less desirable work group and given less meaningful work assignments following her 1998 medical leave.

    d.     Plaintiff was required to take a second medical leave of absence for physical and mental health disabilities in November 2001 after continued harassment by Montgomery and Abbott.

41.    Plaintiff complained to Abbott on numerous occasions in accordance with Abbott's Code of Business Conduct:

a.   Plaintiff provided a doctor's note dated March 26, 2001, indicating her psychosis occurred while working with the Clari Group and advising working with those same employees would be detrimental to Plaintiff's health.  No investigation or corrective action occurred.

b.   Plaintiff provided a doctor's note dated November 12, 2001, indicating that she was receiving treatment for stress related to harassment at work. No investigation or corrective action occurred.

c.   Plaintiff provided doctor's notes dated 12/10/01 and 1/10/02 regarding her need for medical leave due to a serious medical condition.

42.   Abbott failed to take prompt, appropriate corrective action to alleviate the discrimination.

43.   Defendants final, tangible employment action against Plaintiff was its termination of Plaintiff on January 16, 2002.

44.   As a direct and proximate result of said unlawful employment practices, Plaintiff has lost and will continue to lose substantial income, including, but not limited to wages, fringe benefits, seniority benefits, retirement benefits and other employment benefits that are due her.

45.   As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered the indignity of discrimination, the invasion of her right to be free from discrimination, and great humiliation which is manifest in physical illness and emotional stress on Plaintiff.

46.   As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself, harm to her employability and earning capacity, painful embarrassment

15

among her family, friends, and former co-workers, damage to her reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of life.

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment in her favor and against Defendants Abbott, Wilson, Green, and Acquasaliente and award her reasonable compensatory damages, punitive damages, attorney's fees and any other relief that this Court deems just and equitable.

## COUNT III
## SEX DISCRIMINATION

47.     Plaintiff is a member of a protected class, female.

48.     Plaintiff suffered an adverse employment action in the form of termination of her employment on January 16, 2002.

49.     Plaintiff was qualified for her position.  Plaintiff was a microbiologist with a bachelor of science degree and over 9 years of experience at Abbott.

50.     Plaintiff has been subjected to discrimination on the basis of her gender in one or more of the following ways:

      a.     Plaintiff was reassigned and isolated from other employees upon her return to work following her medical leave from September 1998 through January 1999.

      b.     Plaintiff was told the reassignment was based upon a headcount cutback, but Plaintiff's position in the group was replaced by three male scientists.

      c.     Plaintiff was not allowed to work on her inventions and ideas.

      d.     Plaintiff was not promoted above a grade level 11.

e.   Based upon her grade level, Plaintiff received lower pay than other similarly qualified male scientists.

f.   Plaintiff received only fifty shares of Abbott stock when she was awarded Scientist of the Year in 1998. Acquasaliente, a male scientist, received 100 shares of Abbot Stock when he was Scientist of the Year in 2001.

g.   Abbott failed to follow its performance review or evaluation procedures as they related to Plaintiff by not providing her with a review in 1994 and by permitting Montgomery, someone not her supervisor, to write her 1998 review.

h.   Plaintiff was subject to reprimand for making routine inquiries of a male scientist's background.

i.   Rules and regulations were applied differently to Plaintiff, for example in 1998, Plaintiff needed only provide copies of her doctor's notes to support her disability leave. Such notes were not accepted by Abbott in 2001.

51.   Plaintiff was subjected to an offensive and sexually hostile work environment that her male counterparts were not subjected to.

52.   Plaintiff was forced to endure sexually harassment, sexual assault and abuse as a condition of her employment.

53.   Plaintiff complained to Abbott on numerous occasions:

a.   Plaintiff's request for disability benefits completed on October 21, 1998 indicated that the purpose for her disability request was "work related." Abbott failed to undertake any investigation of these allegations.

b.   Plaintiff repeatedly requested Montgomery cease his behavior.

17

c. On May 10, 2001, Plaintiff reported the harassment to Song. No investigation or corrective action occurred.

d. On July 5, 2001, Plaintiff reported the harassment to Wilson in a meeting. No investigation or corrective action occurred.

e. On August 29, 2001, Plaintiff reported to Perez that she continued to receive emails from Montgomery. No investigation or corrective action occurred.

f. Plaintiff provided a doctor's note dated March 26, 2001, indicating her psychosis occurred while working with the Clari Group and advising working with those same employees would be detrimental to Plaintiff's health. No investigation or corrective action occurred.

g. Plaintiff provided a doctor's note dated November 12, 2001, indicating that she was receiving treatment for stress related to harassment at work. No investigation or corrective action occurred.

54. Abbott failed to take prompt, appropriate corrective action to alleviate the discrimination.

55. As a direct and proximate result of said unlawful employment practices, Plaintiff has lost and will continue to lose substantial income, including, but not limited to wages, fringe benefits, seniority benefits, retirement benefits and other employment benefits that are due her.

56. As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered the indignity of discrimination, the invasion of her right to be free from discrimination, and great humiliation which is manifest in physical illness and emotional stress on Plaintiff.

57.    As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself, harm to her employability and earning capacity, painful embarrassment among her family, friends, and former co-workers, damage to her reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of life.

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment in her favor and against Defendant Abbott and award her reasonable compensatory damages, punitive damages, attorney's fees and any other relief that this Court deems just and equitable.

## COUNT IV
## AMERICAN'S WITH DISABILITIES ACT

58.    Plaintiff is disabled.

59.    Plaintiff has a medically diagnosed mental condition.

60.    Plaintiff's medical condition substantially limits her ability to perform major life activities including caring for herself and working.

61.    Plaintiff is duly qualified to perform the functions of her job.

62.    With reasonable accommodation, Plaintiff could have performed the essential functions of her job.

63.    Defendants were aware of Plaintiff's disability as early as April 2001 and took no steps to engage in meaningful dialogue to explore possible reasonable accommodations that would allow her to perform the essential functions of her job.

64.    Plaintiff's disability could have been easily accommodated by not requiring Plaintiff to report to scientists who had been or were members of the Clari Group.

65.    Defendants had a lengthy period of time to discuss accommodating Plaintiff's disability, from March 2001, when Defendant's were put on notice of recommendations by Plaintiff's physician until October when Acquasaliente was promoted to group leader.

66.    Defendants demanded that Plaintiff work in an environment that was in direct conflict with her physician's note of March 26, 2001.

67.    Defendants failed and refused to make any reasonable accommodation of Plaintiff's disability.

68.    Defendants retaliated against Plaintiff for requesting accommodation of her disability by confining Plaintiff to an enclosed office for hours on three separate occasions, demanding she report to Acquasaliente.

69.    Defendants further retaliated against Plaintiff by terminating her employment while she was on leave receiving treatment for her disability.

70.    Plaintiff was subjected to unlawful discrimination because of her disability in the following ways:

        a.    Plaintiff was reassigned and isolated from other employees upon her return to work following her medical leave from September 1998 through January 1999.

        b.    Plaintiff was told the reassignment was based upon a headcount cutback, but Plaintiff's position in the group was replaced by three non-disabled scientists.

        c.    Plaintiff was not allowed to work on her inventions and ideas.

        d.    Plaintiff was not promoted above a grade level 11.

20

e.  Based upon her grade level, Plaintiff received lower pay than other similarly non-disabled qualified scientists.

f.  Plaintiff received only fifty shares of Abbott stock when she was awarded Scientist of the Year in 1998.  Acquasaliente, a non-disabled scientist, received 100 shares of Abbot Stock when he was Scientist of the Year in 2001.

g.  Abbott failed to follow its performance review of evaluation procedures as they related to Plaintiff by not providing her with a review in 1994 and by permitting Montgomery, someone not her supervisor, to write her 1998 review.

h.  Plaintiff was subject to reprimand for making routine inquiries of a scientist's background.

i.  Rules and regulations were applied differently to Plaintiff, for example in 1998, Plaintiff needed only provide copies of her doctor's notes to support her disability leave.  Such notes were not accepted by Abbott in 2001.

j.  Plaintiff's group was consolidated with the Clari Group and Plaintiff was required to report to and attend one-on-one meetings with Acquasaliente, a member of the Clair Group, in direct violation of her physician's orders beginning in October 2001.

k.  When Plaintiff questioned whether Acquasaliente was from the Clari Group, Plaintiff was disciplined and threatened with termination.

71.     As a direct and proximate result of said unlawful employment practices, Plaintiff has lost and will continue to lose substantial income, including, but not limited to wages, fringe benefits, seniority benefits, retirement benefits and other employment benefits that are due her.

72.     As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered the indignity of discrimination, the invasion of her right to be free from discrimination, and great humiliation which is manifest in physical illness and emotional stress on Plaintiff.

73.     As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself, harm to her employability and earning capacity, painful embarrassment among her family, friends, and former co-workers, damage to her reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of life.

        WHEREFORE, Plaintiff prays that this Honorable Court enter judgment in her favor and against Defendant Abbott and award her reasonable compensatory damages, including front pay and back pay, punitive damages, attorney's fees and any other relief that this Court deems just and equitable.

## COUNT V
## EQUAL PAY ACT

74.     Plaintiff was a female employed as a Lab Technician by Abbott in 1993 and was promoted to an Associate Scientist in 1996.

75.     Plaintiff has a Bachelor of Science in Biology and has completed graduate-level coursework in organic chemistry.

76.     Prior to working for Abbott, Plaintiff had experience as a lab technician.

77.     Plaintiff was named Scientist of the Year by Abbott in 1998.

22

78.    From 1996 until the time of her termination in January 2002, Plaintiff was never promoted above an Associate Scientist position, grade 11. Plaintiff's salary at the time of her termination was under $40,000.

79.    According to Abbott's Job Descriptions, senior scientific positions are available to employees who have PhD or equivalent experience. A scientist with a bachelor of science degree is presumed a PHD equivalent after having four years of additional experience. After four years of experience, Plaintiff should have been considered for PhD equivalent positions at Abbott.

80.    On or about January 3, 2000, Mark Labrador (Labrador), a temporary employee with a Bachelor of Science in Biology with one year of experience, was hired by Abbott as a Grade 13 Scientist, making an annual salary of $45,000.

81.    Labrador shared his Abbott offer letter, showing the Grade 13 job status and his pay stubs with co-worker Ramash Patel.

82.    At the time of his hire, although Labrador and Plaintiff had similar educational backgrounds, Labrador did not have a comparable work experience to Plaintiff.

83.    Labrador was paid higher wages than Plaintiff.

84.    Plaintiff and Labrador engaged in equal work that required substantially similar skill, effort, and responsibilities.

85.    Plaintiff and Labrador performed their work under similar working conditions.

86.    Plaintiff applied for positions in other departments at Abbott, and was only offered a grade level and salary comparable to what she already had achieved.

23

87.    The departments that Plaintiff requested transfers to contained employees with grade levels no lower than a grade 13, however, Plaintiff was expected to transfer and retain her significantly lower grade level.

88.    Approximately one year after Labrador was hired, Labrador was offered and accepted a supervisory position with Abbott, resulting in further increases in grade level and salary.

89.    On May 14, 2001, Plaintiff requested an explanation for the differentiation in salary and grade level from Song. Song provided no explanation.

90.    As a direct and proximate result of said unlawful employment practices, Plaintiff has suffered anxiety about her future and her ability to support herself, harm to her employability and earning capacity, and a reduction in pension and retirement benefits that are based upon salary calculations.

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment in her favor and against Defendant Abbott and award her reasonable compensatory damages, including back pay, liquidated damages, attorney's fees and any other relief that this Court deems just and equitable.

## COUNT VI
## RETALIATION

91.    Plaintiff adopts and incorporates paragraphs 1 through 72 of this Complaint as though fully set forth in this Count VI.

92.    Throughout her employment, while an employee of Abbott, Plaintiff repeatedly opposed the acts of sexual harassment, sex discrimination, race discrimination, disability discrimination, and equal pay violations committed by management.

93.    Plaintiff opposed the acts of sexual harassment and sex discrimination committed by Steve Montgomery, a manger of Abbott.

24

94.    In 2001 when Plaintiff questioned her salary, grade level or performance reviews and obtained a physician's note recommending she not work with scientists in the Clair Group, Plaintiff was retaliated against in the following ways:

      a.    Plaintiff was never promoted above a grade 11 scientist.

      b.    Plaintiff was disciplined for failing to attend meetings with the Clair Group, in direct violation of her physician's orders.

      c.    Plaintiff was disciplined for questioning the background of her supervisors.

      d.    Plaintiff was disciplined for inquiring into her salary, grade level and performance reviews.

95.    As a direct and proximate result of her opposition to the sexual harassment, sex discrimination, race discrimination, disability discrimination, and equal pay violations, Plaintiff was forced to endure at the workplace, the Plaintiff suffered mental and physical harm, requiring ongoing care and treatment.

96.    As a direct and proximate result of her opposition to the sexual harassment, sex discrimination, race discrimination, disability discrimination and equal pay violations that Plaintiff was forced to endure at the workplace, the Plaintiff was required to take a disability leave of absence in November 2001.

97.    Abbott terminated Plaintiff while she was on this disability leave of absence in January 2002.

98.    As a direct and proximate result of said unlawful employment practices, Plaintiff has lost and will continue to lose substantial income, including but not limited to wages, fringe benefits, seniority benefits, retirement benefits and other employment benefits that are due her.

25

99.    As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered the indignity of discrimination, the invasion of her right to be free from discrimination, and great humiliation which is manifest in physical illness and emotional stress on Plaintiff.

100.    As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself, harm to her employability and earning capacity, painful embarrassment among her family, friends, and former co-workers, damage to her reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of life.

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment in her favor and against Defendant Abbott and award her reasonable compensatory damages, including front pay and back pay, punitive damages, attorney's fees and any other relief that this Court deems just and equitable.

## COUNT VII
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

101.    Abbott is an employer within the Meaning of the Family and Medical Leave Act ("FMLA"), as it is engaged in commerce and employs fifty or more employees during each of twenty or more calendar weeks.

102.    Plaintiff was an eligible employee within the meaning of the FMLA, as Plaintiff has been employed by Abbott for at least twelve months and had worked for at least 1250 hours during the previous twelve month period.

103.    Abbott maintained a policy of Family Leave of Absence (FLOA) prior to implementation of the FMLA and intended to comply with the Family and Medical Leave Act.

26

104. Abbott's FLOA policy indicates that to be eligible for leave, an employee may be required to provide medical certification "acceptable" to Abbott's Employee Health Department.

105. Plaintiff suffered from her own serious medical condition and took disability leave under the Abbott FLOA policy in September 1998 through January 31, 1999. During that time period, Abbott accepted Plaintiff's physician's notes as acceptable medical certification her need for leave.

106. Plaintiff suffered from her own serious medical condition as evidenced by doctor's notes and medical records supplied to Abbott as early as March 2001.

107. Plaintiff again availed herself of the protections of the FMLA in November 2001.

108. During the month of November 2001, Abbott provided Plaintiff with no less than five letters requesting medical certification, each letter changing the date in which Plaintiff's FMLA leave period began.

109. During the month of November 2001, Abbott assigned no less than two different leave coordinators to Plaintiff, neither of whom attempted to personally contact Plaintiff.

110. During Plaintiff's 2001 medical leave, Plaintiff provided medical notes from her physicians evidencing Plaintiff's medical condition and need for leave, as she had done and as had been accepted during her 1998 medical leave.

111. Plaintiff was not advised that the physician's notes provided in 2001 and 2002 were now insufficient medical certifications. Plaintiff was only advised that no medical certification had been received.

112. In violation of Department of Labor regulations, Abbott did not provide Plaintiff with an opportunity to cure her defective FMLA certification. (29 CFR §825.305(d).)

27

113.    Plaintiff suffered an adverse employment action, the termination of her employment, while she was within the 12-week period of job protected leave provided under the FMLA.

114.    A causal connection exists between Plaintiff's protected activity and the adverse employment action.

115.    As a direct and proximate result of said unlawful employment practices, Plaintiff has lost and will continue to lose substantial income, including but not limited to wages, fringe benefits, seniority benefits, retirement benefits and other employment benefits that are due her.

116.    As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself, harm to her employability and earning capacity, painful embarrassment among her family, friends, and former co-workers, damage to her reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of life.

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment in her favor and against Defendant Abbott and award her actual compensatory damages, including back pay, liquidated damages in an amount equal to back pay and actual damages, attorney's fees and any other relief that this Court deems just and equitable.

## COUNT VIII
## UNLAWFUL RESTRAINT

117.    On November 2, 2001, Green and Wilson approached Plaintiff and instructed her to follow them into the office of Acquasaliente, who was also present in his office at 8:15 a.m. The door was closed and Plaintiff was instructed to sit down.

118.    Plaintiff was seated against a wall and Green, Wilson and Acquasaliente were seated in front of the closed door.

28

119.   During this meeting, Green and Wilson informed Plaintiff that she was to report to Acquasaliente and attend department meetings, which would include Montgomery and were in violation of her doctor's orders, or she would have to transfer to another group.

120.   If Plaintiff sought to move to another group, she was instructed that she must relinquish her proprietary ideas and inventions for other scientists in the group to work on.

121.   Plaintiff got up from her seat to return to her lab to check on her work. Neither Green, Wilson nor Acquasaliente moved their seats from the front of the door, and Plaintiff was physically prevented from exiting the room. Green told Plaintiff she could not leave until Plaintiff agreed to give up her proprietary ideas and inventions.

122.   Plaintiff involuntarily returned to her seat where she remained until approximately 12:00 noon, when Green informed Plaintiff that she could leave and Green, Wilson and Acquasaliente allowed her to exit.

123.   On November 12, 2001, at approximately 8:30 a.m., Green and Wilson asked Plaintiff to report to Acquasaliente's office.

124.   The door was closed and Green and Wilson began to interrogate Plaintiff and again asked Plaintiff to relinquish her ideas and inventions.

125.   Plaintiff was seated against a wall and Green and Wilson were seated in front of the closed door.

126.   Plaintiff was physically blocked from leaving the office and involuntarily restrained until approximately 12:00 noon.

127.   On November 20, 2001, Green and Wilson took Plaintiff to Acquasaliente's office around 9:00 a.m. and closed the door.

128.   Green and Wilson again interrogated Plaintiff about her inventions and ideas.

29

129. Plaintiff was seated against a wall and Green and Wilson were seated in front of the closed door.

130. Plaintiff was physically blocked from leaving the office and involuntarily restrained for several hours.

131. Defendants had no legal authority to restrain Plaintiff.

132. On each occasion, Plaintiff attempted to exit the office and was stopped by Green and/or Wilson.

133. As a direct and proximate result of said unlawful confinement Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself, harm to her employability and earning capacity, painful embarrassment among her family, friends, and former co-workers, damage to her reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of life.

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment in her favor and against Defendants Green, Wilson, and Acquasaliente, and award her damages in an amount commensurate to compensate Plaintiff for the damages she suffered together with punitive damages and the costs of this action.

## COUNT IX
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

134. Defendant Montgomery's conduct was extreme and outrageous consisting of six years of unlawful sexual harassment, physical and sexual assault.

135. Defendants Green, Wilson and Acquasaliente's actions were extreme and outrageous, consisting of unlawfully confining Plaintiff in an office for several hours on three occasions.

30

136.    Defendants Green, Wilson and Abbott actions were extreme and outrageous, in requiring Plaintiff to report to group leaders and attending department meetings consisting of individuals she had accused of harassment and in direct violation of her physician's orders.

137.    Defendants' activities were intended to inflict severe emotional distress.

138.    Defendants were aware of Plaintiff's susceptibility to emotional distress from her 1998-1999 medical leave of absence, physician notes provided to it by Plaintiff in 2001 and Defendants should have known that their actions would inflict severe emotional distress.

139.    Plaintiff did suffer severe emotional injury in the form of leaves of absence from September 1998 through January 1999 and November 2001 until her termination due to physical and mental injury resulting from the extreme stress of her work environment.

140.    Plaintiff has been undergoing treatment for her physical and mental condition since 1998 and will continue to receive treatment indefinitely.

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment in her favor and against Defendants Abbott, Green, Wilson, and Acquasaliente, and award her damages in an amount commensurate to compensate Plaintiff for the damages she suffered together with punitive damages and the costs of this action.

## COUNT X
## VIOLATION OF ILLINOIS PERSONNEL RECORDS REVIEW ACT

141.    Illinois grants an employee an absolute right to review their personnel records upon request to the employer and may also obtain copies of same.  See 820 ILCS 40/1 et seq.

142.    Abbott is an employer within the meaning of the Illinois Personnel Records Review Act as Abbott employs five or more employees in the State of Illinois.

143.   Plaintiff was an employee within the meaning of the Act, as Plaintiff was employed and was on leave of absence with a right to return to a position with Abbott in 2001 and 2002.

144.   Plaintiff requested to review her personnel file.

145.   Abbott impermissibly and absolutely refused to let Plaintiff review her personnel file until she returned items Abbott claimed was their property.  (Ex. 45.)

146.   The Act does not provide the employer any absolute right to refuse review of personnel files or to grant the right only in exchange for return of property.

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment in her favor and against Defendants Abbott, and award her damages in the statutory amount of $200 plus actual damages, court costs and attorneys fees. Plaintiff additional prays that this court enter an order preventing Abbott from using any information contained in Plaintiff's personnel file in defense of this action.

                              DIEP X. HOANG

                    By: _____
                           Gregory H. Andrews, Esq.

Gregory H. Andrews
ANDREWS KOEHLER & PASSARELLI, P.C.
4343 Commerce Court, Suite 615
Lisle, Illinois 60532
(630) 505-9939 (Telephone)
(630) 505-9969 (Facsimile)

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that she served a true and correct copy of

**PLAINTIFF'S THIRD AMENDED COMPLAINT** upon the below-noticed individual(s) via

U.S. Mail, first class postage prepaid on this 11th day of March, 2005.

> Hubert O. Thompson
> Ronald Austin, Jr.
> Brothers & Thompson, P.C.
> 100 West Monroe Street, Suite 1700
> Chicago, Illinois 60603

Julie A. Govreau

34